UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| T-MOBILE USA, INC., | CASE NO. C15-1739JLR |
| Plaintiff, | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO TRANSFER VENUE AND FOR APPLICATION OF NEW JERSEY LAW |
| v. | |
| SELECTIVE INSURANCE COMPANY OF AMERICA, | |
| Defendant. | |

## I.   INTRODUCTION

Before the court is Defendant Selective Insurance Company of America's

("Selective") motion to transfer venue and for the application of New Jersey law.  (Mot.

(Dkt. # 9).)  Selective asks the court to transfer this case under 28 U.S.C. § 1404(a) to the

United States District Court for the District of New Jersey or, if the court decides not to

transfer the case, to rule that New Jersey law applies to Plaintiff T-Mobile USA, Inc.'s

("T-Mobile") claims.  (*See id.* at 1-3.)  T-Mobile opposes transfer and argues that

1   Washington law should apply to all its claims.  (*See* Resp. (Dkt. # 14) at 2-3.)  The court

2   has considered the motion, all submissions filed in support of and opposition to the

3   motion, the balance of the record, and the applicable law.  Being fully advised,[1] the court

4   grants Selective's motion in part and denies it in part as set forth below.

5   ## II.   BACKGROUND

6          This is an insurance coverage dispute in which T-Mobile asserts (a) that it is an

7   additional insured under a Selective policy issued to Innovative Engineering, Inc.

8   ("Innovative"), and (b) that Selective wrongfully failed to defend and indemnify

9   T-Mobile in construction litigation in New York State ("the underlying litigation").  (*See*

10  1st Tindal Decl. (Dkt. # 2) ¶ 3, Ex. A ("Compl.").)  T-Mobile is a Delaware corporation

11  headquartered in Bellevue, Washington.  (*Id.* ¶ 2; Bauer Decl. (Dkt. # 15) ¶ 3; 2d Tindal

12  Decl. (Dkt. # 11) ¶ 5, Ex. D ("T-Mobile 3dP Compl.") ¶ 6.)  Selective and Innovative are

13  New Jersey corporations with principal places of business in New Jersey.[2]  (Eber Decl.

14  (Dkt. # 10) ¶¶ 2, 7; T-Mobile 3dP Compl. ¶ 10.)  Through a New Jersey broker, Selective

15  issued Innovative a commercial general liability policy ("the Policy") effective from

16  January 16, 2012, through January 16, 2013.  (Eber Decl. ¶ 7, Ex. A ("Policy") at 3, 7.)

17         On October 17, 2000, Innovative entered into a Professional Service Agreement

18  (the "PSA") with Omnipoint Communications, Inc. ("Omnipoint"), an alleged subsidiary

19  _____

20      [1] Neither party has requested oral argument, and the court deems oral argument
    unnecessary for the disposition of this motion.  *See* Local Rules W.D. Wash. LCR 7(b)(4).

21      [2] Selective conducts some business in Washington State—namely, it issues flood
22  insurance policies in Washington as a "Write-Your-Own" carrier participating in the federal
    government's National Flood Insurance Program.  (*See* Eber Decl. ¶¶ 3-5.)

1  of T-Mobile.  (2d Tindal Decl. ¶ 2, Ex. A ("PSA"); *see* Compl. ¶ 2; Mot. at 2-3.)  On July

2  8, 2010, Innovative entered into an additional agreement entitled "Field Services

3  Agreement" (the "FSA") with an alleged T-Mobile subsidiary, T-Mobile NE, Inc.

4  ("T-Mobile NE").  (2d Tindal Decl. ¶ 3, Ex. B ("FSA"); *see* Mot. at 2-3.)  Both the PSA

5  and the FSA required Innovative to obtain certificates of insurance naming its contractual

6  counterparty (Omnipoint and T-Mobile NE, respectively)[3] as an additional insured under

7  Innovative's insurance policy.[4]  (*See* PSA ¶ 6; FSA ¶ 7.2.)  Furthermore, the Policy

8  contains an "Elitepac General Liability Extension" ("EGLE") that includes among

9  "additional insured[s] any person or organization with whom [the insured] has agreed in a

10  written contract, written agreement, or written permit to add as an additional insured on

11  [the insured's] policy."  (Policy at 27; *see also id.* at 27-28 (placing various limitations on

12  the types of liability with respect to which "[s]uch person or organization" qualifies as an

13  additional insured); Mot. at 3-4.)

14       T-Mobile asserts that Innovative performed work for T-Mobile on a cell phone

15  tower in New York City.  (*See* Resp. at 3; *see also* T-Mobile 3dP Compl. ¶¶ 1, 15, 45;

16  Compl. ¶ 11 ("Innovative's work for T-Mobile was completed pursuant to agreements

17  under which Innovative was obligated to obtain insurance coverage naming T-Mobile as

18

19      [3] The FSA provides, "T-Mobile USA, Inc. is not a party to this Agreement."  (FSA ¶ 5.2.)

20
21      [4] In its complaint, T-Mobile alleges it "was expressly identified as an additional insured under the Policy in insurance certificates . . . issued by Selective's representatives."  (Compl. ¶ 8.)  T-Mobile purports to quote from those certificates in its response memorandum but does not attach any certificates or provide any evidence of who issued the certificates.  (*See* Resp. at 3-4.)

22

ORDER- 3

an additional insured . . . .").)  On April 23, 2013, a New York entity initiated the

underlying litigation against T-Mobile and Omnipoint in New York State court alleging

damage to the building on which the cell phone tower was located.[5]  (*See* 2d Tindal Decl.

¶ 4, Ex. C ("Underlying Compl.") ¶¶ 6, 10, 27; Compl. ¶ 10 (alleging that the plaintiff in

the underlying litigation "alleged claims for damages arising from Innovative's work on

the relevant building").)  After T-Mobile and Omnipoint filed a third-party complaint

against Innovative, Innovative tendered its defense to Selective, and Selective accepted

Innovative's defense under a reservation of rights.  (*See* T-Mobile 3dP Compl.; Compl.

