UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| T-MOBILE USA INC., | CASE NO. C15-1739JLR |
| Plaintiff, | ORDER |
| v. | |
| SELECTIVE INSURANCE COMPANY OF AMERICA, | |
| Defendant. | |

## I.  INTRODUCTION

Before the court are cross-motions for summary judgment by Plaintiff T-Mobile

USA Inc. ("T-Mobile USA") and Defendant Selective Insurance Company of America

("Selective").  (Pl. MSJ (Dkt. # 65); Def. MSJ (Dkt. # 71).)  T-Mobile USA seeks partial

summary judgment on its breach of contract, declaratory judgment, and bad faith claims

(*see* Pl. MSJ at 2), and Selective seeks summary judgment on all of T-Mobile USA's

claims (*see* Def. MSJ at 17-36.)  Selective also moves to continue the court's

consideration of T-Mobile USA's motion for partial summary judgment so that Selective may conduct additional discovery related to certain statements in T-Mobile USA's motion. (MTC (Dkt. # 54).) The court has considered the parties' submissions in favor of and in opposition to the motions, the relevant portions of the record, and the applicable law. Being fully advised,[1] the court denies Selective's motion to continue, denies T-Mobile USA's motion for partial summary judgment, grants in part Selective's motion for summary judgment, and reserves ruling in part on Selective's motion for summary judgment.

## II.    BACKGROUND

**A.    Factual Background**

This is an insurance coverage dispute in which T-Mobile USA asserts that (1) it is an additional insured under a Selective insurance policy issued to Innovative Engineering, Inc. ("Innovative"), and (2) Selective wrongfully failed to defend and indemnify T-Mobile USA in construction litigation in New York State ("the underlying litigation"). (*See* Compl. (Dkt. # 4); Bauer Decl. (Dkt. # 52) ¶ 3.)

On July 8, 2010, T-Mobile Northeast, LLC ("T-Mobile NE")—a wholly owned subsidiary of T-Mobile USA—entered into a "Field Services Agreement" with

//

//

---

[1] Neither party requests oral argument, and the court concludes that oral argument would not be helpful to its disposition of the motions. *See* Local Rules W.D. Wash. LCR 7(b)(4).

Innovative.[2] (*See* Sheridan Decl. (Dkt. # 53) ¶ 2, Ex. A ("FSA") at 1.)[3] Innovative contracted to perform architectural and engineering services for T-Mobile NE and to maintain general liability insurance including a waiver of subrogation in favor of T-Mobile NE and "its affiliates and subsidiaries." (*Id.* at 6.) The FSA also required Innovative to provide T-Mobile NE with certificates of insurance documenting the coverage that the FSA required Innovative to obtain and naming T-Mobile NE as an additional insured on the certificates. (*Id.* at 7.)

Selective issued Innovative a commercial general liability policy numbered S164349108 ("the Policy"), which was effective from January 16, 2012, through January 16, 2013. (Sheridan Decl. ¶ 3, Ex. B ("Policy") at 2-3.) The Policy provides that "the words 'you' and 'your' refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy." (*Id.* at 54.) The Declarations name "Innovative Engineering Inc &/ Or Innovative Client Solutions"—Innovative—as the Named Insured. (*Id.* at 3.) The Policy states that "SECTION II – WHO IS AN INSURED is amended to include as an additional insured any person or organization with whom you have agreed in a written contract or written

---

[2] On October 17, 2000, Innovative and Omnipoint Communications, Inc. ("Omnipoint")—T-Mobile NE's predecessor—entered into a "Professional Services Agreement." (*See* Cyprian Decl. (Dkt. # 72) ¶ 3, Ex. A ("PSA") at 2.) That agreement required Innovative to maintain general liability insurance, name Omnipoint as an additional insured "with a full waiver of subrogation" by Innovative, and obtain an additional insured endorsement to accompany the certificates of insurance designating Omnipoint as an additional insured. (*Id.* at 4.)

[3] Unless otherwise stated, the court's citations are to the ECF page numbers assigned to filed documents.

agreement to add as an additional insured on your policy." (*Id.* at 60.) The Policy further states that if an entity is designated in the Declarations as a limited liability company ("LLC"), its "members are also insureds, but only with respect to the conduct of [the LLC's] business." (*Id.* at 39.) In addition, Selective's "Elite Pac Endorsement" confers automatic additional insured status on an entity when an insured enters a contract that requires the insured to name the other contracting party as an insured. (Wyrsch Decl. (Dkt. # 51) ¶ 5.)

The Van Dyk Group ("VDG") has served as Selective's agent since 1988, and VDG and Selective entered into their most current agency agreement on January 1, 2007. (*Id.* ¶ 4.) The agreement provides that VDG has authority to act on Selective's behalf, including by issuing insurance certificates. (*Id.* ¶ 5.) In January 2012, VDG issued a certificate of insurance to T-Mobile USA that references the Policy, indicates that the "[c]ertificate holder is included as an additional insured with respect to General Liability, Auto[,] and Umbrella Liability," and identifies the certificate holder as "T-Mobile USA, Inc., its Subsidiaries and Affiliates." (*Id.* ¶ 10; *see also* Sheridan Decl. ¶ 5, Ex. D ("COI") at 2.) VDG's Michelle Ortiz signed the certificate of insurance as Selective's "Authorized Representative." (Wyrsch Decl. ¶ 10.)

The events giving rise to this coverage dispute are as follows. In 2005, Omnipoint—T-Mobile NE's predecessor in name—leased from Virginia Properties, LLC, a portion of a rooftop on which to construct a cell phone tower. (Cyprian Decl. ¶ 5, Ex. C ("Lease").) Innovative performed work for T-Mobile NE to construct the rooftop tower, and on April 23, 2013, Virginia Properties initiated the underlying litigation

against T-Mobile USA and Omnipoint, alleging that the cell tower damaged the building. *See Va. Props., LLC v. T-Mobile Ne. LLC*, No. 13-CV-03493 (S.D.N.Y.) *appeal docketed*, No. 16-2973 (2d Cir. Aug. 28, 2016); (*see generally* Lease.)

After T-Mobile USA and Omnipoint filed a third-party complaint against Innovative in the underlying litigation (Cyprian Decl. ¶ 6, Ex. D), Innovative tendered its defense to Selective (Sheridan Decl. ¶ 10, Ex. I).[4]  On July 23, 2013, Selective accepted the defense under a reservation of rights.  (Sheridan Decl. ¶ 11, Ex. J ("ROR Letter").) On February 1, 2013, T-Mobile USA—through Sedgwick, T-Mobile USA's claims agent—also tendered a claim to Innovative for defense and indemnification regarding the underlying litigation and requested that Innovative put its insurer on notice of the claim. (Sheridan Decl. ¶ 8, Ex. G ("Tender").)  The tender referenced a "contract with T-Mobile USA Inc. [that] contains an indemnification and hold harmless agreement that favors T-Mobile, USA Inc. in this matter" and also "requires that you obtain insurance covering not only you but T-Mobile, USA Inc. for these claims."  (*Id.* at 2.)  On February 7, 2013, Kary Cyprian, Claims Management Specialist for Selective, contacted Sedgwick to acknowledge "receipt of your request for tender on behalf of your insured T-Mobile." (Cyprian Decl. ¶ 5, Ex. E.)  Ms. Cyprian asked Sedgwick to "forward copies of all your investigation, copies of contracts between our insured [Innovative] and T-Mobile, copies of your insurance policy[,] and any other information that may assist us with the

//

---

[4] In the underlying litigation, T-Mobile USA moved for summary judgment on the basis that T-Mobile USA was not a party to the lease.  (Tindal Decl. (Dkt. # 74) ¶ 2, Ex. A.)

investigation of this claim." (*Id.* at 2.) Ms. Cyprian further stated that Selective would contact Sedgwick once Selective completed its investigation. (*Id.*)

According to Ms. Cyprian, based on her initial investigation into T-Mobile USA's tender, the only information she needed to make a final determination as to whether T-Mobile USA was an additional insured was a copy of T-Mobile USA's own insurance policy. (*See* Sheridan Decl. ¶ 9, Ex. H ("Cyprian Dep.") at 199-201, 211-12, 19.)[5] However, on July 8, 2013, another Selective claims handler, Michael Parlin, took over T-Mobile USA's claim. (Sheridan Decl. ¶ 4, Ex. C ("Parlin Dep.") at 119, 125.)

