UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| T-MOBILE USA INC., | CASE NO. C15-1739JLR |
| Plaintiff, | ORDER |
| v. | |
| SELECTIVE INSURANCE COMPANY OF AMERICA, | |
| Defendant. | |

## I.     INTRODUCTION

Before the court are Plaintiff T-Mobile USA Inc.'s ("T-Mobile USA") motion for

reconsideration of the court's June 27, 2017, order (MFR (Dkt. # 83)), Defendant

Selective Insurance Company of America's ("Selective") motion for summary judgment

on T-Mobile USA's Consumer Fraud Act ("CFA") claim under New Jersey law (MSJ

(Dkt. # 71)), and T-Mobile USA's motion to compel discovery from Selective's outside

claims handling attorney (MTC (Dkt. # 90)).  The court has considered the motions, the

parties' submissions in support of and opposition to the motions, the relevant portions of the record, and the applicable law. Being fully advised,[1] the court DENIES T-Mobile USA's motion for reconsideration, DENIES as moot Selective's motion for summary judgment on the CFA claim, and DENIES as moot T-Mobile USA's motion to compel.

## II.    BACKGROUND

**A.    Factual Background**

The court extensively detailed the factual background of this case in its June 27, 2017, order. (*See* 6/27/17 Order (Dkt. # 82) at 2-9.) Accordingly, the court limits its discussion here to those facts relevant to the instant matters.

In this insurance coverage dispute, T-Mobile USA asserts that (1) it is an additional insured under a Selective insurance policy issued to Innovative Engineering, Inc. ("Innovative"), and (2) Selective wrongfully failed to defend and indemnify T-Mobile USA in construction litigation in New York State ("the underlying litigation"). (*See* Compl. (Dkt. # 4); 1st Bauer Decl. (Dkt. # 52) ¶ 3.)

On July 8, 2010, T-Mobile Northeast, LLC ("T-Mobile NE")—a wholly owned subsidiary of T-Mobile USA—entered into a "Field Services Agreement" with Innovative. (*See* Sheridan Decl. (Dkt. # 53) ¶ 2, Ex. A ("FSA") at 1.)[2] Innovative contracted to perform architectural and engineering services for T-Mobile NE and to

_____

[1] Neither party requests oral argument on any of the matters before the court, and the court determines that oral argument would not be helpful to its disposition of the issues. Local Rules W.D. Wash. LCR 7(b)(4).

[2] Unless otherwise stated, the court's citations are to the ECF page numbers assigned to filed documents.

maintain general liability insurance including a waiver of subrogation in favor of T-Mobile NE and "its affiliates and subsidiaries." (*Id.* at 6.) The FSA also required Innovative to provide T-Mobile NE with certificates of insurance documenting the coverage that the FSA required Innovative to obtain and naming T-Mobile NE as an additional insured on the certificates. (*Id.* at 7.)

Selective issued Innovative a commercial general liability policy numbered S164349108 ("the Policy"), which was effective from January 16, 2012, through January 16, 2013. (Sheridan Decl. ¶ 3, Ex. B ("Policy") at 2-3.) The Policy provides that "the words 'you' and 'your' refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy." (*Id.* at 54.) The Declarations name "Innovative Engineering Inc[.] &/ Or Innovative Client Solutions"—Innovative—as the Named Insured. (*Id.* at 3.) The Policy states that "SECTION II – WHO IS AN INSURED is amended to include as an additional insured any person or organization with whom you have agreed in a written contract or written agreement to add as an additional insured on your policy." (*Id.* at 60.) The Policy further states that if an entity is designated in the Declarations as a limited liability company ("LLC"), its "members are also insureds, but only with respect to the conduct of [the LLC's] business." (*Id.* at 39.)

