UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

T-MOBILE USA INC.,

                  Plaintiff,

    v.

SELECTIVE INSURANCE
COMPANY OF AMERICA,

              Defendant.

CASE NO. C15-1739JLR

ORDER ON CROSS-MOTIONS
FOR SUMMARY JUDGMENT

## I.   INTRODUCTION

This matter comes before the Court on remand from the Ninth Circuit Court of

Appeals.  *See T-Mobile USA Inc. v. Selective Ins. Co. of Am.*, 787 F. App'x 395 (9th Cir.

2019); (Mandate of USCA (Dkt. # 98).)  Before the court are cross-motions for summary

judgment by Plaintiff T-Mobile USA Inc. ("T-Mobile USA") and Defendant Selective

Insurance Company of America ("Selective").  (Pl. MSJ (Dkt. ## 50 (sealed), 65

(redacted)); Def. MSJ (Dkt. # 71).)   The court has considered the parties' submissions

1    in favor of and in opposition to the motions, the relevant portions of the record, and the

2    applicable law.  Being fully advised,[1] the court GRANTS in part and DENIES in part T-

3    Mobile USA's motion for partial summary judgment and DENIES in part and DEFERS

4    ruling in part on Selective's motion for summary judgment.

## II.    BACKGROUND

**A.    Factual Background**

7         This is an insurance coverage dispute in which T-Mobile USA asserts that (1) it is

8    an additional insured under a Selective insurance policy issued to Innovative

9    Engineering, Inc. ("Innovative"), and (2) Selective wrongfully failed to defend and

10   indemnify T-Mobile USA in construction litigation in New York State ("the underlying

11   litigation").  (See Compl. (Dkt. # 4); Bauer Decl. (Dkt. # 52) ¶ 3.)

12        On July 8, 2010, T-Mobile Northeast, LLC ("T-Mobile NE")—a wholly owned

13   subsidiary of T-Mobile USA—entered into a "Field Services Agreement" with

14   Innovative.[2]  (See Sheridan Decl. (Dkt. # 53) ¶ 2, Ex. A ("FSA") at 1.)  Innovative

15   contracted to perform architectural and engineering services for T-Mobile NE and to

---

[1] T-Mobile USA requests oral argument (Pl. Suppl. Br. at 1), but the court concludes that oral argument would not be helpful to its disposition of the motions.  See Local Rules W.D. Wash. LCR 7(b)(4).

[2] On October 17, 2000, Innovative and Omnipoint Communications, Inc. ("Omnipoint")—T-Mobile NE's predecessor—entered into a "Professional Services Agreement."  (See Cyprian Decl. (Dkt. # 72) ¶ 3, Ex. A ("PSA") at 2.)  That agreement required Innovative to maintain general liability insurance, name Omnipoint as an additional insured "with a full waiver of subrogation" by Innovative, and to obtain an additional insured endorsement to accompany the certificates of insurance designating Omnipoint as an additional insured.  (Id. at 4.)

1    maintain general liability insurance including a waiver of subrogation in favor of

2    T-Mobile NE and "its affiliates and subsidiaries." (*Id.* at 6.)  The FSA also required

3    Innovative to provide T-Mobile NE with certificates of insurance documenting the

4    coverage that the FSA required Innovative to obtain and naming T-Mobile NE as an

5    additional insured on the certificates. (*Id.* at 7.)

6         Selective issued Innovative a commercial general liability policy numbered

7    S164349108 ("the Policy"), which was effective from January 16, 2012, through January

8    16, 2013.  (Sheridan Decl. ¶ 3, Ex. B ("Policy") at 2-3.)  The Policy provides that "the

9    words 'you' and 'your' refer to the Named Insured shown in the Declarations, and any

10   other person or organization qualifying as a Named Insured under this policy." (*Id.* at

11   54.)  The Declarations name "Innovative Engineering Inc[.] &/ Or Innovative Client

12   Solutions"—Innovative—as the Named Insured. (*Id.* at 3.)  The Policy states that

13   "SECTION II – WHO IS AN INSURED is amended to include as an additional insured

14   any person or organization with whom you have agreed in a written contract or written

15   agreement to add as an additional insured on your policy." (*Id.* at 60.)  The Policy further

16   states that if an entity is designated in the Declarations as a limited liability company

17   ("LLC"), its "members are also insureds, but only with respect to the conduct of [the

18   LLC's] business." (*Id.* at 39.)  In addition, Selective's "Elite Pac Endorsement" confers

19   automatic additional insured status on an entity when an insured enters a contract that

20   requires the insured to name the other contracting party as an insured. (Wyrsch Decl.

21   (Dkt. # 51) ¶ 5.)

22   //

1        The Van Dyk Group ("VDG") has served as Selective's agent since 1988, and

2   VDG and Selective entered into their most current agency agreement on January 1, 2007.

3   (*Id.* ¶ 4.)  The agreement provides that VDG has authority to act on Selective's behalf,

4   including by issuing insurance certificates.  (*Id.* ¶ 5.)  In January 2012, VDG issued a

5   certificate of insurance to T-Mobile USA that references the Policy, indicates that the

6   "[c]ertificate holder is included as an additional insured with respect to General Liability,

7   Auto[,] and Umbrella Liability," and identifies the certificate holder as "T-Mobile USA,

8   Inc., its Subsidiaries and Affiliates."  (*Id.* ¶ 10; *see also* Sheridan Decl. ¶ 5, Ex. D

9   ("COI") at 2.)  VDG's Michelle Ortiz signed the certificate of insurance as Selective's

10  "Authorized Representative."  (Wyrsch Decl. ¶ 10.)