¶¶ 13-14; Bauer Decl. ¶ 7, Ex. C ("RoR Letter").)  Approximately a year and a half later,

T-Mobile tendered a defense to Selective as well.  (*See* Bauer Decl. ¶ 5, Ex. A ("Tender")

(dated February 25, 2015); RoR Letter (dated July 23, 2013).)  Selective Litigation

Specialist Michael Parlin responded that Selective was declining T-Mobile's request for

defense and indemnification.  (*See* Bauer Decl. ¶ 6, Ex. B ("2/26/15 Parlin Email").)  Mr.

Parlin attests that he lives and works in New Jersey and that all responses to T-Mobile's

demands for coverage were made in New Jersey.  (Parlin Decl. (Dkt. # 19) ¶¶ 2-3; *see*

*also id.* ¶¶ 4-6; Eber Decl. ¶ 6 ("All of Selective's decisions regarding T-Mobile's claims

also took place in New Jersey.").)[6]

---

[5] T-Mobile removed the underlying litigation to the United States District Court for the Southern District of New York.  (*See* 2d Tindal Decl. ¶ 7, Ex. F ("T-Mobile Removal").)

[6] According to T-Mobile, the record shows that relevant Selective employees, including Mr. Parlin, were located in Kentucky, not New Jersey.  (*See* Mot. at 4-8.)  T-Mobile bases this assertion on the headers and footers of communications that Selective sent, several of which list "PO Box 7260" in London, Kentucky as the sender's mailing address.  (*See, e.g., id.* at 5 (citing

1    T-Mobile then filed this lawsuit in the Superior Court for King County,

2    Washington.  (*See* Compl.)  T-Mobile alleges that it is an additional insured pursuant to

3    the Policy and its agreements with Innovative, and that the Selective had a duty to defend

4    and indemnify T-Mobile in the underlying litigation.  (*See id.* ¶¶ 8-16, 21, 27.)  T-Mobile

5    asserts causes of action against Selective for declaratory judgment, breach of contract,

6    attorney's fees, bad faith, violation of the Washington Consumer Protection Act (the

7    "CPA"), RCW 19.86 *et seq.*, violation of the Washington Insurance Fair Conduct Act

8    ("IFCA"), RCW 48.30.015, and coverage by estoppel.  (*See id.* at 5-8.)  Selective

9    removed the case to this court on November 4, 2015, and on November 12, 2015, filed

10   the present motion to transfer venue and for application of New Jersey law.  (*See* Not. of

11   Rem. (Dkt. # 1); Mot.)  Selective's motion is now before the court.

## III.    DISCUSSION

**A.    Motion to Transfer Venue**

14   Under 28 U.S.C. § 1404, the court has discretion to transfer this case in the

15   interests of convenience and justice to another district in which venue would be proper.

16   *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).  Specifically,

17   Section 1404(a) states:

---

Tender; 2/26/15 Parlin Email); *see also* RoR Letter.)  Mr. Parlin explains, however, that PO Box
7260 merely "functions as a servicing center for [Selective], where all paper mail is received,
scanned, and then electronically distributed to the intended [Selective] recipient."  (Parlin Decl.
¶ 5.)  As such, the court finds that the Kentucky PO Box does not undermine Selective's
attestations that the coverage decisions in this case and its communications with T-Mobile
originated in New Jersey.  (*See* Eber Decl. ¶ 6; Parlin Decl. ¶¶ 2-6 ("None of the coverage
determinations in the [underlying litigation] were made in Kentucky.").)

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a).  The purpose of this statute is to "prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense."  *Pedigo Prods., Inc. v. Kimberly-Clark Worldwide, Inc.*, No. 3:12-CV-05502-BHS, 2013 WL 364814, at *2 (W.D. Wash. Jan. 30, 2013) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)).

The parties do not dispute that venue is proper in both the District of New Jersey and the Western District of Washington.  (*See* Mot. at 7 (arguing that this suit could have been brought in New Jersey pursuant to 28 U.S.C. § 1391); Resp. (omitting any argument that venue is improper in New Jersey)); *see also* 28 U.S.C. §§ 1391(a), (b).  Therefore, disposition of this motion depends on whether transfer to New Jersey is most convenient and just.  Selective bears the burden of showing that a transfer is appropriate, *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981); *Silver Valley Partners, LLC v. De Motte*, No. C05-5590 RBL, 2006 WL 2711764, at *2 (W.D. Wash. Sept. 21, 2006), but the decision to transfer is ultimately left to the sound discretion of the district court and must be made on an "individualized, case-by-case consideration of convenience and fairness," *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen*, 376 U.S. at 622).

The Ninth Circuit instructs district courts to apply a nine-factor balancing test to determine whether to transfer a case under § 1404(a).  *Jones*, 211 F.3d at 498.  The test

ORDER- 6

1    balances the following factors:  "(1) the location where the relevant agreements were

2    negotiated and executed, (2) the state that is most familiar with the governing law, (3) the

3    plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the

4    contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences

5    in the costs of litigation in the two forums, (7) the availability of compulsory process to

6    compel attendance of unwilling non-party witnesses, . . . (8) the ease of access to sources

7    of proof," and (9) the public policy considerations of the forum state.  *Id*. at 498-99.  The

8    court considers each of these factors in turn.

9        1.  <u>Location where agreement was negotiated and executed</u>

10       Selective argues that the insurance contract at the foundation of this dispute—the

11   Policy—was "issued by a New Jersey insurer through a New Jersey broker to a New

12   Jersey insured" and was negotiated, executed, and issued in New Jersey.  (Mot. at 7; *see*

13   Eber Decl. ¶¶ 2, 7.)  T-Mobile disputes the importance of these facts, arguing that this

14   factor is generally unimportant in insurance cases and that Selective has failed to produce

15   evidence that any substantive negotiations took place in New Jersey.  (*See* Resp. at

16   10-12.)  Selective counters that the Policy's multiple endorsements, some of which are

17   specific to New Jersey, are evidence of substantive negotiations.  (*See* Reply (Dkt. # 18)

18   at 3-4; Policy at 5-6 (listing the endorsements).)  On balance, the court concludes that the

19   Policy was negotiated and executed in New Jersey and that this circumstance weighs in

20   favor of transfer to New Jersey.  (*See* Eber Decl. ¶¶ 2, 7; Policy at 5-6); *Lifelast, Inc. v.*

21   *Charter Oak Fire Ins. Co.*, No. C14-1031JLR, 2014 WL 4925493, at *3 (W.D. Wash.