After Mr. Parlin assumed responsibility for the claim, Selective did not act on T-Mobile USA's tender until February 26, 2015. (Sheridan Decl. ¶ 13, Ex. L at 2.) On February 25, 2015, Sedgwick again demanded that Selective defend T-Mobile USA. (*Id.* ¶ 12, Ex. K.) The next day, Mr. Parlin denied via email T-Mobile USA's tender. (*Id.* ¶ 13, Ex. L at 2.) Mr. Parlin's email merely pointed T-Mobile USA to Selective's 2013 reservation of rights letter to Innovative. (*Id.* ("Based on this letter, Selective must respectfully decline your request for defense and indemnification . . . ."); *see also* ROR Letter.) In Mr. Parlin's subsequent deposition testimony, he stated that he denied T-Mobile USA's tender based on the Professional Services Exclusion in the Policy. (*See, e.g.*, Parlin Dep. at 119-20.) Sedgwick again emailed Mr. Parlin on March 13, 2015, stating "[a]s my client T-Mobile [USA] is an additional insured on your policy, we

//

_____

[5] The court cites to the page numbers of the deposition transcripts.

continue to look to you for defense and indemnification on this claim." (Sheridan Decl. ¶ 14, Ex. M at 2.)

In August 2015, Selective's coverage counsel, Dan Kohane, responded to an inquiry from T-Mobile USA's Lisa Bauer about Selective's position regarding coverage of T-Mobile USA under the policy. (Parlin Decl. (Dkt. # 73) ¶ 14, Ex. B at 2.) T-Mobile USA asked Selective to clarify the basis for denying coverage. (*See id.*) Mr. Kohane stated that Selective had determined T-Mobile USA was not a named or additional insured under the Policy and therefore was not entitled to coverage. (*Id.* ¶ 5, Ex. C ("Kohane Email") at 2.)

Before filing this suit, T-Mobile USA notified Selective that it intended to sue Selective under Washington's Insurance Fair Conduct Act ("IFCA"), RCW 48.30.015. (Sheridan Decl. ¶ 15, Ex. N.) On September 29, 2015, Selective responded that "[t]his letter confirms that T-Mobile [USA] is not an additional insured and that Selective has not violated IFCA." (*Id.* ¶ 16, Ex. O.)

**B.    Procedural Background**

T-Mobile USA then brought this suit in the Superior Court for King County, alleging that the terms of the Policy cover T-Mobile USA (*see* Compl. ¶ 13), and Selective removed the case to this court on November 4, 2015 (Not. of Rem. (Dkt. # 1)). T-Mobile USA asserts claims for: (1) declaratory judgment that Selective is contractually obligated to defend and indemnify T-Mobile USA in the underlying action, (2) breach of the insurance contract, (3) attorneys' fees, (4) breach of the duty of good faith and fair

//

dealing; (5) violation of the Washington State Consumer Protection Act ("CPA"), RCW 19.86, *et seq.*; and (6) estoppel.[6]  (Compl. ¶¶ 24-44.)

The parties' cross-motions are now before the court.  T-Mobile USA moves for partial summary judgment on its breach of contract, declaratory judgment, and bad faith claims.[7]  (Pl. MSJ at 2.)  T-Mobile USA contends that (1) Selective was contractually obligated to provide a defense to T-Mobile USA and that the only basis on which Selective denied coverage was incorrect (*id.* at 15-17); (2) Selective is estopped from asserting that T-Mobile USA could not have tendered a defense as an additional insured under the Policy (*id.* at 17-18); (3) even if Selective can argue additional coverage defenses, (a) T-Mobile USA is an additional insured because Selective's agent issued a certificate of insurance naming T-Mobile USA as an additional insured (*id.* at 19-22), (b) the Policy's additional insured endorsement confers coverage on T-Mobile USA as T-Mobile NE's sole member (*id.* at 22-23), and (c) T-Mobile USA has standing to recover defense costs as T-Mobile NE's parent company (*id.*); and (4) Selective's actions constitute bad faith as a matter of law (*id.* at 23-25).

Selective moves for summary judgment in its favor on all of T-Mobile USA's claims.  (*See* Def. MSJ.)  Selective argues that (1) T-Mobile USA is not an insured under the Policy (*id.* at 17-20), (2) the certificate of insurance does not confer coverage on

---

[6] T-Mobile USA also asserted a claim for violation of IFCA.  (*See* Compl. ¶¶ 40-42.)  On June 27, 2016, the court granted the parties' stipulated motion to dismiss T-Mobile USA's IFCA claim.  (6/27/16 Order (Dkt. # 34) at 3.)

[7] T-Mobile USA does not move for summary judgment on its CPA claim, the extent of damages, or its claim for punitive damages.  (Pl. MSJ at 2 n.1.)

T-Mobile USA (*id.* at 20-28), (3) T-Mobile USA is judicially estopped from seeking coverage under the Policy because T-Mobile USA took an inconsistent position in the underlying litigation (*id.* at 28-31), and (4) the court should dismiss T-Mobile USA's bad faith and CPA claims as a matter of law because T-Mobile USA is not an insured under the Policy and New Jersey law does not recognize consumer fraud claims related to the performance—rather than the sale of—insurance policies (*id.* at 31-36).

The court now addresses the cross-motions, as well as Selective's motion to continue the court's decision on T-Mobile USA's motion for partial summary judgment (MTC) and the parties' motions to strike (Def. MSJ at 6-7; Surreply (Dkt. # 80)).

## III. ANALYSIS

### A. Motion to Continue

T-Mobile USA states that "both T-Mobile US[A] and T-Mobile NE qualify as insureds under the Policy," (Pl. MSJ at 14), and "[Selective's claims handler] had an obligation to timely investigate and raise concerns about T-Mobile US[A]'s ability to tender the claim on behalf of T-Mobile NE" (*id.* at 17). Based on these representations, Selective asks the court to continue its ruling on T-Mobile USA's motion for partial summary judgment so that Selective can depose Lisa Bauer, who was involved in tendering T-Mobile USA's claim. (MTC at 3.) T-Mobile USA opposes Selective's motion for a continuance. (MTC Resp. (Dkt. # 61).)

Federal Rule of Civil Procedure 56(d) "provides a device for litigants to avoid summary judgment when they have not had sufficient time to develop affirmative evidence." *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1000 (9th Cir. 2002).

Rule 56(d) states that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may" defer considering the motion, deny the motion, allow time to obtain affidavits or declarations or to take discovery, or "issue any other appropriate order." Fed. R. Civ. P. 56(d). Rule 56(d) requires the nonmovant to make "(1) a timely application which (2) specifically identifies (3) relevant information, (4) where there is some basis for believing that the information sought actually exists." *VISA Int'l Serv. Ass'n v. Bankcard Holders of Am.*, 784 F.2d 1472, 1475 (9th Cir. 1986).[8] In addition, many courts refuse to grant motions to continue if the movant could have procured the information with reasonable diligence. *Landmark Dev. Corp. v. Chambers Corp.*, 752 F.2d 369, 372 (9th Cir. 1985).

The court concludes that the information Selective seeks is irrelevant to the motion for partial summary judgment.[9] Selective seeks additional discovery to uncover two specific facts: (1) "upon on [*sic*] whose behalf T-Mobile USA actually tendered the claim," and (2) "whether T-Mobile USA is now asserting a claim for coverage on th[e] basis [that T-Mobile USA tendered the claim on behalf of T-Mobile NE]." (Tindal Decl. ISO MTC (Dkt. # 55) ¶ 6.) Selective implicitly conditions its need for this discovery

---

[8] On December 1, 2010, Federal Rule of Civil Procedure 56(f) was renumbered and is now Federal Rule of Civil Procedure 56(d). The advisory committee's notes to Rule 56 regarding the 2010 amendments state that "[s]ubdivision (d) carries forward without substantial change the provisions of former subdivision (f)." Fed. R. Civ. P. 56 Advisory Committee's Notes. Thus, the cited authorities that refer to Rule 56(f) provide guidance on matters related to the current Rule 56(d). *Id.*

[9] T-Mobile USA disputes whether Selective diligently pursued the information Selective now seeks. (MTC Resp. at 10.) Because the court denies Selective's motion to continue on other grounds, it does not reach the issue of Selective's diligence in deposing Ms. Bauer.

upon the court considering the argument that T-Mobile USA tendered its claim on behalf of T-Mobile NE. (MTC Reply (Dkt # 69) at 3 ("If the Court entertains this new theory, which it should not, S[elective] should be allowed to depose the person at T-Mobile USA, Lisa Bauer, who would have knowledge [*sic*] on whose behalf the claim was allegedly tendered.").)