The events giving rise to this coverage dispute are as follows. In 2005, Omnipoint—T-Mobile NE's predecessor in name—leased from Virginia Properties, LLC, a portion of a rooftop on which to construct a cell phone tower. (Cyprian Decl. (Dkt. # 72) ¶ 5, Ex. C ("Lease").) Innovative performed work for T-Mobile NE to

construct the rooftop tower, and on April 23, 2013, Virginia Properties initiated the underlying litigation against T-Mobile USA and Omnipoint, alleging that the cell tower damaged the building. *See Va. Props., LLC v. T-Mobile Ne. LLC*, No. 13-CV-03493 (S.D.N.Y.) *appeal docketed*, No. 16-2973 (2d Cir. Aug. 28, 2016); (*see generally* Lease.)

After T-Mobile USA and Omnipoint filed a third-party complaint against Innovative in the underlying litigation (Cyprian Decl. ¶ 6, Ex. D), Innovative tendered its defense to Selective (Sheridan Decl. ¶ 10, Ex. I). On July 23, 2013, Selective accepted the defense under a reservation of rights. (Sheridan Decl. ¶ 11, Ex. J ("ROR Letter").) On February 1, 2013, T-Mobile USA—through Sedgwick, T-Mobile USA's claims agent—also tendered a claim to Innovative for defense and indemnification regarding the underlying litigation and requested that Innovative put its insurer on notice of the claim. (Sheridan Decl. ¶ 8, Ex. G ("Tender").) The tender referenced a "contract with T-Mobile USA Inc. [that] contains an indemnification and hold harmless agreement that favors T-Mobile, USA Inc. in this matter" and also "requires that you obtain insurance covering not only you but T-Mobile, USA Inc. for these claims." (*Id.* at 2.)

According to Kary Cyprian, Claims Management Specialist for Selective, based on her initial investigation into T-Mobile USA's tender, the only information she needed to make a final determination as to whether T-Mobile USA was an additional insured was a copy of T-Mobile USA's own insurance policy. (*See* Sheridan Decl. ¶ 9, Ex. H ("Cyprian Dep.") at 199-201, 211-12, 219.)[3] On July 8, 2013, Selective claims handler,

---

[3] The court cites to the page numbers of the deposition transcripts.

Michael Parlin, took over T-Mobile USA's claim. (Sheridan Decl. ¶ 4, Ex. C ("Parlin Dep.") at 119, 125.) After Mr. Parlin assumed responsibility for the claim, Selective did not act on T-Mobile USA's tender until February 26, 2015. (Sheridan Decl. ¶ 13, Ex. L at 2.) On February 25, 2015, Sedgwick again demanded that Selective defend T-Mobile USA. (*Id.* ¶ 12, Ex. K.) The next day, Mr. Parlin denied via email T-Mobile USA's tender. (*Id.* ¶ 13, Ex. L at 2.) Mr. Parlin's email merely pointed T-Mobile USA to Selective's 2013 reservation of rights letter to Innovative. (*Id.* ("Based on this letter, Selective must respectfully decline your request for defense and indemnification . . . ."); *see also* ROR Letter.) In Mr. Parlin's subsequent deposition testimony, he stated that he denied T-Mobile USA's tender based on the Professional Services Exclusion in the Policy. (*See, e.g.*, Parlin Dep. at 119-20.) Sedgwick again emailed Mr. Parlin on March 13, 2015, stating "[a]s my client T-Mobile [USA] is an additional insured on your policy, we continue to look to you for defense and indemnification on this claim." (Sheridan Decl. ¶ 14, Ex. M at 2.)

In August 2015, Selective's coverage counsel, Dan Kohane, responded to an inquiry from T-Mobile USA Insurance & Claims Manager, Lisa Bauer, about Selective's position regarding coverage of T-Mobile USA under the policy. (Parlin Decl. (Dkt. # 73) ¶ 14, Ex. B at 2.) T-Mobile USA asked Selective to clarify the basis for denying coverage. (*See id.*) Mr. Kohane stated that Selective had determined T-Mobile USA was not a named or additional insured under the Policy and therefore was not entitled to coverage. (*Id.* ¶ 5, Ex. C ("Kohane Email") at 2.)