11       The events giving rise to this coverage dispute are as follows.  In 2005,

12  Omnipoint—T-Mobile NE's predecessor in name—leased from Virginia Properties,

13  LLC, a portion of a rooftop on which to construct a cell phone tower.  (Cyprian Decl. ¶ 5,

14  Ex. C ("Lease").)  Innovative performed work for T-Mobile NE to construct the rooftop

15  tower, and on April 23, 2013, Virginia Properties initiated the underlying litigation

16  against T-Mobile USA and Omnipoint, alleging that the cell tower damaged the building.

17  *See Va. Props., LLC v. T-Mobile Ne. LLC*, No. 13-CV-03493 (S.D.N.Y.); (*see generally*

18  Lease.)

19       After T-Mobile USA and Omnipoint filed a third-party complaint against

20  Innovative in the underlying litigation (Cyprian Decl. ¶ 6, Ex. D), Innovative tendered its

21  //

22  //

1   defense to Selective (Sheridan Decl. ¶ 10, Ex. I).[3]  On July 23, 2013, Selective accepted

2   the defense under a reservation of rights.  (Sheridan Decl. ¶ 11, Ex. J ("ROR Letter").)

3   On February 1, 2013, T-Mobile USA—through Sedgwick, T-Mobile USA's claims

4   agent—also tendered a claim to Innovative for defense and indemnification regarding the

5   underlying litigation and requested that Innovative put its insurer on notice of the claim.

6   (Sheridan Decl. ¶ 8, Ex. G ("Tender").)  The tender referenced a "contract with T-Mobile

7   USA Inc. [that] contains an indemnification and hold harmless agreement that favors

8   T-Mobile, USA Inc. in this matter" and also "requires that you obtain insurance covering

9   not only you but T-Mobile, USA Inc. for these claims."  (*Id.* at 2.)  On February 7, 2013,

10  Kary Cyprian, Claims Management Specialist for Selective, contacted Sedgwick to

11  acknowledge "receipt of your request for tender on behalf of your insured T-Mobile."

12  (Cyprian Decl. ¶ 5, Ex. E.)  Ms. Cyprian asked Sedgwick to "forward copies of all your

13  investigation, copies of contracts between our insured [Innovative] and T-Mobile, copies

14  of your insurance policy[,] and any other information that may assist us with the

15  investigation of this claim."  (*Id.* at 2.)  Ms. Cyprian further stated that Selective would

16  contact Sedgwick once Selective completed its investigation.  (*Id.*)

17      According to Ms. Cyprian, based on her initial investigation into T-Mobile USA's

18  tender, the only information she needed to make a final determination as to whether

19  T-Mobile USA was an additional insured was a copy of T-Mobile USA's own insurance

20

21

22      [3] In the underlying litigation, T-Mobile USA moved for summary judgment on the basis
    that T-Mobile USA was not a party to the lease.  (Tindal Decl. (Dkt. # 74) ¶ 2, Ex. A.)

1   policy.  (*See* Sheridan Decl. ¶ 9, Ex. H ("Cyprian Dep.") at 199-201, 211-12, 219.)[4]

2   However, on July 8, 2013, another Selective claims handler, Michael Parlin, took over

3   T-Mobile USA's claim.  (Sheridan Decl. ¶ 4, Ex. C ("Parlin Dep.") at 119, 125.)

4        After Mr. Parlin assumed responsibility for the claim, Selective did not act on

5   T-Mobile USA's tender until February 26, 2015.  (Sheridan Decl. ¶ 13, Ex. L at 2.)  On

6   February 25, 2015, Sedgwick again demanded that Selective defend T-Mobile USA.  (*Id.*

7   ¶ 12, Ex. K.)  The next day, Mr. Parlin denied via email T-Mobile USA's tender.  (*Id.*

8   ¶ 13, Ex. L at 2.)  Mr. Parlin's email merely pointed T-Mobile USA to Selective's 2013

9   reservation of rights letter to Innovative.  (*Id.* ("Based on this letter, Selective must

10  respectfully decline your request for defense and indemnification . . . ."); *see also* ROR

11  Letter.)  In Mr. Parlin's subsequent deposition testimony, he stated that he denied

12  T-Mobile USA's tender based on the Professional Services Exclusion in the Policy.  (*See,*

13  *e.g.*, Parlin Dep. at 119-20; Policy at 60 (excluding coverage for certain professional

14  services).)  Sedgwick again emailed Mr. Parlin on March 13, 2015, stating "[a]s my client

15  T-Mobile [USA] is an additional insured on your policy, we continue to look to you for

16  defense and indemnification on this claim."  (Sheridan Decl. ¶ 14, Ex. M at 2.)

17       In August 2015, Selective's coverage counsel, Dan Kohane, responded to an

18  inquiry from T-Mobile USA's Lisa Bauer about Selective's position regarding coverage

19  of T-Mobile USA under the policy.  (Parlin Decl. (Dkt. # 73) ¶ 14, Ex. B at 2.)  T-Mobile

20  USA asked Selective to clarify the basis for denying coverage.  (*See id.*)  Mr. Kohane

21

22       [4] The court cites to the page numbers of the deposition transcripts.

stated that Selective had determined T-Mobile USA was not a named or additional insured under the Policy and therefore was not entitled to coverage. (*Id.* ¶ 5, Ex. C ("Kohane Email") at 2.)

Before filing this suit, T-Mobile USA notified Selective that it intended to sue Selective under Washington's Insurance Fair Conduct Act ("IFCA"), RCW 48.30.015. (Sheridan Decl. ¶ 15, Ex. N.) On September 29, 2015, Selective responded that "[t]his letter confirms that T-Mobile [USA] is not an additional insured and that Selective has not violated IFCA." (*Id.* ¶ 16, Ex. O.)