22   Sept. 29, 2014) (concluding that the first *Jones* factor favored transfer to Utah in a

1    coverage dispute between a Washington assignee of a Utah insured and a Connecticut

2    insurer where the policy was executed by the insurer in Connecticut and countersigned in

3    Utah and the only evidence of negotiations was a list of endorsements to the policy).

4         T-Mobile points out that the PSA and FSA are additional agreements relevant to

5    this case.  (*See* Resp. at 12-13.)  T-Mobile contends that the PSA and FSA have more

6    "bearing on T-Mobile's claim to coverage" than the Policy and "were negotiated or

7    executed in Washington."  (*Id.* at 12; *see also id.* at 13 (stating that the PSA and FSA

8    "appear to have both been executed in Bellevue, Washington").)  However, T-Mobile

9    does not explain why the PSA and FSA are more important to this case than the Policy

10   and points the court to no evidence that the PSA and FSA were negotiated and executed

11   exclusively in Washington.[7]  (*See id.* at 12-13.)  Although Selective admits that the PSA

12   and FSA were executed in "both New Jersey and Washington" (Mot. at 9), that admission

13   has no impact on the court's analysis of this factor.  *Cf. Ahead, LLC v. KASC, Inc.*, No.

14   C13-0187JLR, 2013 WL 1747765, at *9 (W.D. Wash. Apr. 23, 2013) (noting that this

15   factor is "neutral . . . when the parties negotiate and execute a contract in multiple

16   locations").

17   //

18   //

19   _____

20        [7] T-Mobile's only support for this statement is a citation to the entire PSA and FSA.  (*See*
     Resp. at 13 & n.22 (citing "Exhibits E and F to the Bauer Declaration").)  The court will not
21   scour those documents in search of support for T-Mobile's assertion.  *See United States v.
     Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried
     in briefs.").  Furthermore, the court notes that T-Mobile's complaint contains no allegations
22   regarding where its agreements with Innovative were negotiated and executed.  (*See* Compl.)

1      2.  <u>State most familiar with the governing law</u>

2      The second factor favors the state that is most familiar with the governing law.

3 *Jones,* 211 F.3d at 499.  The parties dispute whether Washington or New Jersey law

4 should apply to T-Mobile's claims.  (*See* Mot. at 15-24; Resp. at 21-25.)  Selective argues

5 New Jersey law should apply and therefore this factor favors transfer.  (*See* Mot. at 9-10.)

6 T-Mobile, on the other hand, claims Washington law should apply and thus this factor

7 weighs against transfer.  (*See* Resp. at 14.)

8      The choice-of-law issue does not impact the court's decision on this factor.

9 Federal courts are equally equipped to apply distant state laws when the law is not

10 complex or unsettled.  *See, e.g., Barnstormers, Inc. v. Wing Walkers, LLC*, No. 09cv2367

11 BEN (RBB), 2010 WL 2754249, at *3 (S.D. Cal. July 9, 2010) (stating that a federal

12 court in Texas would be equally adept at applying California law related to unfair

13 competition claims); *Houk v. Kimberly-Clark Corp.*, 613 F. Supp. 923, 932 (D. Mo.

14 1985) ("This court is routinely called upon to apply the law of other jurisdictions in

15 diversity actions; hence, the possibility that [a foreign] law might govern this action is not

16 of great moment.").  Neither party has asserted that the relevant substantive law of

17 Washington or New Jersey is complex or unsettled.  Accordingly, regardless of the

18 substantive state law applied in this case, both district courts are equally equipped to

19 handle the case, and this factor is therefore neutral.  *See Inlandboatmen's Union of the*

20 *Pac. v. Foss Maritime Co.*, No. C14-1403JLR, 2015 WL 64933, at *3 (W.D. Wash. Jan.

21 5, 2015); *Lifelast*, 2014 WL 4925493, at *4.

22

3.  <u>Plaintiff's choice of forum</u>

As the plaintiff in this action, T-Mobile's choice of forum receives substantial deference and Selective must "make a strong showing of inconvenience" to upset that choice. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).  "This factor is generally given significant weight when the plaintiff resides in the chosen forum." *Nordquist v. Blackham*, No. C06-5433 FDB, 2006 WL 2597931, at \*3 (W.D. Wash. Sept. 11, 2006) (citing *Warfield v. Gardner*, 346 F. Supp. 2d 1033, 1044 (D. Ariz. 2004), and *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1006 (N.D. Cal. 2001)). T-Mobile's preference, however, is not dispositive. *See Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955) (holding that "the discretion to be exercised is broader" under § 1404(a) than under the doctrine of *forum non conveniens*).  In particular, courts are hesitant to defer to a plaintiff's choice of forum when the case lacks a significant connection to that district. *See Pedigo Prods.*, 2013 WL 364814, at \*3.

Selective argues that this case lacks strong ties to Washington and that the court therefore should not defer to T-Mobile's choice of forum.  (*See* Mot. at 10-11.) According to Selective, "Washington has little nexus whatsoever to [this case], including whether T-Mobile qualifies as an [additional insured] under the . . . Policy.  Here, the only operative facts that occurred in Washington are T-Mobile's tender of the claim to Selective, subsequent correspondence from T-Mobile, and the filing of this lawsuit." (*See id.* at 10 (citing Eber Decl. ¶ 6); *see also* Reply at 5 (acknowledging that T-Mobile, Omnipoint, and T-Mobile NE are all residents of Washington and that the PSA and FSA were executed in Washington and New Jersey).)  T-Mobile counters that the PSA and

FSA were executed in Washington and that Selective directed its bad faith claims handling to T-Mobile at T-Mobile's home offices in Washington.  (*See* Resp. at 15.)