T-Mobile USA contests the need for discovery regarding these two issues, given that T-Mobile USA does not argue that it "tendered the claim on behalf of T-Mobile NE." (MTC Resp. at 11 (internal quotations omitted) ("[Selective] repeatedly asserts that the Motion [for Partial Summary Judgment] allegedly raised brand new allegations and facts indicating that T-Mobile USA expressly tendered the claim on behalf of T-Mobile NE. . . . To be clear, there are no such allegations or facts stated anywhere in the Motion [for Partial Summary Judgment]."); *see also* Moore Decl. ISO MTC (Dkt. # 62) ¶ 18 ("[T]he Motion [for Partial Summary Judgment] did not raise that issue.").)

Based on those representations, the information Selective seeks is relevant only to an assertion that T-Mobile USA tendered the defense on T-Mobile NE's behalf. (MTC Reply at 3). Because T-Mobile USA agrees that it does not raise this argument, the information Selective seeks will not assist in countering T-Mobile USA's motion for partial summary judgment. *Cf. Vickers v. Maldonado*, No. 1:14-CV-02039-SAB, 2017 WL 1208745, at *10 (E.D. Cal. Mar. 3, 2017) (denying a Rule 56(d) motion when the information sought was relevant to determining whether excessive force was used, but the motion for partial summary judgment raised only the issue of whether the excessive force claim was barred as a matter of law). The court thus denies Selective's Rule 56(d)

motion to continue T-Mobile USA's motion for partial summary judgment pending Ms.

Bauer's deposition because the information Selective seeks is irrelevant.

**B.  Motions to Strike**

Before moving on to the merits of the parties' cross-motions, the court addresses

each party's respective motion to strike materials in the other party's briefing.

1.  Selective's Motion to Strike

Selective moves to strike T-Mobile USA's "statement indicating that it tendered

the claim on behalf of T-Mobile NE, an allegation which is not supported by any of the

documents in the record or any of T-Mobile USA's supporting declarations."  (Def. MSJ

at 6.)  As the court recounted, T-Mobile USA states that it does not intend to assert that it

tendered the defense on T-Mobile NE's behalf.  *See supra* § III.A; (MTC Resp. at 11.)

Because the parties agree that the court should not consider such a statement, the court

grants Selective's motion to strike any statement that T-Mobile USA makes in its partial

summary judgment briefing regarding tendering a claim on T-Mobile NE's behalf.

2.  T-Mobile's Motion to Strike

For its part, T-Mobile USA moves to strike the portions of Selective's reply brief

in which Selective "argues for the first time that it should not be estopped from raising

the Tender Defense under the mend the hold and/or equitable estoppel doctrines."[10]

(Surreply at 2.)  The court does not consider arguments that a party raises for the first

---

[10] Washington has not recognized the "mend the hold" doctrine.  *See Anderson v. Country Mut. Ins. Co.*, No. C14-0048JLR, 2015 WL 687399, at *8 n.7 (W.D. Wash. Feb. 8, 2015).  Rather, in the insurance context, Washington recognizes the related doctrine of equitable estoppel.  *Id.*

time in a reply brief. *See Coos Cty. Bd. of Comm'rs v. Kempthorne*, 531 F.3d 792, 812

n.16 (9th Cir. 2008); *Lucas v. Bell Transp.*, 773 F. Supp. 2d 930, 939 n.2 (D. Nev. 2011);

*Best W. Int'l, Inc. v. AV Inn Assocs. 1, LLC*, No. CV-08-2274-PHX-DGC, 2010 WL

2789895, at *3 (D. Ariz. July 14, 2010) ("Both district courts and the Ninth Circuit have

regularly held that arguments made for the first time in a reply brief should not be

considered."). Here, rather than addressing T-Mobile USA's estoppel argument in

response to T-Mobile USA's motion, Selective addressed the argument in its reply brief

in support of its cross-motion for summary judgment. (*Compare* Def. MSJ, *with* Def.

Reply (Dkt. # 78) at 3-4 (arguing that Selective did not belatedly raise the issue that it

denied coverage because T-Mobile USA is not an insured under the Policy). Selective's

belated response to T-Mobile USA's estoppel argument is therefore improper, and the

court does not consider it in ruling on the motions for summary judgment. *See, e.g.*,

*Kempthorne*, 531 F.3d at 812 n.16. Nevertheless, T-Mobile USA must meet its summary

judgment burden of showing there is no genuine dispute of material fact as to the

estoppel issue. *See* Fed. R. Civ. P. 56(a); *infra* § III.C.1; *Anderson*, 2015 WL 687399, at

*9 ("[The plaintiff] has the burden on summary judgment to show that there is no

genuine dispute of material fact that [the insurer defendant] knew or should have known

of a particular misrepresentation at the time of the denial letter, and that [the insurer

defendant's] failure to raise that misrepresentation in the denial letter has prejudiced

him.").

//

//

## C. Cross-Motions for Summary Judgment

### 1. Legal Standard

Summary judgment is appropriate if the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007). A fact is "material" if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson*, 477 U.S. at 248-49).

The moving party bears the initial burden of showing there is no genuine issue of material fact and that it is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party does not bear the ultimate burden of persuasion at trial, it can show the absence of a dispute of material fact in two ways: (1) by producing evidence negating an essential element of the nonmoving party's case, or (2) by showing that the nonmoving party lacks evidence of an essential element of its claim or defense. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000). If the moving party will bear the burden of persuasion at trial, it must establish a prima facie showing in support of its position on that issue. *UA Local 343 v. Nor-Cal Plumbing, Inc.*, 48 F.3d 1465, 1471 (9th Cir. 1994). That is, the moving party must present evidence that, if uncontroverted at trial, would entitle it to prevail on that issue. *Id.* at 1473. If the moving party meets its burden of production, the burden then shifts to the nonmoving party to

identify specific facts from which a fact finder could reasonably find in the nonmoving party's favor. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 252.

The court is "required to view the facts and draw reasonable inferences in the light most favorable to the [non-moving] party." *Scott v. Harris*, 550 U.S. 372, 378 (2007). The court may not weigh evidence or make credibility determinations in analyzing a motion for summary judgment because these are "jury functions, not those of a judge." *Anderson*, 477 U.S. at 249-50. Nevertheless, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott*, 550 U.S. at 380 (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"[W]hen parties submit cross-motions for summary judgment, each motion must be considered on its own merits." *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2011) (internal quotation marks and alterations omitted). Thus, "the court must review the evidence submitted in support of each cross-motion." *Id.* The court now addresses the parties' motions for summary judgment, first taking up the arguments regarding estoppel and the Policy's coverage of T-Mobile USA before addressing whether Selective breached a duty to T-Mobile USA under the Policy.

//

//

1    2. <u>Breach of Contract Claim</u>

2         T-Mobile USA argues that summary judgment is appropriate on its breach of

3    contract claim because: (1) "Selective determined that it was obligated to provide a

4    defense under the Policy and has now admitted that the only basis upon which it denied

5    coverage to T-Mobile [USA] was incorrect" (Pl. MSJ at 15); (2) Selective is estopped

6    from relying on additional defenses it did not raise when it denied T-Mobile USA's

7    tender of defense (*id.*); and (3) even if the court considers Selective's defenses, T-Mobile

8    USA qualifies as an insured under the Policy (*id.*).  In turn, Selective argues that the court

9    should grant summary judgment in its favor on T-Mobile USA's breach of contract claim

10   because (1) T-Mobile USA is not an insured under the Policy (Def. MSJ at 17-20), (2) the

11   COI does not confer coverage on T-Mobile USA as an additional insured (*id.* at 20-25),

12   (3) VDG did not have actual or apparent authority to confer additional insured status on

13   T-Mobile USA (*id.* at 25-28), and (4) the judicial estoppel doctrine prevents T-Mobile

14   USA from taking a position in this case inconsistent with its positions in the underlying

15   lawsuit (*id.* at 28-31).