//

**B. Procedural Background**

T-Mobile USA then brought this suit in the Superior Court for King County, alleging that the terms of the Policy cover T-Mobile USA (*see* Compl. ¶ 13), and Selective removed the case to this court on November 4, 2015 (Not. of Rem. (Dkt. # 1)). T-Mobile USA asserted claims for: (1) declaratory judgment that Selective is contractually obligated to defend and indemnify T-Mobile USA in the underlying action, (2) breach of the insurance contract, (3) attorneys' fees, (4) breach of the duty of good faith and fair dealing, (5) violation of the Washington State Consumer Protection Act ("CPA"), RCW 19.86, *et seq.*, and (6) estoppel. (Compl. ¶¶ 24-44.)

The parties both moved for summary judgment. T-Mobile USA moved for partial summary judgment on its breach of contract, declaratory judgment, and bad faith claims. (Pl. MSJ at 2.) T-Mobile USA contended that (1) Selective was contractually obligated to provide a defense to T-Mobile USA and that the only basis on which Selective denied coverage was incorrect (*id.* at 15-17); (2) Selective was estopped from asserting that T-Mobile USA could not have tendered a defense as an additional insured under the Policy (*id.* at 17-18); (3) even if Selective could argue additional coverage defenses, (a) T-Mobile USA is an additional insured because Selective's agent issued a certificate of insurance naming T-Mobile USA as an additional insured (*id.* at 19-22), (b) the Policy's additional insured endorsement confers coverage on T-Mobile USA as T-Mobile NE's sole member (*id.* at 22-23), and (c) T-Mobile USA has standing to recover defense costs as T-Mobile NE's parent company (*id.*); and (4) Selective's actions constituted bad faith as a matter of law (*id.* at 23-25).

Selective moved for summary judgment on all of T-Mobile USA's claims. (*See* Def. MSJ.) Selective argued that (1) T-Mobile USA is not an insured under the Policy (*id.* at 17-20), (2) the certificate of insurance does not confer coverage on T-Mobile USA (*id.* at 20-28), (3) T-Mobile USA is judicially estopped from seeking coverage under the Policy because T-Mobile USA took an inconsistent position in the underlying litigation (*id.* at 28-31), and (4) the court should dismiss T-Mobile USA's bad faith and CFA claims as a matter of law (*id.* at 31-36).

On June 27, 2017, the court ruled on the cross-motions. (6/27/17 Order.) The court denied T-Mobile USA's motion for partial summary judgment, granted in part Selective's motion for summary judgment, and reserved ruling in part on Selective's motion. (*Id.* at 2.) Specifically, on T-Mobile USA's breach of contract claim, the court denied T-Mobile USA summary judgment and granted Selective summary judgment; on T-Mobile's insurance bad faith claim, the court denied summary judgment in T-Mobile USA's favor and granted summary judgment in Selective's favor; and the court reserved ruling on Selective's motion for summary judgment on T-Mobile USA's CFA claim because the parties had not adequately briefed New Jersey law on the subject (*id.* at 38-39). The court further ordered the parties to file a joint statement advising the court what—if any—claims remained in issue after the court's ruling.[4] (*Id.* at 41.) On October

---

[4] In its motion for summary judgment, T-Mobile USA stated that if the court determined that it was not an insured under the Policy, "the reasonable course to cure any such defect in the pleadings would be to allow T-Mobile [USA] to amend its complaint to name T-Mobile NE as a party plaintiff." (Pl. MSJ at 23 n.23.) Based on this statement, the court ordered T-Mobile USA to file any motion to amend the court's scheduling order to allow T-Mobile USA to add or substitute T-Mobile NE as a party no later than July 13, 2017. (6/27/17 Order at 41.) T-Mobile

1  12, 2017, T-Mobile USA filed a motion to compel a complete file and deposition from

2  Mr. Kohane.  (*See* MTC at 2.)

3     T-Mobile USA moves for reconsideration of the court's rulings on some of its

4  arguments related to the breach of contract claim.  (*See* MFR.)  In addition, the parties'

5  joint statement regarding any outstanding claims and T-Mobile USA's motion to compel

6  are before the court.  (*See* Joint Statement; MTC.)  The court addresses each issue in turn.