T-Mobile USA then brought this suit in the Superior Court for King County, alleging that the terms of the Policy cover T-Mobile USA (*see* Compl. ¶ 13), and Selective removed the case to this court on November 4, 2015 (Not. of Rem. (Dkt. # 1)). T-Mobile USA asserts claims for: (1) declaratory judgment that Selective is contractually obligated to defend and indemnify T-Mobile USA in the underlying action, (2) breach of the insurance contract, (3) attorneys' fees, (4) breach of the duty of good faith and fair dealing; (5) violation of the Washington State Consumer Protection Act ("CPA"), RCW 19.86, *et seq.*; and (6) estoppel.[5] (Compl. ¶¶ 24-44.)

---

[5] T-Mobile USA also asserted a claim for violation of IFCA. (*See* Compl. ¶¶ 40-42.) On June 27, 2016, the court granted the parties' stipulated motion to dismiss T-Mobile USA's IFCA claim. (6/27/16 Order (Dkt. # 34) at 3.)

1

**B.   Initial Ruling and Appeal**

2       On March 23, 2017, T-Mobile USA moved for partial summary judgment on its

3  breach of contract, declaratory judgment, and bad faith claims.[6]  (Pl. MSJ at 2.)

4  T-Mobile USA contends that (1) Selective was contractually obligated to provide a

5  defense to T-Mobile USA and that the only basis on which Selective denied coverage

6  was incorrect (*id.* at 15-17); (2) Selective is estopped from asserting that T-Mobile USA

7  could not have tendered a defense as an additional insured under the Policy (*id.* at 17-18);

8  (3) even if Selective can argue additional coverage defenses, (a) T-Mobile USA is an

9  additional insured because Selective's agent issued a certificate of insurance naming

10  T-Mobile USA as an additional insured (*id.* at 19-22), (b) the Policy's additional insured

11  endorsement confers coverage on T-Mobile USA as T-Mobile NE's sole member (*id.* at

12  22-23), and (c) T-Mobile USA has standing to recover defense costs as T-Mobile NE's

13  parent company (*id.*); and (4) Selective's actions constitute bad faith as a matter of law

14  (*id.* at 23-25).

15       Selective filed a cross-motion for summary judgment in its favor on all of

16  T-Mobile USA's claims on April 10, 2017.  (*See* Def. MSJ.)  Selective argues that (1)

17  T-Mobile USA is not an insured under the Policy (*id.* at 17-20), (2) the certificate of

18  insurance does not confer coverage on T-Mobile USA (*id.* at 20-28), (3) T-Mobile USA

19  is judicially estopped from seeking coverage under the Policy because T-Mobile USA

20  took an inconsistent position in the underlying litigation (*id.* at 28-31), and (4) the court

21

22       ----

   [6] T-Mobile USA does not move for summary judgment on its CPA claim, the extent of
   damages, or its claim for punitive damages.  (Pl. MSJ at 2 n.1.)

1    should dismiss T-Mobile USA's bad faith and CPA claims as a matter of law because

2    T-Mobile USA is not an insured under the Policy and New Jersey law does not recognize

3    consumer fraud claims related to the performance—rather than the sale of—insurance

4    policies (*id.* at 31-36).

5        On June 27, 2017, the court granted in part and reserved ruling in part on

6    Selective's motion for summary judgment and denied T-Mobile USA's motion for partial

7    summary judgment. (6/27/17 Order (Dkt. # 82).) The court concluded that neither party

8    was estopped from raising arguments regarding T-Mobile USA's status as an additional

9    insured and found that T-Mobile USA was not an additional insured. (*Id.* at 16-36.) In

10   finding that T-Mobile USA was not an additional insured under the Policy, the court

11   concluded that the 2012 COI issued by VDG did not confer insured status on T-Mobile

12   USA. (*Id.* at 29-32.) The court granted Selective's motion for summary judgment on the

13   breach of contract and declaratory judgment claims. (*Id.* at 36.) Because the court

14   concluded that Selective did not insure T-Mobile USA, it also granted summary

15   judgment in Selective's favor on the bad faith claim. (*See id.* at 37.) Finally, based on

16   the parties' filings, the court construed T-Mobile USA's claim under the CPA as a claim

17   under New Jersey's Consumer Fraud Act ("CFA"), but determined that additional

18   briefing was necessary and reserved ruling on this issue. (*Id.* at 38-39.) On July 13,

19   2017, the parties submitted a joint statement agreeing that the CFA claim was no longer

20   viable based on the court's previous ruling. (7/13/17 Joint Statement (Dkt. # 85).)[7] The

21

22       [7] T-Mobile USA's agreement that the CFA claim was no longer viable was conditioned
     on the court not granting T-Mobile USA's motion to reconsider the 6/27/17 Order. (*See* 7/13/17

1    court entered final judgment against T-Mobile USA and dismissed the case with

2    prejudice.  (Judgment. (Dkt. # 93).)

3        T-Mobile USA appealed the court's ruling to the Ninth Circuit.  (Not. of Appeal

4    (Dkt. # 94).)  On November 9, 2018, the Ninth Circuit certified the following question to

5    the Washington State Supreme Court:

6        Under Washington law, is an insurer bound by representations made by its
         authorized agent in a certificate of insurance with respect to a party's status
7        as an additional insured under a policy issued by the insurer, when the
         certificate includes language disclaiming its authority and ability to expand
8        coverage?