The court concludes that Washington's connection to this case is not so insubstantial that it appreciably erodes the deference due to T-Mobile's choice of forum. *See Decker Coal*, 805 F.2d at 843; *Pedigo Prods.*, 2013 WL 364814, at *3.  T-Mobile alleges that it is an additional insured under the Policy and that, as such, Selective owed T-Mobile duties to conduct a reasonable investigation of T-Mobile's claim, and provide a defense to and indemnify T-Mobile in the underlying litigation.  (*See* Compl. ¶¶ 8-18, 25, 29, 34.)  T-Mobile further alleges that Selective breached those duties in an unreasonable manner, causing harm to T-Mobile.  (*See id.* ¶¶ 16-35.)  Selective disputes neither that T-Mobile's principal place of business is in Washington nor that the PSA and FSA were executed at least in part in Washington.  (*See* Mot. at 9, 11.)  The court concludes this case has a connection to Washington sufficient to support deference to T-Mobile's choice of forum.  *See Decker Coal*, 805 F.2d at 843; *Pedigo Prods.*, 2013 WL 364814, at *3; *Lifelast*, 2014 WL 4925493, at * 5 (concluding that deference was appropriate where a Washington assignee of a Utah insured brought suit against a Connecticut insurer in Washington).   This factor therefore weighs against transfer.

4.  Parties' contacts with the forum

The fourth factor focuses on the parties' contacts with the current and potential forum.  *See Ahead*, 2013 WL 1747765, at *11.  Selective argues that the "vast majority" of the contacts relevant to this case are with New Jersey, not Washington.  (Mot. at 11.) In particular, Selective points out that Selective and Innovative are New Jersey

1    corporations, the Policy was negotiated and executed in New Jersey, Selective's actions

2    that gave rise to this lawsuit took place in New Jersey, and T-Mobile does business and

3    was served in the underlying action in New Jersey.  (*See id.*; *see also* Reply at 6 (pointing

4    out that the T-Mobile bases its claim for coverage on contracts that T-Mobile subsidiaries

5    entered into with a New Jersey corporation).)  T-Mobile responds that it is headquartered

6    and has its principal place of business in Washington.  (Resp. at 15.)  Furthermore,

7    T-Mobile notes, Selective does some business in Washington and has sent

8    communications to T-Mobile in Washington regarding T-Mobile's claim for coverage.

9    (*Id.*)

10           This factor favors transfer to New Jersey.  T-Mobile is headquartered and has its

11   principal place of business in Washington, and Selective is incorporated and has its

12   principal place of business in New Jersey.  (*See* Compl. ¶ 2; Bauer Decl. ¶ 3; Eber Decl.

13   ¶ 2.)  In addition, T-Mobile does business in New Jersey, and Selective does business in

14   Washington.  (*See* T-Mobile Removal ¶ 2; PSA; FSA; Eber Decl. ¶¶ 3-5.)  Selective's

15   business in Washington, however, has no connection to this lawsuit.  (*See* Eber Decl.

16   ¶¶ 3-5); *Inlandboatmen's Union of the Pac.*, 2015 WL 64933, at *3 (treating a party's

17   case-related contacts as more significant than its general contacts).  On the other hand,

18   T-Mobile's alleged subsidiaries entered into the agreements on which T-Mobile bases its

19   claims with Innovative, a New Jersey corporation.  (*See* Compl. ¶¶ 2, 11; T-Mobile 3dP

20   Compl. ¶¶ 10, 45; Eber Decl. ¶ 7; PSA; FSA; Resp. at 3.)  Thus, although both parties

21   have contacts with both forums, the court finds that T-Mobile's contacts with New Jersey

22

1    are more significant than Selective's contacts with Washington.  *See Inlandboatmen's*

2    *Union of the Pac.*, 2015 WL 64933, at *3.

3         5.   Contacts relating to Plaintiff's cause of action in the chosen forum

4         This factor concerns the contacts between T-Mobile's claims against Selective and

5    T-Mobile's chosen forum—Washington.  *See Ahead*, 2013 WL 1747765, at *11.

6    Selective emphasizes that the Policy was negotiated and executed in New Jersey and that

7    the PSA, the FSA, and the underlying litigation relate to a project just across the border

8    from New Jersey in New York City.  (*See id.* at 12.)  Selective also argues that the

9    business decisions causing the alleged breach occurred in New Jersey.  (*Id.*)  T-Mobile

10   counters that such contacts are unimportant to its claims.  (*See* Resp. at 16.)  T-Mobile

11   stresses its allegations that Selective directed wrongful conduct at T-Mobile in

12   Washington and T-Mobile experienced the consequences of that conduct in Washington.

13   (*See id.*)

14        This factor favors neither forum.  "For the purposes of 28 U.S.C. § 1404(a), courts

15   consider a number of factors when determining 'the situs' of the action, including where

16   the contract was negotiated and executed, where business decisions causing the breach of

17   contract took place, and where the alleged conduct was directed."  *Lifelast*, 2014 WL

18   4925493, at *6.  Courts also consider "the location of the subject of the contract."  *Ahead*,

19   2013 WL 1747765, at *11.

20        Here, the Policy was negotiated and executed in New Jersey.  (*See* Eber Decl. ¶ 7;

21   Policy at 5-7); *supra* § III.A.1.  Yet the PSA and FSA appear to have been negotiated in

22   both New Jersey and Washington and concerned a project located in New York.  (*See*

1  Mot. at 9; Resp. at 3; Underlying Compl. ¶¶ 6, 10, 27; T-Mobile 3dP Compl. ¶¶ 1, 15, 45;

2  Compl. ¶¶ 10-11.)  Selective made the business decisions causing the alleged breach and

3  constituting the alleged bad faith and statutory violations in New Jersey.  (*See* Parlin

4  Decl. ¶¶ 2-6; Eber Decl. ¶ 6.)  However, Selective directed its alleged wrongful conduct

5  at T-Mobile in its Washington headquarters, and T-Mobile experienced the consequences

6  of that conduct at least partially in Washington.  (*See* 2/26/15 Parlin Email; Bauer Decl.

7  ¶¶ 2-4); *Lifelast*, 2014 WL 4925493, at *6.  T-Mobile's claims thus have contacts with

8  both Washington and New Jersey.  The court concludes this factor is neutral with respect

9  to transfer.  *See Lifelast*, 2014 WL 4925493, at *6.

10       6.  <u>Differences in the costs of litigation in the two forums</u>

11       When comparing the costs of litigation in various forums, courts disfavor

12  transferring venue when "transfer would merely shift rather than eliminate" costs and

13  inconvenience.  *Decker Coal*, 805 F.2d at 843.  "The relative cost analysis focuses

14  primarily on the venue's proximity to witnesses."  *Inlandboatmen's Union of the Pac.*,

15  2015 WL 64933, at *4.  T-Mobile claims that "a majority, if not all, of T-Mobile's

16  witnesses currently reside in the states of Washington and Oregon."  (Resp. at 17.)