16       a. *Estoppel*

17          i.   Basis for Denial

18        Under Washington law, an insurer may not change the basis for avoiding liability

19   after litigation has begun.[11] *See Karpenski v. Am. Gen. Life Cos., LLC*, 999 F. Supp. 2d

20   1235, 1245 (W.D. Wash. 2014) (applying the doctrine where defendants failed to raise

---

21      [11] The court previously ruled that Washington law applies to T-Mobile USA's breach of
22   contract claim and, accordingly, to the court's construction of the underlying insurance policy.
     (*See* 4/14/16 Order (Dkt. # 30) at 21-22.)

other grounds for denial "until well after litigation began and they had answered [the p]laintiff's complaint, formally asserting [those grounds] only upon summary judgment"); *Integrated Health Prof'ls. v. Pharmacists Mut. Ins. Co.*, 422 F. Supp. 2d 1223, 1227 (E.D. Wash. 2006) ("In the State of Washington, an insurer may not change its position once an action has been commenced if the insured will suffer prejudice as a result."); *Bosko v. Pitts & Still, Inc.*, 454 P.2d 229, 234 (Wash. 1969) ("[I]t is the general rule that if an insurer denies liability under the policy for one reason, while having knowledge of other grounds for denying liability, it is estopped from later raising the other grounds in an attempt to escape liability, provided that the insured was prejudiced by the insurer's failure to initially raise the other grounds."). "This doctrine prevents an insurer from raising grounds to support a denial of coverage that it did not assert in its denial letter if (1) the insurer knew or should have known of the additional grounds when it denied coverage, and (2) the insured demonstrates that it suffered prejudice from the insurer's failure to raise the new grounds in its initial letter." *Anderson*, 2015 WL 687399, at *8; *see also Karpenski*, 999 F. Supp. 2d at 1245 (quoting *Hayden v. Mut. of Enumclaw Ins. Co.*, 1 P.3d 1167, 1171 (Wash. 2000)) ("To prevail under this form of estoppel, the insured must demonstrate that [it] 'either suffered prejudice or the insurer acted in bad faith when the insurer failed to raise all its grounds for denial in its initial denial letter.'").[12] "An insurer is charged with the knowledge which it would have obtained had it pursued a reasonably diligent inquiry." *Bosko*, 454 P.2d at 234.

---

[12] T-Mobile USA does not argue bad faith on Selective's part in making this estoppel argument. (*See* Pl. MSJ at 17-18.)

T-Mobile contends that the sole reason Selective initially denied coverage was that Selective determined the events giving rise to the claim in the underlying litigation fell within the Policy's Professional Negligence Exclusion. (*See* Pl. MSJ at 17; Parlin Dep. at 119-20.) T-Mobile USA asserts that Selective has since changed its position, asserting that T-Mobile USA is not entitled to coverage because it is not an insured under the Policy. (*Id.* at 17-18.) T-Mobile USA contends that it suffered prejudice due to this change because it "was deprived of an opportunity to cure any defects in its tender."[13] (*Id.* at 18; Pl. Reply at 14.)

T-Mobile USA has the burden of proving it is entitled to coverage and is an insured under the relevant policy. *See Mut. of Enumclaw Ins. Co. v. T & G Constr., Inc.,* 199 P.3d 376, 383 (Wash. 2008) ("The insured bears the burden of showing that coverage exists; the insurer than an exclusion applies."); *LaPoint v. Richards,* 403 P.2d 889, 891 (Wash. 1965) ("[I]nsurance involves a contractual relationship between the insurer and the insured."); *cf. Quadrant Corp. v. Am. States Ins. Co.,* 110 P.3d 733, 737 (Wash. 2005) ("[I]n Washington the expectations of the insured cannot override the plain language of the contract."). Because a party must be entitled to coverage under an insurance policy's language, courts decline to employ the estoppel doctrine where the doctrine will expand

---

[13] Although T-Mobile USA's complaint appears to allege coverage by estoppel, T-Mobile USA does not address that form of estoppel in its motion. (*See* Compl.; Pl. MSJ); *Kirk v. Mt. Airy Ins. Co.,* 951 P.2d 1124, 1127 (Wash. 1998) (". . . Washington cases recognize that coverage by estoppel is one appropriate remedy" for an insurer's "bad faith in failing to defend."). Accordingly, the court orders the parties to meet and confer and inform the court pursuant to the guidelines laid out below whether this claim remains in issue. *See infra* § III.C.3.b.

coverage.  *See, e.g.*, *Saunders v. Lloyd's of London*, 779 P.2d 249, 252 (Wash. 1989)

(holding that "[o]ne may not, by invoking the doctrine of estoppel . . ., bring into

existence a contract not made by the parties," which "preclud[es] . . . estoppel in

situations where the insured attempts to broaden coverage to protect against risks not

stipulated in the policy"); *accord Smit v. State Farm Ins. Co.*, 525 N.W.2d 528, 531

(Mich. 1994) (holding that estoppel is not available to broaden the coverage of a policy);

*Pepper Constr. Co. v. Transcon. Ins. Co.*, 673 N.E.2d 1128, 1131 (Ill. Ct. App. 1996)

(finding that estoppel did not apply when the defendant argued that the plaintiff was not

insured under the insurance policy); *Madgett v. Monroe Cty. Mut. Tornado Ins. Co.*, 176

N.W.2d 314, 316 (Wis. 1970) ("Plaintiff cannot here recover as an insured under a

contract of insurance because there was no contract of insurance between plaintiff and

defendant.  Estoppel cannot be used to create what does not and never did exist.").  For

this reason, T-Mobile USA cannot invoke the estoppel doctrine to prevent inquiry into

whether it is an insured under the Policy and entitled to coverage.  *See Saunders*, 779

P.2d at 252.

Moreover, even if the estoppel doctrine applied to this argument, T-Mobile USA

fails to demonstrate prejudice arising from Selective's position.[14]  *See Anderson*, 2015

---

[14] T-Mobile USA is correct that Selective does not address T-Mobile USA's estoppel argument in Selective's response.  (*See generally* Def. MSJ; Pl. Reply (Dkt. # 77) at 12 ("Selective's [r]esponse does not address T-Mobile's estoppel argument in any way . . . ." (emphasis omitted)).)  Instead, Selective responds to this argument for the first time in its reply brief, which is improper.  (*See* Def. Reply at 3-4); *Kempthorne*, 531 F.3d at 812 n.16.  However, the court must nevertheless analyze whether T-Mobile USA meets its initial summary judgment burden as to this argument.  In addition, Mr. Kohane's email was part of the record prior to Selective's reply brief.  (*See* Dkt.)

WL 687399, at *9.  On February 26, 2015, Selective's Michael Parlin denied T-Mobile

USA coverage, providing no reason for the denial and referencing only a July 23, 2013,

letter from Selective to Innovative.  (Sheridan Decl. ¶ 13, Ex. L.)  The attached letter

stated that Selective owed Innovative a duty to defend but would do so subject to a

reservation of rights.  (*See* ROR Letter.)  Selective reserved its rights based on its

contention that the Policy did not cover some of the allegations in the lawsuit (*id.* at 4-5)

and exclusions in the insurance policy, including contractual liability, property damage,

professional services, and asbestos (*id.* at 5-13).  In this exchange, Selective did not

inform T-Mobile USA that Selective believed T-Mobile USA was not an insured under

the Policy.  (*See* Sheridan Decl. ¶ 13, Ex. L.)  Mr. Parlin later testified that he based his

conclusion on the Professional Services Exclusion.  (*See* Parlin Dep. at 119-20.)

      However, on August 19, 2015, Selective's coverage counsel informed T-Mobile

USA that Selective denied coverage because T-Mobile USA was not named in the policy

as an insured or an additional insured.  (Kohane Email at 2.)  Accordingly, T-Mobile

USA knew as of August 19, 2015, that Selective believed T-Mobile USA did not qualify

as a named or additional insured under the policy.  (*See id.*; *see also* Compl. ¶ 19

("Selective's representative eventually confirmed that the only reason Selective had

denied coverage was because Selective had reached the erroneous conclusion that

'T-Mobile does not appear in the Selective Policy named as an insured' and 'does not

qualify as an additional insured' under the Policy.").)  Because T-Mobile USA was aware

of this position well before T-Mobile USA instituted this lawsuit on September 21, 2015,

//

T-Mobile USA's claim of prejudice rings hollow.[15] (*See* Compl. at 1 (noting the filing date).) In particular, T-Mobile USA could have done the very thing it now claims it could not: amend its tender of defense to Selective to state that it tendered the claim on T-Mobile NE's behalf or have T-Mobile NE tender its own defense.[16] (*See* Pl. Reply at 13 ("A simple email or phone call is all that it would have taken to cure any purported lack of clarity in T-Mobile [USA]'s tender . . . .").)

For these reasons, the court concludes that Selective is not estopped from arguing that the policy does not cover T-Mobile USA as an additional insured.

### ii. Judicial Estoppel

Selective also raises its own estoppel argument, which it contends precludes T-Mobile USA from arguing that it is an additional insured under the Policy. (Def. MSJ at 28-31.) Specifically, Selective argues that the position T-Mobile USA has taken in this court—that T-Mobile USA is an additional insured—is inconsistent with the position T-Mobile USA took in the underlying litigation—that T-Mobile USA and T-Mobile NE are separate legal entities. (*See* Def. MSJ at 29.) T-Mobile USA disputes this

---

[15] The court notes a discrepancy in the case law regarding whether the estoppel doctrine precludes an insurer from raising a defense after litigation begins or after the insurer issues its denial letter. *Compare, e.g.*, *Karpenski*, 999 F. Supp. 2d at 1245 (stating that the doctrine may apply where an insurer changes its position after litigation begins); *Integrated Health Prof'ls.*, 422 F. Supp. 2d at 1227 (same), *with Bosko*, 454 P.2d at 234 (Wash. 1969) (stating that the doctrine may apply where an insurer changes its position after issuing its denial letter); *Anderson*, 2015 WL 687399, at *8 (same). However, regardless of the particular point at which an insurer may be estopped from asserting additional grounds for denial of coverage, the court concludes that T-Mobile USA has not demonstrated prejudice arising from Selective's position.