7                    **III.    ANALYSIS**

8  **A.    Motion for Reconsideration**

9      1. <u>Legal Standard</u>

10  "Motions for reconsideration are disfavored," and the court "will ordinarily deny

11  such motions in the absence of a showing of manifest error in the prior ruling or a

12  showing of new facts or legal authority which could not have been brought to [the

13  court's] attention earlier with reasonable diligence."  Local Rules W.D. Wash. LCR

14  7(h)(1).

15      2. <u>Reconsideration Motion</u>

16  T-Mobile USA seeks reconsideration of the following rulings:  (1) that Selective is

17  not estopped from asserting additional defenses based on Mr. Kohane's August 19, 2015,

18  email,[5] and (2) that T-Mobile USA failed to demonstrate as a matter of law that its status

19

_____

20  USA declined to do so.  (*See* Joint Statement (Dkt. # 85) at 2 (stating that the court's order
   "precludes T-Mobile USA from being able to meet the standard for demonstrating good cause
21  for leave to amend"); Dkt.)

22     [5] T-Mobile USA also suggests that although the court stated that it would not consider
   Selective's late-filed argument regarding the estoppel issue, the court nevertheless adopted

as T-Mobile NE's parent company and sole member provides a basis for coverage or reimbursement. (*See* MFR at 2, 5.) Selective opposes reconsideration.[6] The court concludes that T-Mobile USA fails to show manifest error in the court's ruling or new facts or legal authority that could not have been brought to the court's attention earlier with reasonable diligence. For these reasons, the court denies T-Mobile USA's motion for reconsideration.

     *a. Estoppel*

     In support of summary judgment on its breach of contract claim, T-Mobile USA argued that Selective was estopped from relying on additional defenses Selective did not raise upon denying T-Mobile USA's tender of coverage. (*See* Pl. MSJ at 15; 6/27/17 Order at 16.) In ruling on this argument, the court concluded that T-Mobile USA (1) had,

---

Selective's argument. (MFR at 3-4.) The court did not. The court ruled that Selective addressed the estoppel issue for the first time on reply, depriving T-Mobile USA of an opportunity to respond to the argument. (6/27/17 Order at 13, 19 n.14.) However, T-Mobile USA itself put Mr. Kohane's email before the court as evidence in support of its motion for summary judgment. (*See* Dkt.) Moreover, T-Mobile USA's complaint references Mr. Kohane's email and states that "Selective's representative eventually confirmed that the only reason Selective had denied coverage was because Selective had reached the erroneous conclusion that 'T-Mobile does not appear in the Selective Policy named as an insured' and 'does not qualify as an additional insured' under the Policy." (Compl. ¶ 19.) Therefore, the court was not precluded from considering these filings in determining whether T-Mobile USA met its initial burden of demonstrating the lack of a genuine dispute of material fact regarding the estoppel issue. *See* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."); (*see also* 6/27/17 Order at 13 ("T-Mobile USA must meet its summary judgment burden of showing there is no genuine dispute of material fact as to the estoppel issue.") (citing *Anderson v. Country Mut. Ins. Co.*, No. C14-0048JLR, 2015 WL 687399, at *9 (W.D. Wash. Feb. 8, 2015)).)

[6] The court notes that both parties spend a considerable portion of their briefing rehashing arguments they made previously and accusing each other of various misdeeds. (*See* Resp.; Reply (Dkt. # 89).) The court expects a higher standard of practice and decorum than the parties' counsel demonstrate in their recent briefing.