9    (Certification Order (Dkt. # 96)); *T-Mobile USA Inc. v. Selective Ins. Co. of Am.*,

10   908 F.3d 581, 587 (9th Cir. 2018).  The Washington State Supreme Court concluded that,

11   under Washington law, "the answer is yes:  an insurance company is bound by the

12   representation of its agent in those circumstances." *T-Mobile USA Inc. v. Selective Ins.*

13   *Co. of Am.*, 450 P.3d 150, 152 (Wash. 2019).  Based on this answer, the Ninth Circuit

14   reversed this court's orders granting summary judgment and dismissal "on the grounds

15   that Selective was bound by VDG's representations that T-Mobile USA was an additional

16   insured under the Policy." *T-Mobile USA Inc. v. Selective Ins. Co. of Am.*, 787 F. App'x

17   395, 397 (9th Cir. 2019).  The Ninth Circuit remanded to this court for further

18   proceedings consistent with the Court's ruling.  *Id.*

19

20

21

22   Joint Statement at 1-2; MFR (Dkt. # 83).)  The court denied T-Mobile USA's motion for
     reconsideration.  (10/19/17 Order (Dkt. # 92).)

**C.    New Jersey Action**

In this court's 6/27/17 Order it noted that there was "no evidence before the court that T-Mobile NE tendered its own claim to Selective at any point." (6/27/17 Order at 21 n.16.)  The following day, T-Mobile NE tendered a request for coverage as an additional insured with respect to the underlying litigation.  (Tindal Decl. ¶ 6, Ex. E.)  On July 27, 2017, Selective filed an action against T-Mobile NE in the Superior Court of New Jersey seeking a declaration that it did not owe T-Mobile NE a duty to defend in the underlying litigation.  (Suppl. Moore Decl. (Dkt. # 104) ¶ 2, Ex. A.)  The suit was later removed to the Federal District Court for the District of New Jersey.  (*See id.* ¶ 5, Ex. D.)  On December 13, 2019, four days after the Ninth Circuit issued its ruling, T-Mobile NE withdrew its claim for coverage, indicating that "T-Mobile will instead litigate coverage for the underlying defense costs at issue in the first filed Washington action pursuant to its earlier tender." (Tindal Decl. ¶ 5, Ex. D at 2.)  On February 28, 2020, T-Mobile NE filed a motion to dismiss Selective's declaratory judgment suit.  *Selective Ins. Co. of America v. T-Mobile Northeast, LLC*, Civil Action No. 17-6420 (MCA)(MAH) (Dkt. # 53).  The New Jersey court granted the motion to dismiss on September 10, 2020.  *Id.* (Dkt. # 60).

**D.    Post-Remand Procedural Background**

After remand, the parties agreed that no further discovery was necessary and the issues in this case are ripe for motion practice.  (2/26/20 Joint Statement (Dkt. # 101).)  This court ordered the parties to submit limited briefing addressing (1) the impact of the Ninth Circuit's ruling on this case; (2) the parties' understanding of the remaining issues

1   to be adjudicated; and (3) any additional arguments not raised in the parties'

2   cross-summary-judgment motions.  (4/22/20 Order (Dkt. # 102); Pl. Suppl. Br. (Dkt.

3   # 103); Def. Suppl. Br. (Dkt. # 105).  The court now considers the parties' cross-motions

4   and supplemental briefing.

5                          III.    ANALYSIS

6          The court first lays out what issues remain to be resolved after the Ninth Circuit's

7   order reversing and remanding this court's previous order.  It then proceeds to lay out the

8   appropriate legal standard before turning to the substance of the parties'

9   cross-summary-judgment motions.

10  **A.    Impact of the Ninth Circuit's Ruling**

11         The court must first determine how the Ninth Circuit's ruling impacts its previous

12  order.  T-Mobile USA argues that the Ninth Circuit's ruling has resolved the issue of T-

13  Mobile USA's status as an additional insured and leaves the issues of Selective's breach

14  of the duty to defend and bad faith ripe for decision.  (Pl. Suppl. Br. at 7.)  Selective

15  argues that the Ninth Circuit's decision that T-Mobile USA qualified as an additional

16  insured "carries minimal, if any, significance on the issues that remain before this

17  [c]ourt." (Def. Suppl. Br. at 2.)  Specifically, Selective asserts that the court's prior

18  ruling that T-Mobile USA "cannot recover defense fees and costs and indemnity it paid

19  on behalf of T-Mobile NE is left undisturbed by the Ninth Circuit's decision."  (*Id.*)

20  Selective also argues that the Professional Services Exclusion bars coverage for the

21  underlying litigation and thus T-Mobile USA's remaining claims should be dismissed

22  with prejudice.  (*Id*. at 5-13.)

1      The court agrees with both parties that the Ninth Circuit's ruling resolves the

2   question of T-Mobile USA's status as an additional insured. (*See* Mem. from USCA at

3   4). This also removes the need for the court to revisit its analysis regarding the parties'

4   estoppel arguments, as they were directly related to determining T-Mobile USA's status

5   as an additional insured. (*See* 6/27/17 Order at 16-23.) Thus, the court will analyze

6   T-Mobile USA's remaining arguments regarding the breach of contract and bad faith

7   claims in light of the determination that it is an additional insured.

8      The court disagrees with Selective that the court's determination that T-Mobile

9   USA cannot recover anything paid on behalf of T-Mobile NE is undisturbed by the Ninth

10  Circuit's ruling. Both T-Mobile USA's arguments and the court's determination of this

11  issue were predicated on T-Mobile USA not having status as an additional insured. (*See*

12  Pl. MSJ at 23 (arguing in the alternative that if the court determines T-Mobile USA does

13  not have a direct right to coverage it "has standing to seek reimbursement of the full

14  extent of defense costs it paid on behalf of T-Mobile NE"); Pl. Reply (Dkt. # 77) at 8

15  (same); 6/27/17 Order at 24, 35-36.) T-Mobile USA's partial motion for summary

16  judgment seeks a favorable ruling on its declaratory judgment claim and breach of

17  contract claim but does not request judgment on the extent of its damages. (Pl. MSJ at 1,

18  24 n.25.) Selective provides no specific arguments about T-Mobile USA's ability to

19  recover costs paid on behalf of T-Mobile NE in light of T-Mobile USA's status as an

20  additional insured. (*See generally* Def. Suppl. Br.) Thus, the court concludes that at this

21  time it need not reach the question of whether T-Mobile USA, as an additional insured, is

22

1  entitled to recover damages related to defense fees and costs and indemnity it paid on

2  behalf of T-Mobile NE.