17  T-Mobile specifically identifies Lisa Bauer (Washington), the primary person involved in

18  the claims-related discussions with Selective; Robert Burton (Oregon), T-Mobile's

19  insurance claims administrator; and Diane Mathis and Michael Simpson (Washington),

20  T-Mobile employees with knowledge of the relationship between T-Mobile and

21  Omnipoint and T-Mobile NE.  (*See id.*; Bauer Decl. ¶¶ 16-17.)  T-Mobile also argues that

22  litigation would be more expensive in New Jersey because billing rates for counsel are

1   higher there than in Seattle and if the case is transferred to New Jersey, new counsel

2   would have to be hired and brought up to speed.  (*See* Resp. at 16.)

3         Selective does not identify any specific witnesses who are located in New Jersey.

4   Instead, Selective merely asserts that "[a]ll of the witnesses with knowledge of the events

5   that give rise to the [underlying litigation] are in New York and/or New Jersey . . . ."

6   (Mot. at 13; *see also* Reply at 7 ("Selective's witnesses are located in New Jersey.

7   Potentially relevant non-party witnesses are located in both New York and New

8   Jersey."); Eber Decl. ¶ 9 ("All of [Selective's] witnesses are located in New Jersey or the

9   New York metropolitan area.").)  Selective acknowledges that "T-Mobile's witnesses are

10  located in Washington and Oregon" and that "shifting of litigation costs from one party to

11  another is generally not a basis to transfer venue."  (Reply at 7.)  Nevertheless, Selective

12  argues that transfer is appropriate in the unique circumstances of this case because

13  "T-Mobile entities interjected themselves into New Jersey," whereas Selective "took no

14  affirmative steps to get involved with any Washington entity."  (*Id.* at 7-8.)

15        Selective has failed to carry its burden of showing that transfer would reduce

16  rather than merely shift costs.  *See Decker Coal*, 805 F.2d at 843.  Both parties claim to

17  have witnesses who may need to travel depending on where this case is tried, but

18  Selective fails to indicate how many witnesses are in New York and New Jersey and

19  what role those witnesses play in this case.  (*See* Mot. at 13; Reply at 7; Resp. at 17;

20  Bauer Decl. ¶¶ 16-17.)  Moreover, Selective appears to concede in its reply memorandum

21  //

22  //

ORDER- 15

that transfer would merely shift costs to T-Mobile.[8]  (*See* Reply at 7.)  As such, the court

concludes that transfer would at best shift costs to T-Mobile without reducing costs

overall.  This factor therefore weighs against transfer.  *See Decker Coal*, 805 F.2d at 843.

       7.  <u>Availability of compulsory process to compel attendance of unwilling<br>      non-party witnesses</u>

This factor favors transfer to New Jersey only if New Jersey has the ability to

subpoena more non-party witnesses than Washington, and the non-party witnesses within

New Jersey are likely to refuse to testify.  *See Inlandboatmen's Union of the Pac.*, 2015

WL 64933, at *5; *Lifelast*, 2014 WL 4925493, at *7.  The focus here is on not "the

number of witnesses . . . at each locale," but rather "the materiality and importance of the

anticipated . . . witnesses' testimony."  *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1146

(9th Cir. 2001).  Selective argues that Innovative is located in New Jersey and likely

unwilling to testify.  (*See* Mot. at 14; Reply at 8; Siegel Decl. (Dkt. # 21) ¶¶ 3-4.)

However, Selective neither lists the individuals at Innovative who will be witnesses nor

explains "the materiality and importance" of such testimony to this case.  *Lueck*, 236 F.3d

at 1146; (*see* Mot. at 14; Reply at 8.)  In fact, Selective appears to be uncertain regarding

whether testimony from Innovative representatives will prove necessary at all.  (*See* Mot.

at 14; Reply at 8 ("[I]t may be necessary for [Innovative] to provide testimony with

respect to the execution of the [FSA].").)  Accordingly, the court concludes that Selective

---

[8] Selective argues that cost shifting is appropriate here because T-Mobile's case-related contacts with New Jersey are purposeful, whereas Selective's case-related contacts with Washington are not purposeful.  (*See* Reply at 7-8.)  In making this argument, Selective appears to be analogizing to the law of personal jurisdiction.  (*See id.* at 6-8.)  Selective, however, cites no authority for the notion that the purposefulness of a party's contacts is relevant to the court's costs analysis under 28 U.S.C. § 1404(a).  Accordingly, the court rejects Selective's argument.

1   has failed to carry its burden on this factor, and that this factor therefore weighs against

2   transfer.

3       8.   Ease of access to sources of proof

4       This factor focuses on the location of witnesses, documentary evidence, and

5   inventory to be inspected, if any.  *See Jones*, 2011 F.3d at 499.  Because most

6   documentary evidence can now be produced electronically, the location of such evidence

7   outside the forum does not support transfer absent some unique difficulty.  *See Burns v.*

8   *Gerber Prods. Co.*, 922 F. Supp. 2d 1168, 1173 (E.D. Wash. 2013).  Furthermore, just as

9   with factor seven, the focus here is on the materiality of an importance of the evidence in

10  question.  *See Lueck*, 236 F.3d at 1146.  Selective argues that this factor favors transfer

11  because Selective's witnesses are in New York and New Jersey and the claim and

12  underwriting files are in New Jersey.  (*See* Mot. at 14-15 (acknowledging that this factor

13  is "less important in the modern era"); Eber Decl. ¶ 8.)

14      As discussed above, some witnesses are likely in Washington and others are likely

15  in New York or New Jersey.  (*See* Mot. at 13; Reply at 7; Resp. at 17; Bauer Decl.

16  ¶¶ 16-17); *supra* § III.A.6.  Selective has not demonstrated that the New Jersey and New

17  York witnesses are more important to this case than the witnesses located in Washington.

18  (*See* Mot. at 13-15; Reply at 7-8); *supra* §§ III.A.6-7.  Furthermore, although Selective

19  identifies some documentary evidence located in New Jersey, Selective does not claim

20  that it cannot produce such evidence electronically or that any undue difficulties stand in

21  the way of producing such evidence in Washington.  (*See* Mot. at 14-15; Eber Decl. ¶ 8.)