[16] There is no evidence before the court that T-Mobile NE tendered its own claim to Selective at any point. (*See* Dkt.)

characterization, arguing that "nothing about the position T-Mobile [USA] has taken in this action is in any way inconsistent with its position in the underlying lawsuit." (Pl. Reply at 5.)

Judicial estoppel is an equitable doctrine that courts invoke at their discretion to prevent a party from gaining an advantage by asserting one position and then later taking a clearly inconsistent position. *See Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001). The court considers three factors in determining whether to apply the doctrine: (1) whether the party's later position is "clearly inconsistent" with its earlier position; (2) whether the party succeeded in persuading a court to accept the earlier position and the court's acceptance of the later position would lead to the perception that the party misled either court; and (3) whether the party asserting the later inconsistent positon will be unfairly advantaged if not estopped. *See New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001). "Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations and thus no threat to judicial integrity." *Id.* at 750-51 (internal quotation marks and citation omitted). The Ninth Circuit "restrict[s] the application of judicial estoppel to cases where the court relied on, or 'accepted,' the party's previous inconsistent position." *Hamilton*, 270 F.3d at 783.

In the underlying litigation, T-Mobile USA argued that it was not a proper party to the suit because it was a separate and distinct entity from both T-Mobile NE and Omnipoint—T-Mobile NE's predecessor. (*See* Tindal Decl. (Dkt. # 74) ¶ 2, Ex. A ("Underlying MSJ") at 6, 10; Tindal Decl. ¶ 3, Ex. B ("Crist Decl.") at ¶¶ 5, 9.) Contrary

to Selective's assertion, those arguments are consistent with T-Mobile USA's current position—that it is an additional insured under the Policy due to its status as T-Mobile NE's parent company and sole member. (*See* Pl. MSJ at 19-23.) In fact, much of T-Mobile USA's motion grapples with how the legal distinction between T-Mobile USA and T-Mobile NE might affect T-Mobile USA's right to coverage. (*See, e.g.*, *id.* at 22-23 (addressing T-Mobile USA's status as an additional insured through its position as T-Mobile NE's parent company and sole member).) And although T-Mobile USA refers to itself in its briefing as both "T-Mobile" and "T-Mobile US," that lack of precision does not make any of T-Mobile USA's positions in this case clearly inconsistent with its positions in the underlying litigation. (*See id.* at 2-3 (defining plaintiff T-Mobile USA, Inc. as "T-Mobile" or "T-Mobile US" and defining T-Mobile Northeast LLC as "T-Mobile NE"); Def. MSJ at 30 (" . . . T-Mobile USA simply refers to all of its related entities generally as 'T-Mobile' so that it can appear to this [c]ourt as a single, homogenous entity where the parent corporation enjoys the same rights and standing as its subsidiaries.").) The court will not apply judicial estoppel because there is no inconsistency between T-Mobile USA's positions in the underlying litigation and before this court.[17]

//

---

[17] T-Mobile USA also argues that the court should not apply judicial estoppel because it was not successful in "persuading the New York court to accept its prior position because the underlying motion Ms. Crist filed her declaration in support of was denied." (Pl. Reply at 7.) Because the court concludes T-Mobile USA has not taken inconsistent positions, it does not address this argument.

*b. Insured Status*

Because the court concludes that neither party is not estopped from advancing arguments related to T-Mobile USA's status as an insured, the court now turns to whether the Policy covers T-Mobile USA. T-Mobile USA asserts that it qualifies as an additional insured for three reasons: (1) the 2012 certificate of insurance that Selective's agent, VDG, issued names T-Mobile USA as an additional insured; (2) T-Mobile USA is an additional insured under the Policy's language because it is T-Mobile NE's sole member; and (3) T-Mobile USA has standing to seek defense costs as T-Mobile NE's parent company. (Pl. MSJ at 19-23.) Selective contends that the Policy does not cover T-Mobile USA based on both the plain language of the Policy (Def. MSJ at 17-20) and the certificate of insurance (*id.* at 20-28).

i. The Policy

Selective argues that T-Mobile USA does not qualify as a named or additional insured under the language of the Policy. (*See id.* at 18-20.) Selective first argues that Innovative—the party with whom T-Mobile NE entered the FSA—is the only named insured under the Policy. (*Id.* at 18.) Selective also argues that the Policy's additional insured endorsement also does not provide a basis for coverage because it extends additional insured status only to "any person or organization whom you [Innovative] have agreed in a written contract or written agreement to add as an additional insured on your [Innovative's] policy." (*Id.* at 19.) According to Selective, this endorsement does not extend to T-Mobile USA because T-Mobile USA and Innovative never entered into such an agreement or contract. (*Id.*)

T-Mobile USA acknowledges that Innovative and T-Mobile NE entered into the FSA, but contends that the FSA required Innovative to secure insurance coverage for T-Mobile NE and "its subsidiaries and affiliates." (*See* Pl. MSJ at 3.) T-Mobile USA further states that Mr. Parlin "admitted that T-Mobile [USA] qualified as an additional insured under the policy." (*Id.* at 16 (citing Parlin Dep. at 64-68, 91-92, 294-95).) Finally, T-Mobile USA contends that "the conflict between the Policy's 'Who Is an Insured' provision and the Policy's AI [additional insured] Endorsement is ambiguous and must be construed in favor of coverage under Washington law." (Pl. Reply at 20.)

The court must view an insurance contract in its entirety, not interpret a phrase in isolation, and give effect to each provision. *Cert. from U.S. Dist. Ct. ex rel. W. Dist. of Wash. v. GEICO Ins. Co.*, 366 P.3d 1237, 1239 (Wash. 2016). The court also gives insurance contracts "a fair, reasonable, and sensible construction." *Id.* If a policy provides coverage, "[a]n insurer has a duty to defend if the complaint, construed liberally, alleges facts which, if proven, impose liability within the policy's coverage." *Equilon Enters. LLC v. Great Am. Alliance Ins. Co.*, 132 P.3d 758, 760 (Wash. Ct. App. 2006). Accordingly, the court construes the documents comprising the insurance contract to determine to whom the contract extends coverage.[18]

---

[18] In a footnote, Selective states that it is unclear "how T-Mobile USA arrived at the determination that the FSA is the contract that allegedly governs the relationship between it and Innovative" because "the work performed by Innovative that forms the basis for the Underlying Suit was performed in 2005, and the FSA was executed in 2010." (Def. MSJ at 18 n.1.) However, because neither party substantively briefed this issue and both parties' arguments are premised on which entities the FSA required Innovative to name as an additional insured, the court does not further address Selective's statement.

1   The Policy's "Who Is an Insured" section states that it "is amended to include as

2   an additional insured any person or organization with whom you have agreed in a written

3   contract or written agreement to add as an additional insured on your policy." (Policy at

4   60.) Accordingly, the court looks at the FSA to determine whether Innovative agreed to

5   add T-Mobile USA as an additional insured under the Policy.[19] *See GEICO Ins. Co.*, 366

6   P.3d at 1239 (stating that the court must look at the insurance contract in its entirety).

7   Innovative and "the following affiliate(s) or subsidiary(y)(ies) [sic] of T-Mobile USA,

8   Inc. . . . T-Mobile Northeast LLC" entered into the FSA. (FSA at 2.) The FSA

9   "expressly acknowledges and agrees that T-Mobile USA, Inc. is not a party to this

10  Agreement." (*Id.* at 6.) The FSA also required Innovative to "maintain commercial

11  general liability insurance" and an umbrella insurance policy that "include[d] a full

12  waiver of subrogation in favor of Owner [T-Mobile NE], its affiliates and subsidiaries."

13  (*Id.* at 7.) The FSA further required Innovative to provide T-Mobile NE "with

14  certificates of insurance evidencing the coverage required by this Agreement prior to

15  commencing work hereunder" and to name T-Mobile NE "as an additional insured under

16  the insurance policies that [Innovative] is required to maintain" under the FSA." (*Id.* at

17  8.)