1  in any event, the burden of proving it is entitled to coverage under the Policy, and (2)

2  failed to meets its summary judgment burden of demonstrating prejudice arising from

3  Selective's alleged change in position.  In moving for reconsideration, T-Mobile USA

4  ignores the court's first conclusion and glosses over important elements of the court's

5  second conclusion.

6       As the court addressed in its June 27, 2017, order, under Washington law, "[t]he

7  insured bears the burden of showing that coverage exists."  *Mut. of Enumclaw Ins. Co. v.*

8  *T & G Constr., Inc.*, 199 P.3d 376, 383 (Wash. 2008); *see also LaPoint v. Richards*, 403

9  P.2d 889, 891 (Wash. 1965) ("[I]nsurance involves a contractual relationship between the

10  insurer and the insured.").  Washington law also bars employment of the estoppel

11  doctrine when doing so will expand coverage beyond that contemplated by the insurance

12  contract.  *See Saunders v. Lloyd's of London*, 779 P.2d 249, 252 (Wash. 1989) (holding

13  that "[o]ne may not, by invoking the doctrine of estoppel . . . , bring into existence a

14  contract not made by the parties," which "preclude[es] . . . estoppel in situations where

15  the insured attempts to broaden coverage to protect against risks not stipulated in the

16  policy").  Based on these principles, the court concluded that—regardless of whether

17  T-Mobile USA knew of a potential tender defense or other coverage defenses—T-Mobile

18  USA nevertheless bore the burden of demonstrating that it was entitled to coverage.

19  Because T-Mobile USA moved for summary judgment, it therefore had to meet this

20  burden in the first instance.[7]  Therefore, there was nothing improper about the court

21

22      [7] In addition, because Selective also moved for summary judgment on the breach of
contract claim, T-Mobile USA had to demonstrate a genuine dispute of material fact if Selective

analyzing whether the Policy provided coverage to T-Mobile USA in any of the several

ways T-Mobile USA contended that it did.  For these reasons, the court denies

reconsideration of its ruling on this issue.

The court also concluded that T-Mobile USA had not met its burden of proving

prejudice—an element required to invoke estoppel—from any change in Selective's

position.  (6/27/17 Order at 19); *see, e.g.*, *Bosko v. Pitts & Still, Inc.*, 454 P.2d 229, 234

(Wash. 1969) ("[I]t is the general rule that if an insurer denies liability under the policy

for one reason, while having knowledge of other grounds for denying liability, it is

estopped from later raising the other grounds in an attempt to escape liability, provided

that the insured was prejudiced by the insurer's failure to initially raise the other

grounds.").  The court ruled that Mr. Kohane's August 19, 2015, email informed

T-Mobile USA that Selective determined T-Mobile USA was not named in the Policy as

an insured or an additional insured, and therefore was not entitled to coverage.[8]  (6/27/17

Order at 20.)  In its reply brief, T-Mobile USA argued that it was prejudiced because it

could not amend its tender of defense to Selective to state that it tendered the claim on

T-Mobile NE's behalf or have T-Mobile NE tender its own defense.  (Pl. Reply (Dkt.

# 77) at 13 ("A simple email or phone call is all that it would have taken to cure any

---

met its burden of showing the lack of such a dispute in the first instance.  *See, e.g.*, *Fair Hous.
Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2011) ("[W]hen
parties submit cross-motions for summary judgment, each motion must be considered on its own
merits.").