3      In sum, the court's order addresses the parties' cross-motions for summary

4  judgment of the declaratory judgment, breach of contract, bad faith, and CFA claims.

5  Specifically, the court GRANTS T-Mobile USA's motion for partial summary judgment

6  on the declaratory judgment and breach of contract claim and DENIES Selective's

7  motion on the same.  The court DENIES both parties' motions regarding the bad faith

8  claim.  Finally, the court DEFERS ruling on Selective's motion for summary judgment

9  on the CFA claim and ORDERS the parties to file supplemental briefing on this issue.

10  **B.   Legal Standard**

11      Summary judgment is appropriate if the evidence shows "that there is no genuine

12  dispute as to any material fact and the movant is entitled to judgment as a matter of law."

13  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v.*

14  *Cty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).  A fact is "material" if it might affect the

15  outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A

16  factual dispute is "'genuine' only if there is sufficient evidence for a reasonable fact

17  finder to find for the non-moving party."  *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986,

18  992 (9th Cir. 2001) (citing *Anderson*, 477 U.S. at 248-49).

19      The moving party bears the initial burden of showing there is no genuine issue of

20  material fact and that it is entitled to prevail as a matter of law.  *Celotex*, 477 U.S. at 323.

21  If the moving party does not bear the ultimate burden of persuasion at trial, it can show

22  the absence of a dispute of material fact in two ways:  (1) by producing evidence negating

1   an essential element of the nonmoving party's case, or (2) by showing that the

2   nonmoving party lacks evidence of an essential element of its claim or defense.  *Nissan*

3   *Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000).  If the moving

4   party will bear the burden of persuasion at trial, it must establish a prima facie showing in

5   support of its position on that issue.  *UA Local 343 v. Nor-Cal Plumbing, Inc.*, 48 F.3d

6   1465, 1471 (9th Cir. 1994).  That is, the moving party must present evidence that, if

7   uncontroverted at trial, would entitle it to prevail on that issue.  *Id*. at 1473.  If the moving

8   party meets its burden of production, the burden then shifts to the nonmoving party to

9   identify specific facts from which a fact finder could reasonably find in the nonmoving

10  party's favor.  *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 252.

11          The court is "required to view the facts and draw reasonable inferences in the light

12  most favorable to the [non-moving] party."  *Scott v. Harris*, 550 U.S. 372, 378 (2007).

13  The court may not weigh evidence or make credibility determinations in analyzing a

14  motion for summary judgment because these are "jury functions, not those of a judge."

15  *Anderson*, 477 U.S. at 249-50.  Nevertheless, the nonmoving party "must do more than

16  simply show that there is some metaphysical doubt as to the material facts . . . . Where

17  the record taken as a whole could not lead a rational trier of fact to find for the

18  nonmoving party, there is no genuine issue for trial."  *Scott*, 550 U.S. at 380 (internal

19  quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

20  475 U.S. 574, 586-87 (1986)).

21  //

22  //

1   **C.   Declaratory Judgment and Breach of Contract Claims**

2         The Ninth Circuit has determined that "Selective was bound by VDG's

3   representations that T-Mobile USA was an additional insured under the Policy."  (Mem.

4   from USCA at 4.)  To resolve whether T-Mobile USA is entitled to partial summary

5   judgment on its declaratory judgment and breach of contract claims, the court must

6   determine whether Selective breached its duty to defend T-Mobile USA under the terms

7   of the Policy under Washington law.[8]

8         "In Washington, insurance policies are construed as contracts.  An insurance

9   policy is construed as a whole, with the policy being given a fair, reasonable, and sensible

10  construction as would be given to the contract by the average person purchasing

11  insurance."  *Weyerhaeuser Co. v. Com. Union Ins. Co.*, 15 P.3d 115, 122 (Wash. 2000)

12  (internal quotations omitted); *see also Overton v. Consol. Ins. Co.*, 38 P.3d 322, 325

13  (Wash. 2002) ("Interpretation of insurance policies is a question of law, in which the

14  policy is construed as a whole and each clause is given force and effect.").  Ambiguities

15  are resolved against the drafter-insurer and in favor of the insured.  *Weyerhaeuser Co.*, 15

16  P.3d at 122.  "A clause is ambiguous when, on its face, it is fairly susceptible to two

17  different interpretations, both of which are reasonable."  *Id.* (quoting *Am. Nat. Fire Ins.*

18  *Co. v. B & L Trucking & Const. Co.*, 951 P.2d 250, 256 (Wash. 1998)).  However, if the

19  language of the policy is clear and unambiguous, the court must enforce the policy as it is

20

21  _____

          [8] The court previously ruled that Washington law applies to T-Mobile USA's breach of
22  contract claim and, accordingly, to the court's construction of the underlying insurance policy.
    (*See* 4/14/16 Order (Dkt. # 30) at 21-22.)

1   written and may not modify the policy or create ambiguity where none exists. *Pub. Util.*

2   *Dist. No. 1 v. Int'l Ins. Co.*, 881 P.2d 1020, 1025 (Wash. 1994); *Int'l Marine*

3   *Underwriters v. ABCD Marine, LLC*, 313 P.3d 395, 400 (Wash. 2013) ("A court . . . may

4   not interpret a policy in such a way that it creates nonexistent ambiguities that result in

5   the policy being construed in favor of the insured.").