22  The court therefore finds that this factor does not support transfer.

1        9.  Public policy of the forum state

2        Public policy factors include the "local interest in having localized controversies

3  decided at home" and deciding cases "where the claim arose."  *Decker Coal*, 805 F.2d at

4  843 (quoting *Piper Aircraft*, 454 U.S. at 241 n.6).  Forum states have an interest in

5  providing redress for their injured residents.  *See Gordy v. Daily News, L.P.*, 95 F.3d 829,

6  836 (9th Cir. 1996) ("California maintains a strong interest in providing an effective

7  means of redress for its residents tortiously injured.") (quoting *Sinatra v. Nat'l Enquirer,*

8  *Inc.*, 654 F.2d 1191, 1200 (9th Cir. 1988)).  As discussed above, the "situs" of the case is

9  in both Washington and New Jersey.  *See supra* § III.A.5.  In addition, T-Mobile is

10  headquartered in Washington and alleges that it suffered an injury due to the actions of an

11  insurance company that does business in this state.  (*See* Bauer Decl. ¶ 3; Compl. ¶¶ 2-3,

12  8-35; Eber Decl. ¶¶ 3-5.)  Accordingly, Washington's interest in the present case is

13  greater than New Jersey's interest.  *See Lifelast*, 2014 WL 4925493, at *8.  This factor

14  weighs against transfer.

15        10.  Balancing the *Jones* factors

16        In light of the foregoing factors, the court concludes that Selective has failed to

17  carry its burden to show that transfer to New Jersey is appropriate.  *See Piper Aircraft*,

18  454 U.S. at 255-56; *Silver Valley Partners*, 2006 WL 2711764, at *2.  Plaintiff's choice

19  of forum, the costs of litigation, the availability of compulsory process, the ease of access

20  to sources of proof, and the public policy of the forum all weigh against transfer.  *See*

21  *supra* §§ III.A.3, 6-9.  Familiarity with the governing law and the contacts relating to

22  Plaintiff's claims are neutral.  *See supra* §§ III.A.2, 5.  Only the place of contracting and

1    the parties' contacts with the forum support transfer.  *See supra* §§ III.A.1, 4.  On

2    balance, these factors favor maintaining venue in Washington.  The court therefore denies

3    Selective's motion to transfer venue to the District of New Jersey.

4    **B.     Motion for Application of New Jersey Law**

5              As discussed above, T-Mobile brings claims for breach of contract, bad faith,

6    violation of the CPA, and violation of IFCA.  (*See* Compl. at 5-8.)   Selective moves the

7    court to rule that New Jersey law applies to all those claims.  (*See* Mot. at 15-24.)

8    T-Mobile opposes that motion and argues that Washington law applies to all its claims.[9]

9    (*See* Resp. at 20-25.)

10             When the laws of more than one state potentially apply, a federal district court

11   sitting in diversity applies choice-of-law rules from the forum state.  *See Klaxon Co. v.*

12   *Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (holding that a federal court sitting in

13   diversity applies the conflict-of-law rules of the state in which it sits).  In Washington,

14   _____

15             [9] T-Mobile also asserts causes of action for a declaratory judgment, attorney's fees, and
     coverage by estoppel.  (*See* Compl. at 5-6, 8.)  However, T-Mobile maintains that these causes of
16   action are merely additional remedies for its other claims.  (*See* Resp. at 25; Compl. at 5 (asking
     for a declaration that Selective "is obligated to defend and indemnify T-Mobile"), 6 (asserting
17   that T-Mobile, "as the insured in a legal action to obtain the benefits under an insurance policy,
     is entitled to attorney's fees and costs associated with compelling Defendant to fulfill its
18   contractual obligations thereunder"), 8.)  Selective agrees that the declaratory and attorney's fees
     causes of action do not require a choice-of-law analysis separate from the breach of contract
19   claim.  (*See* Mot. at 16-18 ("Because all three causes of action sound in contract interpretation,
     we view the three claims as singular.").)  Although Selective treats T-Mobile's estoppel cause of
20   action as a separate claim, Selective analyzes the estoppel claim exactly as it analyzes
     T-Mobile's bad faith claim.  (*See id.* at 18-20, 23-24.)  Moreover, T-Mobile concedes that if the
21   estoppel cause of action requires a choice-of-law analysis, that analysis should be identical to the
     analysis the court performs on T-Mobile's bad faith claims.  (*See* Resp. at 25.)  The court
22   therefore concludes that the declaratory judgment, attorney's fees, and estoppel causes of action
     require no separate choice-of-law analysis at this time.

1    choice-of-law disputes require a two-step inquiry. First, the court must determine

2    whether there is an actual conflict between the laws or interests of Washington and the

3    laws or interests of another state. *Seizer v. Sessions*, 940 P.2d 261, 265 (Wash. 1997).

4    An actual conflict exists when the result of the issues is different under the law of the two

5    states. *Id.* If there is no actual conflict, the presumptive local law applies.[10] *Erwin v.*

6    *Cotter Health Ctrs.*, 167 P.3d 1112, 1120 (Wash. 2007).

7         If the court concludes there is an actual conflict between the law of the two states

8    on any given issue, the court must move on to the second step of the analysis, and

9    determine which jurisdiction has the "most significant relationship" to the particular

10    issue. *Seizer*, 940 P.2d at 265. Washington courts have adopted the restatement tests for

11    determining which jurisdiction has the "most significant relationship" to the occurrence

12    and the parties. *See Rice v. Dow Chem. Co.*, 875 P.2d 1213, 1217 (Wash. 1994)

13    (applying the Restatement (Second) of Conflict of Laws § 145 to a tort dispute); *Mulcahy*

14    *v. Farmers Ins. Co. of Wash.*, 95 P.3d 313, 317-18 (Wash. 2004) (applying the

15    Restatement (Second) of Conflict of Laws § 188 to a contract dispute).

16        1. Breach of contract

17         The parties dispute whether Washington and New Jersey law conflict with respect

18    to this claim. (*See* Mot. at 16-17; Resp. at 21-23.) Selective concedes that "the basic

19

20

21

22

___

[10] Washington courts follow the rule of dépeçage, which may require a court to apply the law of one forum to one issue, while applying the law of a different forum to another issue in the same case. *Brewer v. Dodson Aviation*, 447 F. Supp. 2d 1166, 1175 (W.D. Wash. 2006); *Polygon Nw. Co. v. Nat'l Fire & Marine Ins. Co.*, No. 11-92Z, 2011 WL 2020749, at *3 (W.D. Wash. May 24, 2011).