18      Based on the plain language of the Policy, Innovative and T-Mobile USA did not

19  enter into an agreement that required Innovative to have T-Mobile USA named as an

20

21      [19] Selective also offers that the PSA does not require T-Mobile USA to be named as an
     additional insured under the Policy. (*See* Def. MSJ at 2-3, 12-13, 20.) Because this fact is
     undisputed (*see* Pl. MSJ; Pl. Reply), the court concludes that the PSA does not affect any right to
22   coverage.

additional insured.  (*See* FSA at 2, 6, 8.)  Rather, the FSA required Innovative to name

T-Mobile NE as an additional insured.  (*See* id. at 8.)  Indeed, T-Mobile USA itself

recognizes that the FSA required Innovative to name T-Mobile NE—not T-Mobile

USA—as an additional insured.  (Pl. MSJ at 16 n.20 (stating that the FSA obligated

Innovative to name T-Mobile NE as an additional insured).)  For these reasons, T-Mobile

USA cannot rely on the Policy's plain language to demonstrate that it extended coverage

to T-Mobile USA.[20]

   In addition, Mr. Parlin's testimony is extrinsic to the Policy and relevant

agreements and should not to be considered unless those documents are ambiguous.

However, the court finds no ambiguity between the documents and indeed, T-Mobile

USA does not even explain how they are ambiguous.  (*See* Pl. Reply); *Gull Indus., Inc. v.*

*State Farm Fire & Cas. Co.*, 326 P.3d 782, 786 (Wash. Ct. App. 2014) ("Language in an

insurance policy is ambiguous if susceptible of two different but reasonable

interpretations."  Ambiguous policy language must be liberally construed in the insured's

favor."); *Queen City Farms, Inc. v. Cent. Nat'l Ins. Co of Omaha*, 882 P.2d 703, 721

(Wash. 1994) ("Under our general rules of construing insurance policies, ambiguity in a

policy may be resolved through extrinsic evidence as to the parties' intent.").  The Policy

---

[20] Nor can T-Mobile USA rely on the language in the FSA that required Innovative to "include a full waiver of subrogation in favor of Owner [T-Mobile NE], its affiliates and subsidiaries" to demonstrate that the FSA required Innovative to name T-Mobile USA as an additional insured.  (*See* FSA at 7.)  That provision merely required Innovative to waive its rights of subrogation in favor of T-Mobile NE and its affiliates and subsidiaries.  It did not require Innovative to ensure that T-Mobile NE's affiliates and subsidiaries were also additional insureds under the Policy.

clearly states that Innovative is the only named insured and provides that the additional

insured endorsement confers coverage on those entities with whom Innovative entered an

agreement providing for insurance coverage. (*See* FSA at 7-8.) The court "may not give

an insurance contract a strained or forced construction which would lead to an extension

or restriction of the policy beyond what is fairly within its terms." *Gull Indus.*, 326 P.3d

at 786 (internal quotation marks omitted). The FSA—the written agreement by which

Innovative agreed to maintain insurance coverage—required only that Innovative ensure

T-Mobile NE was named as an additional insured. (*See* FSA at 8.) It did not require

Innovative to name T-Mobile USA as an additional insured, meaning that the Policy's

additional insured endorsement does not extend to T-Mobile USA. (*See id.*; Policy at

60.) The Policy's additional insured endorsement and the FSA do not conflict and

neither document is ambiguous as to this issue. Accordingly, Mr. Parlin's testimony that

T-Mobile USA is an additional insured under the Policy and FSA is irrelevant.

T-Mobile USA argues that it is an additional insured because the Policy's "Who Is

an Insured" clause states that for an insured LLC coverage extends to the LLC's members

for claims related to the "'conduct of [the LLC's] business.'" (Pl. MSJ at 22 (quoting

Sheridan Decl., Ex. B).) Because T-Mobile USA is T-Mobile NE's sole member,

T-Mobile USA asserts that the Policy confers coverage on T-Mobile USA. (*Id.*)

The Policy's plain language does not support T-Mobile USA's argument. The

Policy's Declarations name "Innovative Engineering Inc &/ Or Innovative Client

Solutions" as the named insured, and the Policy states that "the words 'you' and 'your'"

refer to the named insured in the Declarations and "any other person or organization

qualifying as a Named Insured under this policy." (Policy at 3, 31.) The "Who Is an Insured" section that T-Mobile USA relies on states that if an entity is designated in the Policy's Declarations as an LLC, the LLC's "members are also insureds, but only with respect to the conduct of [the LLC's] business." (*Id.* at 39.) Accordingly, based on the Policy's language, the LLC provision refers not to coverage of T-Mobile NE's members, but to coverage for Innovative's members. (*Id.* at 31 (naming Innovative as the named insured in the Declarations), 39 (providing that the Policy's coverage also extends to the members of an LLC listed in the Declarations).) T-Mobile USA's focus on the LLC provision without giving effect to the Policy's other provisions contravenes both the plain language of the Policy and fundamental principles of contract interpretation. *See GEICO Ins. Co.*, 366 P.3d at 1239 ("Th[e] court views an insurance contract in its entirety, does not interpret a phrase in isolation, and gives effect to each provision.").

For these reasons, the undisputed facts before the court demonstrate that the Policy itself does not provide T-Mobile USA coverage as a named or additional insured.

### ii. The 2012 Certificate of Insurance

The parties next dispute whether T-Mobile USA is an additional insured based on the 2012 certificate of insurance VDG issued. (*See* Pl. MSJ at 19-22; Def. MSJ at 20-28.)

As T-Mobile USA notes, Washington courts have not directly spoken on the issue of whether an agent binds an insurance company by issuing a certificate of insurance that names a party as an additional insured. (*See* Pl. MSJ at 19.) When Washington courts have not directly spoken on a matter of Washington law, a federal court sitting in diversity must use its "own best judgment in predicting how the state's highest court

would decide the case." *Fiorito Bros., Inc. v. Fruehauf Corp.*, 747 F.2d 1309, 1314 (9th Cir. 1984) (internal quotation marks omitted); *see also Westlands Water Dist. v. Amoco Chem. Co.*, 953 F.2d 1109, 1111 (9th Cir. 1991) (internal quotation marks omitted) ("[I]n a diversity case, where the state's highest court has not decided an issue, the task of federal courts is to predict how the state high court would resolve it.").  In making this prediction, the court "must ascertain from all available data what the state law is and apply it." *Estrella v. Brandt*, 682 F.2d 814, 817 (9th Cir. 1982).  "An intermediate state appellate court decision is a 'datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'" *Id.* (quoting *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940)); *see also Westlands*, 953 F.2d at 1111 ("When an intermediate appellate court has ruled on an issue, and the state supreme court has not yet ruled on it, [the federal court] follow[s] the intermediate court's decision unless there is convincing evidence that the state supreme court would decide differently." (internal quotation marks omitted)).

Under basic principles of agency law, "'an insurance company is bound by all acts, contracts, or representations of its agent, whether general or special, which are within the scope of his real or apparent authority.'" *Chi. Title Ins. Co. v. Wash. State Office of the Ins. Comm'r*, 309 P.3d 372, 379 (Wash. 2013) (quoting *Pagni v. N.Y. Life Ins. Co.*, 23 P.2d 6, 16 (Wash. 1933)).  In addition, Washington law requires courts to "liberally construe insurance policies to provide coverage wherever possible." *Bordeaux, Inc. v. Am. Safety Ins. Co.*, 186 P.3d 1188, 1191 (Wash. Ct. App. 2008), *rev. denied by*

203 P.3d 380 (Wash. 2009); *see also S & K Motors, Inc. v. Harco Nat'l Ins. Co.*, 213

P.3d 630, 633 (Wash. Ct. App. 2009).  However, the Washington Supreme Court has

noted that "the purpose of issuing a certificate of insurance is to inform the recipient

thereof that insurance has been obtained."  *Postlewait Constr., Inc. v. Great Am. Ins.*

*Cos.*, 720 P.2d 805, 807 (Wash. 1986); *see also Ohio Cas. Ins. Co. v. Chugach Support*

*Servs. Inc.*, No. C10-5244RBL, 2011 WL 4712234, at *6 (W.D. Wash. Oct. 6, 2011)

("An insurance certificate, as stated in Washington law, is only evidence of the existence

of a policy.").  Therefore, the certificate "is not the equivalent of an insurance policy."