[8] The court notes that T-Mobile USA's estoppel arguments in its motion for summary
judgment were imprecise because T-Mobile USA argued both that estoppel should preclude
Selective from arguing any defense to coverage and from arguing specifically a tender defense.
(*See* Pl. MSJ at 18.)

purported lack of clarity in T-Mobile [USA]'s tender . . . ."); *cf.* Compl. ¶ 19

("Selective's representative eventually confirmed that the only reason Selective had

denied coverage was because Selective had reached the erroneous conclusion that

'T-Mobile does not appear in the Selective Policy named as an insured' and 'does not

qualify as an additional insured' under the Policy.'").)  The court concluded that

T-Mobile USA had not sufficiently demonstrated prejudice because Mr. Kohane's email

put T-Mobile USA on notice that Selective did not consider T-Mobile USA insured under

the Policy before this lawsuit began on September 21, 2015.[9]  (6/27/17 Order at 20.)

T-Mobile USA's arguments in support of reconsideration therefore misapprehend the

court's ruling.

Moreover, the fact that Mr. Parlin's subsequent deposition testimony—which the

court thoroughly reviewed in ruling on the cross-motions—states that the only basis on

which he denied coverage was the Policy's Professional Negligence Exclusion does not

change the analysis.[10]  (*See* MFR at 2.)  Regardless of Mr. Parlin's testimony and basis

for denial, Mr. Kohane's email also informed T-Mobile USA that Selective believed

T-Mobile USA was not entitled to coverage under the Policy.  (*See* 6/27/17 Order at 20.)

Thus, the court concluded that T-Mobile USA failed to demonstrate the required

---

[9] In its motion for reconsideration, T-Mobile USA makes much of the fact that Mr. Kohane's email stated only that Selective determined "T-Mobile" was not covered under the Policy.  (*See* MFR at 4.)  However, T-Mobile USA tendered the claim to Selective.  (2d Bauer Decl. (Dkt. # 84) ¶ 6 (acknowledging that "tender was made on behalf of 'T-Mobile USA'").)

[10] Furthermore, as the court explained in its June 27, 2017, order, the court did not rely on Mr. Parlin's testimony in construing the insurance contract because the testimony was extrinsic and T-Mobile USA did not demonstrate any ambiguity in the contract requiring the court to utilize such extrinsic evidence.  (6/27/17 Order at 27-28.)

1    prejudice as a matter of law.[11]  (*See* 6/27/17 Order at 19 (citing *Anderson*, 2015 WL

2    687399, at *9).)  T-Mobile USA's motion does not provide a sufficient basis for

3    reconsidering that conclusion.

4          *b.  Right to Coverage*

5          Based on the rulings detailed above, the court proceeded to analyze whether

6    T-Mobile USA was insured or otherwise entitled to recovery under the Policy in order to

7    rule on the parties' cross-motions for summary judgment on T-Mobile USA's breach of

8    contract claim.  T-Mobile USA argues that (1) "Selective failed to present the [c]ourt

9    with any authority for the argument that a parent company has no right . . . to pursue

10   coverage rights held by its subsidiary" (MFR at 6); (2) T-Mobile USA argued on

11   summary judgment that it had an "ability to pursue [T-Mobile NE's] coverage rights as

12   its parent and sole 'member' of [T-Mobile NE]" (*id.*); and (3) the court's estoppel

13   "reasoning does not apply to T-Mobile USA's prosecution of [T-Mobile NE's] right to

14   coverage 'on behalf of' [T-Mobile NE] as [T-Mobile NE]'s parent and sole member" (*id.*

15   at 7).  The court addresses each of these arguments in turn and concludes that they fail to

16   provide a basis for reconsideration.

17   //

18

19          _____

         [11] T-Mobile USA also states in its motion for reconsideration that the court "effectively
20   endorses" a premise that "[n]either the law nor the equities support."  (MFR at 5.)  As the court
     has recounted several times in this order—and T-Mobile USA ignores in the first instance—
21   regardless of the estoppel issue, T-Mobile USA must prove it is entitled to coverage or some
     other basis for recovery independently of a tender defense.  The court thus analyzed the parties'
22   arguments regarding whether T-Mobile USA was entitled to summary judgment on the breach of
     contract claim—the basis for any relief T-Mobile USA sought in this case.