6       The duty to defend is triggered "if the insurance policy conceivably covers

7   allegations" against the insured. *Am. Best Food, Inc. v. Alea London, Ltd.*, 229 P.3d 693,

8   696 (Wash. 2010); *see also Truck Ins. Exch. v. Vanport Homes, Inc.*, 58 P.3d 276, 282

9   (Wash. 2002). Moreover, the allegations against the insured are "liberally construed" in

10   favor of triggering the duty. *Truck Ins. Exch.*, 58 P.3d at 282. An insurer may not invoke

11   an equivocal interpretation of the law or the policy to relieve itself of the duty to defend.

12   *Woo v. Fireman's Fund Ins. Co.*, 208 P.3d 557, 564 (Wash. Ct. App. 2009). "Although

13   this duty to defend is broad, it is not triggered by claims that clearly fall outside the

14   policy." *Nat'l Sur. Corp. v. Immunex Corp.*, 297 P.3d 688, 691 (Wash. 2013) (citing *Kirk*

15   *v. Mt. Airy Ins. Co.*, 951 P.2d 1124, 1126 (Wash. 1998)). If the insurer remains uncertain

16   about its duty to defend, the insurer must provide a defense under a reservation of rights

17   while seeking a declaratory judgment that it has no duty to defend. *Truck Ins. Exch.*, 58

18   P.3d at 282.

19       If a claim could impose liability on the insured in a manner that is within the

20   policy's coverage, the court must examine the policy to determine if any policy exclusion

21   "clearly and unambiguously applies to bar coverage." *Hayden v. Mut. of Enumclaw Ins.*

22   *Co.*, 1 P.3d 1167, 1172 (Wash. 2000) (citing *Diamaco, Inc. v. Aetna Cas. & Sur. Co.*, 983

1    P.2d 707, 709-12 (Wash. Ct. App. 1999)).  If so, there is no duty to defend.  *Evanston*

2    *Ins. Co. v. Clartre, Inc.*, 158 F. Supp. 3d 1110, 1114 (W.D. Wash. 2016).  "Exclusionary

3    clauses contained in insurance policies are strictly construed against the insurer."

4    *Stouffer & Knight v. Cont'l Cas. Co.*, 982 P.2d 105, 109 (Wash. Ct. App. 1999).

5        Because duty to defend cases typically turn on purely legal questions of

6    interpretation of insurance contracts and complaints, "they are routinely resolved at the

7    summary judgment stage."  *Evanston*, 158 F. Supp. 3d at 1114.

8        Selective argues that T-Mobile USA's claim as an additional insured is barred by

9    the Policy's Professional Services Exclusion.  (Def. Suppl. Br. at 6-12.)[9]  According to

10   Selective, this question is governed by Form CG 79 21 01 10's terms regarding

11   "completed operations."  (Def. Suppl. Br. at 7-8 (citing Tindal Decl. (Dkt. # 106) ¶ 8, Ex.

12   G at 56-57, 60) (arguing that "ongoing operations" terms cannot apply because damage

13   was incurred years after Innovative ceased operations on the project)).)  Form

14   CG 79 21 01 10's "completed operations" terms provide coverage for an additional

15   insured for "'property damage' caused, in whole or in part, by '[Innovative's] work'

16   performed for that additional insured and included in the 'products-completed operations

17   hazard'."  (Tindal Decl. Ex. G. at 60.)  But the terms also provide that insurance does not

18

19        [9] T-Mobile USA argues that the court should not consider Selective's more fulsome
     post-appeal arguments regarding the Professional Services Exclusion because Selective's initial
20   response on this issue "was limited to three lines of arguments asserting that there were allegedly
     'questions of fact' about whether that exclusion actually applied in its opposition and one line in
21   its reply."  (Pl. Suppl. Br. at 4-5 (citing Def. MSJ at 35; Def. Reply (Dkt. # 78) at 9).)  But the
     court will not punish Selective for devoting the bulk of its motion to a threshold issue when this
22   court initially agreed with Selective on that issue.  Thus, the court will consider the arguments
     regarding the Professional Services Exclusion that Selective raises post-appeal.

1    apply to "'property damage' . . . arising out of the rendering of, or failure to render, any

2    professional architectural, engineering or surveying services . . . ." (*Id.*)

3        According to Selective, this exclusion "clearly bars all potential coverage" for two

4    reasons.  First, in the underlying litigation, plaintiff's expert concluded that the property

5    damage was a result of deficient "dunnage design" and Innovative's failure to properly

6    investigate the structural stability of certain walls.  (Def. Suppl. Br. at 9-10 (citing Tindal

7    Decl. ¶ 11, Ex. J at 7).)  Second, the terms and conditions of the PSA "plainly set[] forth

8    that Innovative was retained to perform 'architectural and engineering services.'" (*Id.*

9    (citing Tindal Decl. ¶ 12, Ex. K).)  These pieces of evidence, in Selective's eyes, make it

10   "undisputed that the only work Innovative performed as it relates to the events that gave

11   rise to the [underlying litigation] were architectural, engineering, inspection, and other

12   related professional services." (*Id.*)

13       T-Mobile USA disputes Selective's "undisputed" conclusion on several grounds.

14   Rather than plaintiff's expert's report in the underlying litigation, T-Mobile USA points

15   to plaintiff's complaint, which contains allegations "arising from construction and

16   negligent reporting—claims sounding 'in the nature of a building construction claim,'

17   including allegations of negligent 'asbestos reporting.'" (Pl. Suppl. Br. at 10 (citing

18   Cyprian Decl. ¶ 4, Ex. B ("Underlying Complaint") ¶¶ 10, 26-28, 44).)  T-Mobile USA

19   argues that the Professional Services Exclusion that Selective seeks to invoke does not

20   exclude coverage for these sort of faulty construction allegations.  (Pl. Suppl. Br. at 10-11

21   (citing *Dan Ryan Builders W. Va., LLC v. Main St. Am. Assurance Co.*, 452 F. Supp. 3d

22   394, 409 (D.S.C. 2020) (finding that the exclusion for "professional architectural,

1  engineering or surveying services" in a Selective policy cannot "exclude claims from

2  coverage that allege run-of-the-mill construction negligence")).)