1    guiding principles of insurance policy interpretation do not appear to differ between

2    Washington and New Jersey law." (Mot. at 16.) Selective maintains, however, that the

3    laws of these states conflict "with regard to the weight afforded to the outcome of the

4    actual coverage determination." (*Id.* at 17.) Specifically, Selective points out that the

5    failure to prove coverage has different consequences under Washington and New Jersey

6    law. (*See id.* at 16-19.) Under Washington law, "a claim for bad faith claims handling

7    remains viable even if the insurer did not breach its duty to defend, pay, or settle."

8    *Bayley Const. v. Great Am. E & S Ins. Co.*, 980 F. Supp. 2d 1281, 1290 (W.D. Wash.

9    2013); *see St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 196 P.3d 664, 669 (Wash.

10   2008); (Mot. at 18.) Under New Jersey law, "[i]f there is a valid question of coverage,

11   i.e., the claim is 'fairly debatable,' the insurer bears no liability for bad faith." *Wacker-*

12   *Ciocco v. Gov't Emps. Ins. Co.*, 110 A.3d 962, 967 (N.J. Super. Ct. App. Div. 2015)

13   (quoting *Pickett v. Lloyd's*, 621 A.2d 445, 453-54 (N.J. 1993)) ("[T]he insured who

14   alleges bad faith by the insurer must establish the merits of his or her claim for

15   benefits."); (*see* Mot. at 19.)

16        Selective has failed to identify an actual conflict with respect to this claim.

17   Instead, Selective shows that New Jersey imposes on bad faith claims a precondition that

18   Washington does not impose on such claims. (*See* Mot. at 16-17.) This difference

19   constitutes a conflict between Washington and New Jersey law on bad faith claims, not

20   breach of contract claims. (*See id.* at 18-19 (discussing the same difference between

21   Washington and New Jersey law in arguing that the laws of these states conflict with

22   respect to T-Mobile's bad faith claim).) Accordingly, the court denies Selective's motion

ORDER- 21

1  for application of New Jersey law to T-Mobile's breach of contract claim.  *See Erwin*,

2  167 P.3d at 1120.

3      2.  Bad faith, IFCA, and CPA claims

4      The parties agree that Washington and New Jersey law conflict regarding bad

5  faith, IFCA, and CPA claims.  (*See* Mot. at 18-22; Resp. at 23 ("There is a conflict

6  between the law of Washington and New Jersey on the issue of bad faith."), 25 (omitting

7  any discussion of whether an actual conflict exists with respect to the IFCA and CPA

8  claims and instead arguing that, under the same choice-of-law analysis applicable to the

9  bad faith claim, Washington law applies).)  The parties also agree that the same choice-

10  of-law or "most significant relationship" analysis applies for each of these claims, as all

11  of them sound in tort.  (*See* Mot. at 19-20, 22-24.)  Accordingly, the court conducts one

12  choice-of-law analysis for these claims.

13      Washington courts follow the Restatement (Second) of Conflict of Laws § 145 to

14  determine which state's law governs tort, IFCA, and CPA claims.  *Tilden-Coil*

15  *Constructors, Inc. v. Landmark Am. Ins. Co.*, 721 F. Supp. 2d 1007, 1016 (W.D. Wash.

16  2010) (citing *Rice*, 875 P.2d at 1217, and analyzing choice of law for tort and CPA

17  claims); *Polygon Nw. Co. v. Nat'l Fire & Marine Ins. Co.*, No. 11–92Z, 2011 WL

18  2020749, at *5-6 (W.D. Wash. May 24, 2011) (analyzing choice of law for IFCA and

19  CPA claims).

20      Section 145 of the Restatement (Second) of Conflict of Laws directs the court to

21  determine the state with the most significant relationship to the occurrence and the parties

22  under the general principles stated in Section 6.  *See* Restatement (Second) of Conflict of

Laws § 145(1) (Am. Law Inst. 1971).  In doing so, the court should take into account the

following four contacts:  (a) the place where the injury occurred; (b) the place where the

conduct causing the injury occurred; (c) the domicil, residence, nationality, place of

incorporation, and place of business of the parties; and (d) the place where the

relationship, if any, between the parties is centered.  *Id.* § 145(2).  These contacts must be

evaluated according to their relative importance with respect to the issue at hand.  *Id.*

The most important Section 6 factors for torts claims are the needs of the interstate and

international systems, the relevant policies of the forum, the relevant policies of other

interested states and particularly of the state with the dominant interest in the

determination of the particular issue, and ease in the determination and application of the

law to be applied.  *Id.* cmt. b.

Selective argues that T-Mobile's injury, if any, occurred not in Washington, where

T-Mobile is headquartered, but in New York, "where defense costs have been paid and a

potential indemnity obligation may exist."  (Mot. at 20.)  This court has already held,

however, that "[l]ogically, when an insurance company acts in bad faith or violates IFCA

or CPA, its insured will experience that injury where the insured is located."  *MKB*

*Constructors v. Am. Zurich Ins. Co.*, 49 F. Supp. 3d 814, 833 (W.D. Wash. 2014)

(concluding that the place where the injury occurred was both Alaska (where the

construction problems and contract dispute giving rise to the insured's claim for benefits

took place) and Washington (where the insured was located)).  Nonetheless, the court

acknowledges that another court in this district has held, in a case similar to this one, that

the additional insured's injury, "the cost of having to defend itself in the [underlying]

1    litigation in Oregon state court, took place in Oregon[,]" not in the additional insured's

2    home state of Washington.  *Polygon*, 2011 WL 2020749, at *6.  Here, the court

3    concludes that the injury occurred in both Washington and New York and that this

4    contact tips slightly in favor of applying Washington rather than New Jersey law.  *See*

5    *MKB*, 49 F. Supp. 3d at 833; *see also Costco Wholesale Corp. v. Nationwide Mut. Ins.*

6    *Co.*, No. C11-1550 RAJ, 2012 WL 4320715, at *3 (W.D. Wash. Sept. 20, 2012)

7    (concluding this factor was neutral as between California and Washington where the

8    underlying claims against the additional insured arose in a variety of states, including

9    California, but the insurer's alleged tortious conduct took place while the insured "was a

10   resident of Washington").