*Postlewait*, 720 P.2d at 807; *see also Int'l Marine Underwriters v. ABCD Marine, LLC*,

267 P.3d 479, 484 (Wash. Ct. App. 2011) (relying on *Postlewait* to conclude two entities

were not additional insureds by virtue of their inclusion in two certificates of insurance

and noting that "each certificate indicates that it 'is issued as a matter of information only

and confers no rights upon the certificate holder.  This certificate does not amend, extend

or alter the coverage afforded by the policies below.'"); *Evanston Ins. Co. v. Westchester*

*Surplus Lines Ins. Co.*, 546 F. Supp. 2d 1134, 1145 (W.D. Wash. 2008) ("Certificates [of

insurance] are not the legal equivalent of a contract and are for informational purposes

only."), *rev. on other grounds by Am. Guar. & Liab. Ins. Co. v. Westchester Surplus*

*Lines Ins. Co.*, 334 F. App'x 839 (9th Cir. 2009).

   The court concludes that Washington law on agency in the context of insurance

and the legal effect of certificates of insurance compels the conclusion that the certificate

of insurance at issue here did not confer insured status on T-Mobile USA.  Although

Washington law is clear that an insurer's agent binds the insurer through the agent's

actions and calls upon courts to liberally construe insurance policies, the Washington

Supreme Court has also noted that certificates of insurance are not equivalent to

insurance policies. *See Postlewait*, 720 P.2d at 807. In addition, the Washington Court

of Appeals has subsequently applied that principle to conclude that certificates of

insurance alone do not confer additional insured status. *See ABCD Marine, LLC*, 267

P.3d at 484. The court therefore concludes that if presented with the specific question in

this case, the Washington Supreme Court would conclude that a certificate of insurance is

not an insurance policy and cannot alone confer insured status on an entity.

T-Mobile USA urges the court not to rely on *Postlewait* to answer this question

because *Postlewait* is "not binding authority on the question of whether an authorized

broker can bind an insurer by issuing certificates of insurance." (Pl. MSJ at 18 (emphasis

omitted).) Although *Postlewait* does not address that specific question, the court

nevertheless treats *Postlewait*'s discussion of the effect of certificates of insurance as a

data point in determining how the Washington Supreme Court would decide this specific

issue. *See Estrella*, 682 F.2d at 817. As discussed above, the court concludes that the

Washington Supreme Court would reconcile these three strains of Washington law—(1)

an insurer's agent's ability to bind the insurer, (2) the liberal construction of insurance

policies, and (3) the view of certificates of insurance as distinct from insurance policies

and conferring no rights—by concluding that although an authorized agent may bind an

insurer by issuing a certificate of insurance, the certificate of insurance nonetheless

confers no rights and will not be treated as an insurance policy.

//

T-Mobile USA correctly points out that a number of jurisdictions have concluded that certificates of insurance issued by agents can confer coverage on third parties. (*See* Pl. MSJ at 19-20 (citing *J.M. Corbett Co. v. Ins. Co. of N. Am.*, 357 N.E.2d 125, 126-28 (Ill. App. 1976); *Bucon, Inc. v. Penn. Mfg. Ass'n Ins. Co.*, 151 A.D.2d 207, 210-11 (N.Y. App. 1989); *Sumitomo Marine & Fire Ins. Co. of Am. v. S. Guar. Ins. Co. of Ga.*, 337 F. Supp. 2d 1339, 1349-56 (N.D. Ga. 2004); *Blackburn, Nickels & Smith, Inc. v. Nat'l Farmers Union Prop. & Cas. Co.*, 482 N.W.2d 600, 603-04 (N.D. 1992).) In particular, T-Mobile USA makes much of the analysis in *Sumitomo Marine & Fire Insurance Co. of America v. Southern Guaranty Insurance Company of Georgia*, 337 F. Supp. 1339 (N.D. Ga. 2004). In *Sumitomo*, the District Court applied Georgia law to conclude that an insurance company's authorized agent bound the insurance company by virtue of a certificate of insurance naming an entity as an additional insured. *Id.* at 1352-53. However, there was no indication that Georgia state courts treated certificates of insurance as Washington state courts have. *See id.* at 1355 (stating that "[t]he parties have not submitted any binding authority squarely on point" regarding whether the disclaimer in the certificate of insurance stating that the certificate was for informational purposes only changed the analysis).

Although the cases T-Mobile USA cites present facts analogous to those here—an authorized agent issued a certificate of insurance purporting to show that a third party is an insured under the relevant Policy—the court discerns no compelling reason why the Washington Supreme Court would reach the conclusion those courts did, particularly

//

given its prior treatment of the effect of certificates of insurance.[21] *Postlewait*, 720 P.2d

at 807; *cf. Estrella*, 682 F.2d at 817 (holding that a federal court should not disregard

state appellate court decisions unless there is "persuasive data" that the state supreme

court would reach a different result); *Westlands*, 953 F.2d at 1111 (stating that the federal

court must follow state appellate courts' decisions "unless there is convincing evidence

that the state supreme court would decide differently").  Indeed, one of the cases

T-Mobile USA cites, *Mountain Fuel Supply v. Reliance Insurance Co.*, 933 F.2d 882,

889 (10th Cir. 1991), states that "[t]he majority view is that where a certificate of

insurance . . . expressly indicates that it is not to alter the coverage of the underlying

policy, the requisite intent is not shown and the certificate will not effect a change in the

policy."  That approach comports with Washington's treatment of certificates of

insurance.  *See ABCD Marine*, 267 P.3d at 484.  Indeed, the fact that T-Mobile USA

points the court to no Washington authority or sources suggesting that the Washington

Supreme Court would reach a different outcome bolsters the court's conclusion.  (*See* Pl.

MSJ.)

//

//

---

[21] The court notes that some authorities assert that there is little distinction between a certificate of insurance that is "an informational certificate" and a certificate of insurance that "conveys additional insured status on the certificate holder."  *See* Allan D. Windt, 2 Ins. Claims & Disputes § 6:37A (6th ed. 2013).  According to this view, although a certificate of insurance might state that it is issued as a matter of information only, confers no rights upon the certificate holder, and does not amend, extend, or alter the coverage the insurance policy affords, the certificate affords rights that "should not be ignored."  *Id.*  This view, however, does not align with the current treatment of certificates of insurance under Washington law.  *See Postlewait*, 720 P.2d at 807; *ABCD Marine, LLC*, 267 P.3d at 484.

The court concludes that under Washington law, the 2012 certificate of insurance does not confer additional insured status on T-Mobile USA, even if VDG acted within its authority in issuing the certificate of insurance.[22]

### iii. Standing to Seek Reimbursement as Parent Company

T-Mobile argues that as T-Mobile NE's parent company, it has standing to seek reimbursement of the defense costs it paid on T-Mobile NE's behalf in defending the underlying suit. (*Id.*) The scant legal authority T-Mobile USA provides in support of its standing argument addresses only whether a parent company has Article III standing to bring a claim. (*See* Pl. MSJ at 22-23 (citing only *Virginia Surety Co. v. Northrop Grumman Corp.*, 144 F.3d 1243, 1246 (9th Cir. 1998), in support of this argument); Pl. Reply at 21 (same).) In the sole case T-Mobile USA cites, the Ninth Circuit held that although a parent company did not have Article III standing based on its subsidiary's injury in fact, the parent company had standing because it experienced its own concrete injury. *See Virginia Surety*, 144 F.3d at 1246.

T-Mobile USA's reliance on this case is misplaced because Article III standing is not implicated here. Neither the court nor Selective challenges whether T-Mobile USA has suffered an injury in fact for purposes of Article III standing. (*See generally* Compl. ¶ 29 (alleging that T-Mobile USA incurred defense costs); Def. MSJ (failing to raise an Article III standing argument); Def. Reply (same).) Moreover, T-Mobile USA cites no

---

[22] Because the court reaches this conclusion, it does not address Selective's argument that VDG lacked actual or apparent authority to confer additional insured status on T-Mobile USA. (*See* Def. MSJ at 25-28.)

authority in support of its argument that Selective must reimburse T-Mobile USA for defense costs T-Mobile USA voluntarily assumed on behalf of its subsidiary. *Cf. Unigard Ins. Co. v. Leven*, 983 P.2d 1155, 1160 (Wash. Ct. App. 1999) (holding that an insurance company had no duty to reimburse a company's owner, president, and sole shareholder for defense costs he voluntarily incurred in responding to a lawsuit against the company). For these reasons, the court concludes that T-Mobile USA's standing argument does not provide a basis for T-Mobile USA to recover defense costs under the Policy.

Based on the foregoing analysis and uncontroverted evidence, the court concludes that neither the Policy nor the certificate of insurance provide coverage for T-Mobile USA. The court therefore denies T-Mobile USA's motion for summary judgment on its breach of contract and declaratory judgment claims and grants Selective's motion for summary judgment on those claims.