In its motion for summary judgment, T-Mobile USA argued that if the court analyzed whether it was covered under the Policy or there was some other basis for recovery, it had standing as T-Mobile NE's parent company to seek reimbursement of defense costs. (Pl. MSJ at 15, 19-23.) Accordingly, T-Mobile USA had the initial burden of demonstrating its entitlement as a matter of law. For that reason, T-Mobile USA's argument on reconsideration that Selective failed to provide the court with authority demonstrating that T-Mobile USA did not have such standing fails. (*See* MFR at 6.) Moreover, the court concluded that T-Mobile USA had not met its burden because it provided authority demonstrating only that a parent company has Article III standing when the parent experiences its own concrete injury. (*See* Pl. MSJ at 22-23 (citing *Virginia Surety Co. v. Northrop Grumman Corp.*, 144 F.3d 1243, 1246 (9th Cir. 1998)); 6/27/17 Order at 35-36.) Although the court pointed out that this was the only legal authority T-Mobile USA provided (6/27/17 Order at 35), the court did not mean to imply—as T-Mobile USA suggests on reconsideration—that the number of cases cited was the reason for the court's denial (*see* MFR at 6 ("The fact that T-Mobile USA may have only cited to one case confirming that a similarly situated parent has that right (*Virginia Surety*) does not somehow negate Selective's failure to prove out its own defense or rebut T-Mobile USA's showing that it has standing to assert [T-Mobile NE's] rights as an additional insured because it suffered the distinct economic injury established by its filings.")). Rather, the court denied T-Mobile USA summary judgment on this theory of recovery because T-Mobile USA had not met its burden of demonstrating as a

//

matter of law that it was entitled to reimbursement of defense costs as T-Mobile NE's parent.[12]

In addition, T-Mobile USA's contention in moving for reconsideration that its "assertion of [T-Mobile NE's] coverage rights as its undisputed parent and sole member establishes a *prima facie* claim for coverage by T-Mobile USA, regardless of whether T-Mobile USA has independent standing as an additional insured" also fails. (MFR at 6.) The court has already addressed why reconsideration is unwarranted on the basis of T-Mobile USA's status as T-Mobile NE's parent company. *See supra* p. 14. Further, the court is well aware that T-Mobile USA argued in moving for summary judgment that it was entitled to coverage as T-Mobile NE's sole member because the court ruled on that issue. (Pl. MSJ at 22; 6/27/17 Order at 28-29.) T-Mobile USA argued on summary judgment that it was an additional insured under the Policy's "Who Is an Insured" clause because the clause states that for an insured LLC, coverage extends to the LLC's members for claims related to the conduct of the LLC's business. (Pl. MSJ at 22.) The court concluded, however, that the Policy's plain language did not support that argument. (6/27/17 Order at 28.) Specifically, the court ruled that "based on the Policy's language,

---

[12] T-Mobile USA also suggests that the court's citation to *Unigard Insurance Company v. Leven*, 983 P.2d 1155, 1160 (Wash. Ct. App. 1999) warrants reconsideration of the court's ruling on this issue. (MFR at 7; *see also id.* 7 n.5.) In a footnote, T-Mobile USA "respectfully submits" that the case "does not stand for the broad proposition cited by the [c]ourt." (*Id.* at 7 n.5.) The court clarifies that it cited *Leven* to suggest that there are situations in which an insurance company has no duty to reimburse other entities for defenses voluntarily incurred. 983 P.2d at 1160. In light of this instructive case law suggesting a position distinct from that T-Mobile USA asserted and, more importantly, T-Mobile USA's failure to provide authority supporting its standing/reimbursement argument, neither the court's citation nor its conclusion was in error.

the LLC provision refers not to coverage of T-Mobile NE's members"—*i.e.*, T-Mobile

USA—"but to coverage for Innovative's members." (*Id.* at 29.) Thus, T-Mobile USA

did not establish a *prima facie* right to coverage as T-Mobile NE's sole member as it now

contends. (*See* MFR at 6.) Rather, the court concluded that T-Mobile USA's argument

in this regard failed and declined to grant summary judgment in T-Mobile USA's favor

on this theory. (6/27/17 Order at 29.)