3        T-Mobile USA also points to the fact that when Selective reviewed the allegations

4  in the underlying complaint, it determined that it owed a duty to defend Innovative

5  despite the Professional Services Exclusion also existing for the named insured.  (Pl. MSJ

6  at 12, 15-16; Pl. Suppl. Br. at 9-10; *see also* ROR Letter; Parlin Dep. at 252-53 (testifying

7  that "in retrospect" claims handler was uncomfortable with the inconsistent position).)  In

8  2017, Selective responded only that this inconsistency has no impact on the correctness

9  of its position that the Professional Services Exclusion bars coverage.  (Def. MSJ. at 35.)

10  On remand, Selective does not address this inconsistency at all, other than agreeing with

11  T-Mobile USA that the Professional Services Exclusion appears to be the same for

12  named insureds and additional insureds.  (*See* Def. Suppl. Br. at 8 n.7.)

13        The court concludes that Selective owed T-Mobile USA a duty to defend.

14  Liberally construing the allegations against the insured in the underlying litigation, the

15  policy conceivably covers the allegations.  *See Truck Ins. Exch.*, 58 P.3d at 282.  Despite

16  Selective's arguments otherwise, the Professional Services Exclusion's applicability to

17  this suit is neither clear nor unambiguous.  *See Hayden*, 1 P.3d at 1172 (Wash. 2000).

18  The allegations in the underlying complaint can be construed as arising from the type of

19  construction negligence that other courts have found to fall outside the language of the

20  Professional Services Exclusion.  *See Dan Ryan Builders*, 452 F. Supp. 3d at 409. The

21  potential inapplicability of the Exclusion is underscored by Selective's own

22  determination that the Exclusion did not apply to the named insured, Innovative, who was

1    a defendant in the same suit.  (*See* ROR Letter.)  Accordingly, the court GRANTS

2    T-Mobile USA's motion for partial summary judgment on its declaratory judgment and

3    breach of contract claims and DENIES Selective's cross-motion on these claims.

4    T-Mobile USA does not seek a summary judgment ruling on the extent of its damages,

5    and the court makes no ruling on damages at this time.[10]  (*See* Pl. MSJ at 1 n.1, 24 n.25.)

6    **D.    Bad Faith Claim**

7         The court previously determined that T-Mobile USA's bad faith claim failed as a

8    matter of law because T-Mobile USA was not an additional insured.  In light of the Ninth

9    Circuit's ruling and the court's determination that the Professional Services Exclusion

10   does not apply, the court revisits the parties' cross-motions on this point and finds denial

11   is appropriate for both.

12        Under New Jersey law, an insurer owes a duty of good faith in handling

13   third-party insurance claims.[11]  *See Rova Farms Resort, Inc. v. Investors Ins. Co. of Am.*,

14   323 A.2d 495, 497-500 (N.J. Sup. Ct. 1974); *see also Pickett v. Lloyd's*, 621 A.2d 445,

15   449-50 (N.J. Sup. Ct. 1993) (stating that *Rova Farms* recognized a bad faith claim for

16

17        [10] The court notes that, contrary to Selective's argument on remand (*see* Def. Suppl. Br.
18   at 2-3), the court has not concluded that, as an additional insured, T-Mobile USA's claim for
     coverage must be limited to the defense fees and costs T-Mobile USA incurred before T-Mobile
19   NE was substituted as a defendant in the underlying litigation, *see supra* § III.A.  Because the
     court disagrees with Selective's premise, it also disagrees with Selective's argument that
20   T-Mobile NE's withdrawal of tender for costs incurred in the underlying litigation bars any
     recovery for T-Mobile USA of any funds related to the breach of the duty to defend.  (*See* Def.
     Suppl. Br. at 6.)

21        [11] The court ruled that New Jersey law applies to T-Mobile USA's bad faith and CPA
     claims.  (*See* 4/14/16 Order at 27 (granting motion for application of New Jersey law to
22   T-Mobile's bad faith, IFCA, and CPA claims).)

1   third-party insurance claims).  "To show a claim for bad faith, a plaintiff must show the

2   absence of a reasonable basis for denying benefits of the policy and the defendant's

3   knowledge or reckless disregard of the lack of a reasonable basis in denying the claim."

4   *Id.* at 453 (internal quotation marks omitted).

5        T-Mobile USA argues that the undisputed testimony from Mr. Parlin and Ms.

6   Cyprian "makes it clear that Selective delayed investigating T-Mobile [USA]'s claim

7   without valid reasons, acted in reckless indifference to factual proof in hand at the time of

8   its denial, and made that denial without a fairly debatable basis."  (Pl. MSJ at 23 (internal

9   quotation marks omitted).)  Selective describes its claim handling as "admittedly poor,"

10  "objectively in conflict with [Selective]'s own claim handling procedures," and a product

11  of a process in which "mistakes were made."  (Def. MSJ at 35; Def. Suppl. Br. at 12.)

12  However, Selective argues the T-Mobile USA fails to carry the burden of demonstrating

13  through undisputed facts that there was no reasonable basis for denying benefits.[12]  (Def.

14  Suppl. Br. at 13.)

15       The court determines that, viewing the facts in the light most favorable to

16  Selective, T-Mobile USA has not demonstrated that Selective acted with knowledge of or

17  a reckless disregard for a lack of a reasonable basis for denying T-Mobile USA a defense.