11          With respect to the second factor, courts generally hold that in the insurance

12   context the location where the conduct causing the injury occurred is where the insurer

13   makes its coverage decisions.  *Costco*, 2012 WL 4320715, at *3 (citing *Lange v. Penn*

14   *Mut. Life Ins. Co.*, 843 F.3d 1175, 1179 (9th Cir. 1988), and *Polygon*, 2011 WL 2020749,

15   at *6).  Here, that location is New Jersey.  Selective made its decision to deny a defense

16   and coverage to T-Mobile in New Jersey.  (*See* Eber Decl. ¶ 6; Parlin Decl. ¶ 6; *see also*

17   RoR Letter at 1.)  Selective also communicated that decision to T-Mobile from New

18   Jersey.  (*See* Parlin Decl. ¶ 3; 2/26/15 Parlin Email.)  Moreover, T-Mobile did not

19   purchase an insurance policy from Selective in Washington.  Instead, T-Mobile allegedly

20   required Innovative, a New Jersey company, to add T-Mobile as an additional insured on

21   Innovative's New Jersey insurance policy.  (*See* Eber Decl. ¶ 7; PSA; FSA; Policy;

22

1   Compl. ¶¶ 6-8, 11-12.)  Accordingly, the location of the injury-causing conduct favors

2   New Jersey.  *See Costco*, 2012 WL 4320715, at *3.

3          With respect to the third factor, the contacts point to both Washington and New

4   Jersey.  T-Mobile's headquarters and principal place of business is Washington.  (Bauer

5   Decl. ¶ 3.)  Selective is incorporated and has its principal place of business in New

6   Jersey.  (Eber Decl. ¶ 2.)  As such, this factor is neutral.

7          In determining the center of the parties' relationship, "courts look to the location

8   where the insurer makes coverage decisions, where the contract of insurance was

9   requested and issued, and where the underlying liability occurred and is being litigated."

10  *Costco*, 2012 WL 4320715, at *3 (citing *Lange*, 843 F.3d at 1180, and *Polygon*, 2011

11  WL 2020749, at *6).  T-Mobile alleges that the PSA and FSA required Innovative to add

12  T-Mobile as an additional insured on the Policy.  (*See* Resp. at 12-13 (citing PSA and

13  FSA).)  Innovative is a New Jersey company that used a New Jersey broker to acquire the

14  Policy from Selective—a New Jersey insurer.  (*See* Eber Decl. ¶¶ 2, 7; Policy.)  T-Mobile

15  further alleges that Innovative added T-Mobile as an additional insured on the Policy, and

16  that T-Mobile qualifies as an additional insured under the Policy's EGLE.  (*See* Compl.

17  ¶¶ 8, 11-12; Resp. at 3-4.)  T-Mobile did not seek insurance through a Washington broker

18  or enter into an insurance contract in Washington.

19          Pursuant to agreements with T-Mobile, Innovative performed work on a

20  construction project in New York City.  (*See* Resp. at 3; T-Mobile 3dP Compl. ¶¶ 1, 15,

21  45; Compl. ¶¶ 10-11.)  In April 2013, a New York entity filed suit against T-Mobile and

22  Omnipoint for property damage arising out of that project.  (*See* Underlying Compl.)

1    T-Mobile later tendered its defense of the underlying litigation to Selective, a New Jersey

2    corporation.  (*See* Tender; Eber Decl. ¶ 2.)  Selective decided, in New Jersey, to reject

3    T-Mobile's tender.  (*See* Eber Decl. ¶ 7; Parlin Decl. ¶¶ 3-6; 2/26/15 Parlin Email.)

4    Selective communicated that decision to T-Mobile in Washington.  (*See* 2/26/15 Parlin

5    Email; Bauer Decl. ¶¶ 3-4, 6-10.)

6           T-Mobile contends that the parties' relationship is centered in Washington (Resp.

7    at 24); however, the only circumstance supporting that contention is that T-Mobile

8    received Selective's claims-related communications in Washington, where T-Mobile has

9    its headquarters.  (*See* 2/26/15 Parlin Email; Bauer Decl. ¶¶ 3-4, 6-14.)  The PSA and

10   FSA are not contracts between T-Mobile and Selective.  (*See* PSA; FSA.)  Moreover,

11   even if the court considered those agreements as contacts with Washington concerning

12   the parties' relationship, the court would nevertheless conclude that the parties'

13   relationship was centered in New Jersey where the Policy was issued, where T-Mobile

14   was allegedly added as an additional insured, and where coverage determinations were

15   made.  *See Costco*, 2012 WL 4320715, at *4.

16          Balancing the four factors, the court finds that the most significant contacts

17   between T-Mobile and Selective occurred in New Jersey.  T-Mobile argues that the court

18   should also consider Washington's interests and public policies.  (*See* Resp. at 24-25.)

19   However, Washington courts reach such considerations only when the relevant contacts

20   are "evenly balanced."  *Myers v. Boeing Co.*, 794 P.2d 1272, 1278 (Wash. 1990) ("[T]he

21   court must first look to the contacts each forum has with the case.  If the contacts are

22   evenly balanced, the court then looks to which forum has a greater interest in the

1    determination of the particular issue.").  Because the court concludes the contacts are not

2    evenly balanced, the court does not consider Washington's interest in the application of

3    Washington law.  *See id.*  Accordingly, the court grants Selective's motion for application

4    of New Jersey law to T-Mobile's bad faith, IFCA, and CPA claims.

5                              **IV.    CONCLUSION**

6            For the foregoing reasons, the court GRANTS in part and DENIES in part

7    Selective's motion to transfer venue and for application of New Jersey law (Dkt. # 9).

8    The court DENIES Selective's request to transfer this case to the District of New Jersey

9    and for application of New Jersey law to T-Mobile's breach of contract claim.  The court

10   GRANTS Selective's motion for application of New Jersey law to T-Mobile's bad faith,

11   CPA, and IFCA claims.

12           Dated this 14th day of April, 2016.

13

14

15                                          _____
                                            JAMES L. ROBART
16                                          United States District Judge

17

18

19

20

21

22

ORDER- 27