### 3. Bad Faith and CPA Claims

#### a. Bad Faith

T-Mobile USA also moves for summary judgment on its insurance bad faith claim. (Pl. MSJ at 23-25.) T-Mobile USA argues that the undisputed testimony from Mr. Parlin and Ms. Cyprian "makes it clear that Selective delayed investigating T-Mobile [USA]'s claim without valid reasons, acted in reckless indifference to factual proof in hand at the time of its denial, and made that denial without a fairly debatable basis." (*Id.* at 24 (internal quotation marks omitted).) Selective counters that because T-Mobile USA is not covered under the Policy, it cannot maintain a bad faith claim and that even if

T-Mobile USA is covered, Selective did not commit bad faith as a matter of law.  (Def.
MSJ at 32-34.)

Under New Jersey law, an insurer owes a duty of good faith in handling
third-party insurance claims.[23]  *See Rova Farms Resort, Inc. v. Investors Ins. Co. of Am.*,
323 A.2d 495, 497-500 (N.J. Sup. Ct. 1974); *see also Pickett v. Lloyd's*, 621 A.2d 445,
449-50 (N.J. Sup. Ct. 1993) (stating that *Rova Farms* recognized a bad faith claim for
third-party insurance claims).  However, an entity not insured under the insurance policy
may not bring a claim for bad faith in handling an insurance claim.  *See Ross v. Lowitz*,
120 A.3d 178, 190 (N.J. 2015) ("An insurer's duty of good faith and fair dealing . . . has
never been applied in New Jersey to recognize a bad faith claim by an individual or entity
that is not the insured or an assignee of the insured's contract rights."); *see also id.* at 191
("The insurers' duty of good faith and fair dealing in this case extended to their insured,
not to plaintiffs."); *LeBoon v. Zurich Am. Ins. Co.*, 673 F. App'x 173, 174 (3d Cir. 2016)
(concluding that because the plaintiff "plainly is not an insured under the liability policy,
he failed to state a plausible claim for relief on his allegations of bad faith").  Because the
court concludes that Selective did not insure T-Mobile USA, *see supra* § III.C.2.a, the
bad faith claim fails as a matter of law.  The court therefore grants summary judgment in
Selective's favor on this claim.

//

---

[23] The court ruled that New Jersey law applies to T-Mobile USA's bad faith and CPA
claims.  (*See* 4/14/16 Order at 27 (granting motion for application of New Jersey law to
T-Mobile's bad faith, IFCA, and CPA claims).)

### b. CPA

Selective moves for summary judgment on T-Mobile USA's CPA claim. (*See* Def. MSJ at 31-32.) In Selective's motion, however, Selective treats the CPA claim that T-Mobile USA alleged as a claim under New Jersey's Consumer Fraud Act ("CFA"). (*See id.*; *see also* Compl. ¶¶ 36-39 (asserting a claim for violation of the Washington State Consumer Protection Act).) Selective argues that summary judgment on this claim is appropriate because (1) T-Mobile USA is not covered under the Policy and (2) New Jersey law does not allow a plaintiff to bring a CFA claim regarding the performance of an insurance policy. (*See* Def. MSJ at 32-34.) T-Mobile USA argues that the New Jersey Supreme Court has not decided the latter issue and that the Third Circuit Court of Appeals and the District Court for the District of New Jersey have predicted that the New Jersey Supreme Court would extend the CFA to the performance of insurance contracts. (*See* Pl. Reply at 27-30.)

At the outset, the court notes that T-Mobile USA has never alleged a CFA claim. (*See* Compl.; *see also* 4/14/16 Order at 27 (granting motion for application of New Jersey law to T-Mobile's bad faith, IFCA, and CPA claims).) However, the parties have impliedly consented to amending T-Mobile USA's complaint to state a CFA claim, even though T-Mobile USA asserted a CPA claim. *See Lone Star Sec. & Video, Inc. v. City of L.A.*, 584 F.3d 1232, 1235 n.2 (9th Cir. 2009) (interpreting Federal Rule of Civil Procedure 15(b)(2) to apply when parties fully argue an unpleaded claim on summary judgment with no objection).

//

Even though the CFA claim is properly before the court, the parties have not adequately briefed how a determination that T-Mobile USA is not an insured under the Policy affects its ability to bring a CFA claim. (*See* Def. MSJ at 32 (stating only that "T-Mobile USA's ignorance with respect to the basic claim of whether it is an insured is fatal to its bad faith and consumer fraud claims against [Selective]"), 33 (stating only that "because T-Mobile USA is not an insured and therefore not entitled to any [Selective] Policy benefits, T-Mobile USA's bad faith and consumer fraud claims must be dismissed as a matter of New Jersey law").) Under New Jersey law, a CFA claim consists of three elements: "(1) unlawful conduct by the defendant; (2) an ascertainable loss by the plaintiff; and (3) a causal relationship between the unlawful conduct and the ascertainable loss." *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 749 (N.J. Sup. Ct. 2009). The parties spend significant time arguing whether New Jersey recognizes a claim under the CFA for fraudulent conduct in the performance of an insurance contract. (*See* Def. MSJ; Pl. Reply.) They do not, however, address who may bring such a claim if New Jersey indeed recognizes the claim. (*See* Def. MSJ; Pl. Reply.) Specifically, the parties do not brief whether T-Mobile USA may bring this claim if the court rules—as it has—that T-Mobile USA is not an insured under the Policy. (*See id.*) Accordingly, the court reserves ruling on T-Mobile USA's CFA claim.

The parties must submit simultaneous briefs of no more than seven (7) pages each that address the impact of the court's ruling that T-Mobile USA is not an insured on T-Mobile USA's CFA claim. The parties may not reargue their positions regarding New Jersey's recognition of a CFA claim for fraud in the performance of an insurance contract

except insofar as whether T-Mobile USA may bring a CFA claim as an uninsured implicates that issue. The parties' simultaneous briefs must be filed no later than Thursday, July 13, 2017.

In addition, the court orders the parties to meet and confer regarding what, if any, claims remain at issue in this case given the court's rulings herein. *See supra* n.13 (noting that T-Mobile USA appears to bring a claim for coverage by estoppel and that neither party raises that specific estoppel issue in their cross-motions for summary judgment); *Kirk*, 951 P.2d at 1127 (recognizing that where an insurer acts in bad faith, "coverage by estoppel is one appropriate remedy"). The parties must file a joint statement of no more than three (3) pages informing the court what, if any, claims—other than the CFA claim upon which the court reserves ruling—remain at issue in this matter. In the joint statement, the parties are not to argue the merits of any such claims or reargue the merits of any claims disposed of herein. The parties' joint statement must be filed no later than Thursday, July 13, 2017.

### 4. Joinder of T-Mobile NE

T-Mobile USA states that if the court determines it is not covered by the Policy, "the reasonable course to cure any such defect in the pleadings would be to allow T-Mobile [USA] to amend its complaint to name T-Mobile NE as a party plaintiff." (Pl. MSJ at 23 n.23); *see also* Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party."); Fed. R. Civ. P. 15(a)(2). At this time, the deadline the court set for joining parties has passed. (*See* Sched. Order. (Dkt. # 45) (setting deadline for the joinder of parties for February 28, 2017).) Accordingly,

T-Mobile USA must demonstrate good cause under Federal Rule of Civil Procedure 16 for modifying the scheduling order. *See* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992) ("Once the district court had filed a pretrial scheduling order pursuant to Federal Rule of Civil Procedure 16 which established a timetable for amending pleadings that rule's standards controlled."). The court orders T-Mobile USA to file any motion to amend the court's scheduling order to allow T-Mobile USA to add or substitute T-Mobile NE as a party no later than Thursday, July 13, 2017. If T-Mobile USA files such a motion, it must note the motion in accordance with the Western District of Washington's Local Civil Rules. *See* Local Rules W.D. Wash. LCR 7(d).

## IV. CONCLUSION

For the reasons set forth above, the court DENIES Selective's motion to continue (Dkt. # 54), DENIES T-Mobile USA's motion for partial summary judgment (Dkt. # 65), GRANTS in part Selective's motion for summary judgment (Dkt. # 71), and RESERVES ruling in part on Selective's motion for summary judgment (Dkt. # 71). The court further ORDERS (1) the parties to meet and confer regarding what, if any, claims remain at issue and to file a joint statement of no more than three (3) pages to that effect no later than Thursday, July 13, 2017, (2) the parties to file simultaneous briefing of no more than seven (7) pages no later than Thursday, July 13, 2017, addressing the impact of the court's rulings herein on T-Mobile USA's CFA claim, and (3) T-Mobile USA to file a

//

1   motion to amend its complaint, if it wishes to do so, no later than Thursday, July 13,

2   2017.

3         Dated this 27th day of June, 2017.

4

5

6                           JAMES L. ROBART
                           United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22