Finally, as the court has already stated at length, the court's ruling on T-Mobile

USA's estoppel argument established that T-Mobile USA was, in any event, required to

establish coverage or some other basis for recovery of the defense costs. *See supra*

§ III.2.a. For this reason, the court analyzed T-Mobile USA's other

arguments—including its standing to recover as T-Mobile NE's parent company and

right to coverage as T-Mobile NE's sole member. (*See* 6/27/17 Order at 24, 28-29,

35-36.) In doing so, the court concluded that T-Mobile USA had not met its burden of

demonstrating that either of those theories provided a basis for granting summary

judgment on the breach of contract claim. (*Id.* at 28-29, 35-36.) The court declines to

reconsider the estoppel ruling for the reasons discussed above and because the court

independently considered and rejected the arguments T-Mobile USA now reiterates.

For these reasons, the court declines to reconsider its prior rulings that T-Mobile

USA failed to meets its burden of demonstrating an entitlement to reimbursement as

T-Mobile NE's parent company and coverage or recovery as T-Mobile NE's sole

member.

//

**B.    Outstanding Claims**

In its June 27, 2017, order, the court reserved ruling on Selective's motion for summary judgment on T-Mobile USA's CFA claim.  (6/27/17 Order at 38-39.)  Because the court had earlier ruled that New Jersey law applied to this claim, the parties proceeded as though T-Mobile USA had alleged a claim under New Jersey's CFA even though T-Mobile USA's complaint alleged a claim under Washington's Consumer Protection Act.  (*Id.* at 38; Compl. ¶¶ 36-39.)  Although the CFA claim was properly before the court, the court determined that the parties had not "adequately briefed how a determination that T-Mobile USA is not an insured under the Policy affects its ability to bring a CFA claim."  (6/27/17 Order at 39.)  For that reason, the court reserved ruling on the CFA claim and directed the parties to file simultaneous briefing on that issue.  (*Id.*)

The court also noted that T-Mobile USA's complaint appeared to allege coverage by estoppel, but neither party addressed that claim in their motions.  (*Id.* at 18 n.13.)  The court therefore ordered the parties to inform the court whether this claim remained in issue.  (*Id.*; *see also id.* at 41.)

In their joint statement, T-Mobile USA acknowledges that the court's order precludes T-Mobile USA "from being able to further prosecute its claims" under the CFA, for punitive damages, and for coverage by estoppel.  (Joint Statement at 2.)  Based on this representation, the court concludes that no further claims or issues remain for decision and denies as moot Selective's motion for summary judgment on the CFA claim.

//

//

**C.  Motion to Compel**

On October 12, 2017, T-Mobile USA filed a motion to compel Mr. Kohane's claims file and deposition.  (*See* MTC.)  Given that no claims or issues remain in this matter (*see supra* § III.B), the court denies the motion as moot.  Moreover, T-Mobile USA improperly filed the motion in the first instance.  The court's scheduling order requires the parties to first request a conference with the court before moving for an order related to discovery, and T-Mobile USA did not do so.  (*See* Am. Sched. Order (Dkt. # 45) at 2.)

## IV.    CONCLUSION

For the foregoing reasons, the court DENIES T-Mobile USA's motion for reconsideration (Dkt. # 83), DENIES as moot Selective's motion for summary judgment on T-Mobile USA's CFA claim (Dkt. # 71), and DENIES as moot and improperly filed T-Mobile's motion to compel (Dkt. # 90).

Dated this 19th day of October, 2017.


JAMES L. ROBART
United States District Judge