18  While Mr. Parlin admitted to flaws in the claims handling process, these flaws are not so

19

20  _____

21  [12] Selective also argues that the bad faith claim should be dismissed because (1) any
    allegedly bad faith denial was directed toward T-Mobile NE and (2) the claim fails as a matter of
    law since the Professional Services Exclusion applies.  (Def. Suppl. Br. at 12-13.)  Since the
22  court concludes that Selective breached its duty to defend T-Mobile USA and the Professional
    Services Exclusion does not apply, it rejects these arguments.  *See supra* § III.C.

1    clear that they support T-Mobile USA's contention that no jury could reasonably find that

2    Selective had a debatable basis for denying T-Mobile USA's claim.  (*See* Pl. MSJ at 24.)

3    In reaching this conclusion, the court notes that none of the cases cited by T-Mobile USA

4    in support of its argument involved a ruling for the insured on summary judgment.  *See*

5    *Princeton Gamma-Tech, Inc. v. Hartford Ins. Group*, No. SOM-L-1289-91, 1997 WL

6    35384066, at *4 (N.J. Super. Ct. Law Div. 1997) (finding bad faith after trial); *Bello v.*

7    *Merrimack Mut. Fire Ins. Co.*, No. A-4750-10T4, 2012 WL 2848642, at *1 (N.J. Super.

8    Ct. App. Div. July 12, 2012) (upholding bad faith finding from trial); *Badiali v. New*

9    *Jersey Mfrs. Ins. Grp.*, 107 A.3d 1281, 1284 (N.J. Sup. Ct. 2015) (upholding denial of

10   bad faith claim on summary judgment); *Hudson Universal, Ltd. v. Aetna Ins. Co.*, 987 F.

11   Supp. 337 (D.N.J. 1997) (denying motion for summary judgment on bad faith claim).

12   The court also finds that Selective has failed to demonstrate that it is entitled to a

13   dismissal of the bad faith claim.  Thus, the court DENIES both parties' motions for

14   summary judgment on T-Mobile USA's bad faith claim.

15   **E.    CFA Claim**

16          Selective also moves for summary judgment on T-Mobile USA's claim under the

17   CFA.  Under New Jersey law, a CFA claim consists of three elements:  "(1) unlawful

18   conduct by the defendant; (2) an ascertainable loss by the plaintiff; and (3) a causal

19   relationship between the unlawful conduct and the ascertainable loss."  *Bosland v.*

20   *Warnock Dodge, Inc.*, 964 A.2d 741, 749 (N.J. Sup. Ct. 2009).

21          The parties' briefing establishes one thing about New Jersey law's view of the

22   applicability of the CFA to the denial of insurance benefits:  it is unclear.  Selective,

1    pointing to a decision by New Jersey's intermediate appellate court, argues that the CFA

2    "was not intended as a vehicle to recover damages for an insurance company's refusal to

3    pay benefits." (Def. MSJ at 33 (citing *Myska v. New Jersey Mfrs. Ins. Co.*, 114 A.3d 761,

4    777 (N.J. Super. Ct. App. Div. 2015)).)  T-Mobile USA counters that the New Jersey

5    Supreme Court has not ruled on this issue, but the Third Circuit has predicted that the

6    state's Supreme Court would find that the CFA does apply in these circumstances. (*See*

7    Pl. Reply at 27-28 (citing *Weiss v. First Unum Life Ins. Co.*, 482 F.3d 254, 266 (3d Cir.

8    2007)).)  Selective replies that the Third Circuit's views on this issue have not been

9    consistent, and that since *Weiss* there has been a split among the district courts in New

10   Jersey on whether a CFA claim may be based on a denial of insurance benefits.  (Def.

11   Rep. at 10-11 (citing *Robert J. v. Liberty Mut. Ins.*, Civ. No. 14-06308 (WHW)(CLW),

12   2015 WL 4138990, at *2-3 (D.N.J. July 8, 2015) (describing unsettled law on this

13   question but ultimately permitting insured to pursue CFA claim)).)

14        Neither party presented updated arguments on the question of CFA applicability in

15   their supplemental briefs submitted after the Ninth Circuit's ruling. (*See generally* Pl.

16   Suppl. Br.; Def. Suppl. Br. at 12 n.10 (explicitly relying on the arguments submitted to

17   this court in 2017).)  Thus, the court determines, once again, that supplemental briefing is

18   appropriate on the question of the CFA's applicability to the facts of this case in light of

19   the court's determination that Selective breached its duty to defend T-Mobile USA.

20        Accordingly, the court DEFERS ruling on Selective's motion for summary

21   judgment insofar as it applies to T-Mobile USA's CFA claim.  The court further

22   DIRECTS the parties to file responses to this order on the question of whether the CFA

applies to Selective's denial of benefits to T-Mobile USA by **Friday, April 16, 2021 at 12:00 p.m.**  The parties' responses shall be limited to six pages. There shall be no replies unless otherwise ordered by the court.

## IV.   CONCLUSION

For the reasons set forth above the court GRANTS in part and DENIES in part T-Mobile USA's motion for partial summary judgment (Dkt. # 50) and DENIES in part and DEFERS ruling in part on Selective's motion for summary judgment (Dkt. # 71). Specifically, the court GRANTS T-Mobile USA's motion for partial summary judgment on its declaratory judgment and breach of contract claims and DENIES the motion as it applies to T-Mobile USA's bad faith claim.  The court DENIES Selective's motion for summary judgment for all claims except T-Mobile USA's CFA claim, which the court DEFERS ruling on.  The court DIRECTS the parties to file responses to this order on the question of whether the CFA applies to Selective's denial of benefits to T-Mobile USA by **Friday, April 16, 2021 at 12:00 p.m.**  The parties' responses shall be limited to six pages.  There shall be no replies unless otherwise ordered by the court.

Dated this 1st day of April, 2021.

JAMES L. ROBART
United States District Judge