UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

T-MOBILE USA INC.,

                Plaintiff,

v.

SELECTIVE INSURANCE
COMPANY OF AMERICA,

                Defendant.

CASE NO. C15-1739JLR

ORDER ON REMAINING
PORTION OF CROSS-MOTIONS
FOR SUMMARY JUDGMENT

## I.   INTRODUCTION

Before the court is the remaining portion of the cross-motions for summary judgment filed by Plaintiff T-Mobile USA Inc. ("T-Mobile USA") and Defendant Selective Insurance Company of America ("Selective"). (Pl. MSJ (Dkt. ## 50 (sealed), 65 (redacted)); Def. MSJ (Dkt. # 71).) At the direction of the court, the parties filed supplemental briefs to address whether New Jersey's Consumer Fraud Act ("CFA") applies to Selective's denial of benefits to T-Mobile USA. (Def. 2d Supp. Br. (Dkt.

# 108); Pl. 2d Supp. Br. (Dkt. # 109); 4/1/21 Order (Dkt. # 107) at 23-25.) The court has considered the motions, the supplemental briefing, the relevant portions of the record, and the applicable law. Being fully advised,[1] the court DENIES the remaining portion of Selective's motion for summary judgment.

## II. BACKGROUND

The court discussed the factual and procedural backgrounds of this case in its previous order on the other portions of the parties' cross-motions for summary judgment. (*See* 4/1/21 Order at 2-12.) Thus, it only summarizes here the facts most relevant to the remaining portions of the motion.

### A. Factual Background

This is an insurance coverage dispute in which T-Mobile USA asserts that Selective wrongfully failed to defend and indemnify T-Mobile USA in construction litigation in New York State ("the underlying litigation"). (*See* Compl. (Dkt. # 4); Bauer Decl. (Dkt. # 52) ¶ 3.) On July 8, 2010, T-Mobile Northeast, LLC ("T-Mobile NE")—a wholly owned subsidiary of T-Mobile USA—entered into a "Field Services Agreement" with Innovative Engineering, Inc. ("Innovative").[2] (*See* Sheridan Decl. (Dkt. # 53) ¶ 2,

---

[1] T-Mobile USA requested oral argument with its previous briefing (Pl. 1st Supp. Br. (Dkt. # 103) at 1), but neither party requested oral arguments in their briefing on this topic (*see* Pl. 2d Supp. Br. at 1; Def. Supp. Br. at 1). The court concludes that oral argument would not be helpful to its disposition of the motions. *See* Local Rules W.D. Wash. LCR 7(b)(4).

[2] On October 17, 2000, Innovative and Omnipoint Communications, Inc. ("Omnipoint")—T-Mobile NE's predecessor—entered into a "Professional Services Agreement." (*See* Cyprian Decl. (Dkt. # 72) ¶ 3, Ex. A ("PSA") at 2.) That agreement required Innovative to maintain general liability insurance, name Omnipoint as an additional insured "with a full waiver of subrogation" by Innovative, and to obtain an additional insured

Ex. A ("FSA") at 1.)  Innovative contracted to perform architectural and engineering services for T-Mobile NE and to maintain general liability insurance including a waiver of subrogation in favor of T-Mobile NE and "its affiliates and subsidiaries." (*Id.* at 6.) The FSA also required Innovative to provide T-Mobile NE with certificates of insurance documenting the coverage that the FSA required Innovative to obtain and naming T-Mobile NE as an additional insured on the certificates. (*Id.* at 7.)  Selective issued Innovative a commercial general liability policy numbered S164349108 ("the Policy"), which was effective from January 16, 2012, through January 16, 2013.  (Sheridan Decl. ¶ 3, Ex. B ("Policy") at 2-3.)

The events giving rise to this coverage dispute are as follows.  In 2005, Omnipoint—T-Mobile NE's predecessor in name—leased from Virginia Properties, LLC ("Virginia Properties"), a portion of a rooftop on which to construct a cell phone tower. (Cyprian Decl. (Dkt. # 72) ¶ 5, Ex. C ("Lease").)  Innovative performed work for T-Mobile NE to construct the rooftop tower, and on April 23, 2013, Virginia Properties initiated the underlying litigation against T-Mobile USA and Omnipoint, alleging that the cell tower damaged the building. *See Va. Props., LLC v. T-Mobile Ne. LLC*, No. 13-CV-03493 (S.D.N.Y.); (*see generally* Lease.)

After T-Mobile USA and Omnipoint filed a third-party complaint against Innovative in the underlying litigation (Cyprian Decl. ¶ 6, Ex. D), Innovative tendered its

---

endorsement to accompany the certificates of insurance designating Omnipoint as an additional insured. (*Id.* at 4.)

defense to Selective (Sheridan Decl. ¶ 10, Ex. I).[3] On July 23, 2013, Selective accepted the defense under a reservation of rights. (Sheridan Decl. ¶ 11, Ex. J ("ROR Letter").) On February 1, 2013, T-Mobile USA—through Sedgwick Claims Management Services, Inc. ("Sedgwick"), T-Mobile USA's claims agent—also tendered a claim to Innovative for defense and indemnification regarding the underlying litigation and requested that Innovative put its insurer on notice of the claim. (Sheridan Decl. ¶ 8, Ex. G ("Tender").) The tender referenced a "contract with T-Mobile USA Inc. [that] contains an indemnification and hold harmless agreement that favors T-Mobile, USA Inc. in this matter" and also "requires that you obtain insurance covering not only you but T-Mobile, USA Inc. for these claims." (*Id.* at 2.) On February 7, 2013, Kary Cyprian, Claims Management Specialist for Selective, contacted Sedgwick to acknowledge "receipt of your request for tender on behalf of your insured T-Mobile." (Cyprian Decl. ¶ 5, Ex. E.) Ms. Cyprian asked Sedgwick to "forward copies of all your investigation, copies of contracts between our insured [Innovative] and T-Mobile, copies of your insurance policy[,] and any other information that may assist us with the investigation of this claim." (*Id.* at 2.) Ms. Cyprian further stated that Selective would contact Sedgwick once Selective completed its investigation. (*Id.*)

According to Ms. Cyprian, based on her initial investigation into T-Mobile USA's tender, the only information she needed to make a final determination as to whether T-Mobile USA was an additional insured was a copy of T-Mobile USA's own insurance

---

[3] In the underlying litigation, T-Mobile USA moved for summary judgment on the basis that T-Mobile USA was not a party to the lease. (Tindal Decl. (Dkt. # 74) ¶ 2, Ex. A.)

policy. (*See* Sheridan Decl. ¶ 9, Ex. H ("Cyprian Dep.") at 199-201, 211-12, 219.)[4] However, on July 8, 2013, another Selective claims handler, Michael Parlin, took over T-Mobile USA's claim. (Sheridan Decl. ¶ 4, Ex. C ("Parlin Dep.") at 119, 125.)

After Mr. Parlin assumed responsibility for the claim, Selective did not act on T-Mobile USA's tender until February 26, 2015. (Sheridan Decl. ¶ 13, Ex. L at 2.) On February 25, 2015, Sedgwick again demanded that Selective defend T-Mobile USA. (*Id.* ¶ 12, Ex. K.) The next day, Mr. Parlin denied via email T-Mobile USA's tender. (*Id.* ¶ 13, Ex. L at 2.) Mr. Parlin's email merely pointed T-Mobile USA to Selective's 2013 reservation of rights letter to Innovative. (*Id.* ("Based on this letter, Selective must respectfully decline your request for defense and indemnification . . . ."); *see also* ROR Letter.) In Mr. Parlin's subsequent deposition testimony, he stated that he denied T-Mobile USA's tender based on the Professional Services Exclusion in the Policy. (*See, e.g.*, Parlin Dep. at 119-20; Policy at 60 (excluding coverage for certain professional services).) Sedgwick again emailed Mr. Parlin on March 13, 2015, stating "[a]s my client T-Mobile [USA] is an additional insured on your policy, we continue to look to you for defense and indemnification on this claim." (Sheridan Decl. ¶ 14, Ex. M at 2.)

In August 2015, Selective's coverage counsel, Dan Kohane, responded to an inquiry from T-Mobile USA's Lisa Bauer about Selective's position regarding coverage of T-Mobile USA under the policy. (Parlin Decl. (Dkt. # 73) ¶ 14, Ex. B at 2.) T-Mobile USA asked Selective to clarify the basis for denying coverage. (*See id.*) Mr. Kohane

---

[4] The court cites to the page numbers of the deposition transcripts.

ORDER - 5

stated that Selective had determined T-Mobile USA was not a named or additional insured under the Policy and therefore was not entitled to coverage. (*Id.* ¶ 5, Ex. C ("Kohane Email") at 2.)

Before filing this suit, T-Mobile USA notified Selective that it intended to sue Selective under Washington's Insurance Fair Conduct Act ("IFCA"), RCW 48.30.015. (Sheridan Decl. ¶ 15, Ex. N.) On September 29, 2015, Selective responded that "[t]his letter confirms that T-Mobile [USA] is not an additional insured and that Selective has not violated IFCA." (*Id.* ¶ 16, Ex. O.)

T-Mobile USA then brought this suit in King County Superior Court, alleging that the terms of the Policy cover T-Mobile USA (*see* Compl. ¶ 13), and Selective removed the case to this court on November 4, 2015 (Not. of Rem. (Dkt. # 1)). T-Mobile USA asserts claims for: (1) declaratory judgment that Selective is contractually obligated to defend and indemnify T-Mobile USA in the underlying action; (2) breach of the insurance contract; (3) attorneys' fees; (4) breach of the duty of good faith and fair dealing; (5) violation of the Washington State Consumer Protection Act ("CPA"), RCW 19.86, *et seq.*; and (6) estoppel.[5] (Compl. ¶¶ 24-44.)

---

[5] T-Mobile USA also asserted a claim for violation of IFCA. (*See* Compl. ¶¶ 40-42.) On June 27, 2016, the court granted the parties' stipulated motion to dismiss T-Mobile USA's IFCA claim. (6/27/16 Order (Dkt. # 34) at 3.)

ORDER - 6

## B. Initial Ruling and Appeal

On March 23, 2017, T-Mobile USA moved for partial summary judgment on its breach of contract, declaratory judgment, and bad faith claims.[6] (Pl. MSJ at 2.) T-Mobile USA contends that (1) Selective was contractually obligated to provide a defense to T-Mobile USA and that the only basis on which Selective denied coverage was incorrect (*id.* at 15-17); (2) Selective is estopped from asserting that T-Mobile USA could not have tendered a defense as an additional insured under the Policy (*id.* at 17-18); (3) even if Selective can argue additional coverage defenses, (a) T-Mobile USA is an additional insured because Selective's agent issued a certificate of insurance naming T-Mobile USA as an additional insured (*id.* at 19-22), (b) the Policy's additional insured endorsement confers coverage on T-Mobile USA as T-Mobile NE's sole member (*id.* at 22-23), and (c) T-Mobile USA has standing to recover defense costs as T-Mobile NE's parent company (*id.*); and (4) Selective's actions constitute bad faith as a matter of law (*id.* at 23-25).

Selective filed a cross-motion for summary judgment in its favor on all of T-Mobile USA's claims on April 10, 2017. (*See* Def. MSJ.) Selective argues that (1) T-Mobile USA is not an insured under the Policy (*id.* at 17-20), (2) the certificate of insurance does not confer coverage on T-Mobile USA (*id.* at 20-28), (3) T-Mobile USA is judicially estopped from seeking coverage under the Policy because T-Mobile USA took an inconsistent position in the underlying litigation (*id.* at 28-31), and (4) the court

---

[6] T-Mobile USA does not move for summary judgment on its CPA claim, the extent of damages, or its claim for punitive damages. (Pl. MSJ at 2 n.1.)

should dismiss T-Mobile USA's bad faith and CPA claims as a matter of law because T-Mobile USA is not an insured under the Policy and New Jersey law does not recognize consumer fraud claims related to the performance—rather than the sale of—insurance policies (*id.* at 31-36).

On June 27, 2017, the court granted in part and reserved ruling in part on Selective's motion for summary judgment and denied T-Mobile USA's motion for partial summary judgment. (6/27/17 Order (Dkt. # 82).) The court concluded that neither party was estopped from raising arguments regarding T-Mobile USA's status as an additional insured and found that T-Mobile USA was not an additional insured. (*Id*. at 16-36.) In finding that T-Mobile USA was not an additional insured under the Policy, the court concluded that the 2012 certificate of insurance ("COI") issued by the Van Dyk Group ("VDG") did not confer insured status on T-Mobile USA. [7] (*Id*. at 29-32.) The court granted Selective's motion for summary judgment on the breach of contract and declaratory judgment claims. (*Id*. at 36.) Because the court concluded that Selective did not insure T-Mobile USA, it also granted summary judgment in Selective's favor on the bad faith claim. (*See id*. at 37.) Finally, based on the parties' filings, the court construed T-Mobile USA's claim under the CPA as a claim under New Jersey's Consumer Fraud Act ("CFA"), but determined that additional briefing was necessary and reserved ruling

---

[7] VDG has served as Selective's agent since 1988. (Wyrsch Decl. (Dkt. # 51) ¶ 4.) entered into an agreement on January 1, 2007, which provided that VDG has authority to act on Selective's behalf, including by issuing insurance certificate. (*Id*. ¶ 5.) In January 2012, VDG issued a certificate of insurance to T-Mobile USA regarding the Policy. (*See id*. ¶ 10; 4/1/21 Order at 4.)

on this issue. (*Id.* at 38-39.) On July 13, 2017, the parties submitted a joint statement agreeing that the CFA claim was no longer viable based on the court's previous ruling. (7/13/17 Joint Statement (Dkt. # 85).)[8] The court entered final judgment against T-Mobile USA and dismissed the case with prejudice. (Judgment (Dkt. # 93).)

T-Mobile USA appealed the court's ruling to the Ninth Circuit. (Not. of Appeal (Dkt. # 94).) On November 9, 2018, the Ninth Circuit certified the following question to the Washington State Supreme Court:

> Under Washington law, is an insurer bound by representations made by its authorized agent in a certificate of insurance with respect to a party's status as an additional insured under a policy issued by the insurer, when the certificate includes language disclaiming its authority and ability to expand coverage?

(Certification Order (Dkt. # 96)); *T-Mobile USA Inc. v. Selective Ins. Co. of Am.*, 908 F.3d 581, 587 (9th Cir. 2018). The Washington State Supreme Court concluded that, under Washington law, "the answer is yes: an insurance company is bound by the representation of its agent in those circumstances." *T-Mobile USA Inc. v. Selective Ins. Co. of Am.*, 450 P.3d 150, 152 (Wash. 2019). Based on this answer, the Ninth Circuit reversed this court's orders granting summary judgment and dismissal "on the grounds that Selective was bound by VDG's representations that T-Mobile USA was an additional insured under the Policy." *T-Mobile USA Inc. v. Selective Ins. Co. of Am.*, 787 F. App'x

---

[8] T-Mobile USA's agreement that the CFA claim was no longer viable was conditioned on the court not granting T-Mobile USA's motion to reconsider the 6/27/17 Order. (*See* 7/13/17 Joint Statement at 1-2; MFR (Dkt. # 83).) The court denied T-Mobile USA's motion for reconsideration. (10/19/17 Order (Dkt. # 92).)

ORDER - 9

395, 397 (9th Cir. 2019). The Ninth Circuit remanded to this court for further proceedings consistent with the Court's ruling. *Id.*

**C.      Post-Remand Procedural Background**

After remand, the parties agreed that no further discovery was necessary and the issues in this case are ripe for motion practice. (2/26/20 Joint Statement (Dkt. # 101).) This court ordered the parties to submit limited briefing addressing (1) the impact of the Ninth Circuit's ruling on this case; (2) the parties' understanding of the remaining issues to be adjudicated; and (3) any additional arguments not raised in the parties' cross summary judgment motions. (4/22/20 Order (Dkt. # 102); Pl. 1st Supp. Br.; Def. 1st Supp. Br. (Dkt. # 105).

On April 1, 2021, the court ruled on the majority of the parties' cross-motions for summary judgment. (*See* 4/1/21 Order.) Specifically, the court granted T-Mobile USA's motion for partial summary judgment on its declaratory judgment and breach of contract claims and denied T-Mobile USA's motion with regard to its bad faith claim. (*Id.* at 25.) The court denied Selective's motion for summary judgment on all claims except T-Mobile USA's claim under the CFA. (*Id.*) The court deferred ruling on whether the CFA applies to Selective's denial of benefits to T-Mobile USA and ordered supplemental briefing on this question. (*Id.*; *see* Def. 2d Supp. Br.; Pl. 2d Supp. Br.)

### III.      ANALYSIS

**A.      Legal Standard**

Summary judgment is appropriate if the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007). A fact is "material" if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson*, 477 U.S. at 248-49).

The moving party bears the initial burden of showing there is no genuine issue of material fact and that it is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party does not bear the ultimate burden of persuasion at trial, it can show the absence of a dispute of material fact in two ways: (1) by producing evidence negating an essential element of the nonmoving party's case, or (2) by showing that the nonmoving party lacks evidence of an essential element of its claim or defense. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000). If the moving party will bear the burden of persuasion at trial, it must establish a prima facie showing in support of its position on that issue. *UA Local 343 v. Nor-Cal Plumbing, Inc.*, 48 F.3d 1465, 1471 (9th Cir. 1994). That is, the moving party must present evidence that, if uncontroverted at trial, would entitle it to prevail on that issue. *Id.* at 1473. If the moving party meets its burden of production, the burden then shifts to the nonmoving party to identify specific facts from which a fact finder could reasonably find in the nonmoving party's favor. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 252.

The court is "required to view the facts and draw reasonable inferences in the light most favorable to the [non-moving] party." *Scott v. Harris*, 550 U.S. 372, 378 (2007).

The court may not weigh evidence or make credibility determinations in analyzing a motion for summary judgment because these are "jury functions, not those of a judge." *Anderson*, 477 U.S. at 249-50. Nevertheless, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott*, 550 U.S. at 380 (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

**B.     T-Mobile USA's CFA Claim**

The CFA prohibits "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise . . . or with the subsequent performance of such person as aforesaid." N.J.S.A. 56:8-2. The Act defines "merchandise" to include "services or anything offered, directly or indirectly to the public for sale." N.J.S.A. 56:8-1(c).

Selective contends that the CFA does not apply when "a non-party to an insurance contract—T-Mobile USA—seeks a defense and indemnification from an insurer with whom it has no direct relationship." (Def. 2d Supp. Br. at 1.) It raises three arguments in support of this contention: (1) T-Mobile USA cannot be viewed as a "consumer" under the CFA; (2) T-Mobile USA's claims do not relate to the "sale" of "merchandise" or

"goods" under the CFA; and (3) the CFA is inapplicable as a matter of law to the payment of insurance benefits. (*Id.* at 2-6.) The court addresses each argument in turn.

1. <u>The CFA and Corporate Plaintiffs</u>

Selective contends it is "axiomatic" that T-Mobile USA is not a consumer under the CFA because "it is an international telecommunications corporation that has unique expertise in all of its business dealings." (*Id.* at 3.) In support of its argument, Selective points to three cases where courts have dismissed CFA claims brought by corporate plaintiffs. (*Id.* (citing *Prof. Cleaning & Innovative Bldg. Servs., Inc. v. Kennedy Funding, Inc.*, No. 2:05-CV-2384 (WJM), 2009 WL 1651131, at *4 (D.N.J. June 12, 2009), *aff'd*, 408 F. App'x 566 (3d Cir. 2010); *Papergraphics Int'l, Inc. v. Correa*, 910 A.2d 625, 629 (N.J. Super. Ct. App. Div. 2006); *539 Absecon Blvd., L.L.C. v. Shan Enterprises Ltd. P'ship*, 967 A.2d 845, 865 (N.J. Super. Ct. App. Div. 2009)).)

But the cases marshalled by Selective do not support a clear "axiom" that large, sophisticated corporations cannot be viewed as consumers under the CFA. Instead, they suggest that the applicability of the CFA to a claim is determined by examining the nature of the transaction, not just the participants. *See 539 Absecon Blvd.*, 967 A.2d at 865 ("a business entity can be a consumer and can be victimized by unlawful practices"); *Papergraphics Int'l*, 910 A.2d at 628 (collecting CFA cases with corporate plaintiffs). In *Hundred E. Credit Corp. v. Eric Shuster Corp.*, the intermediate appellate court discussed the CFA's protections for business entities:

> Business entities, like individual consumers, cover a wide range. Some are poor, some wealthy; some are naive, some sophisticated; some are required to submit, some are able to dominate. Even the most world-wise business

entity can be inexperienced and uninformed in a given consumer transaction. Unlawful practices thus can victimize business entities as well as individual consumers.

515 A.2d 246, 249 (N.J. Super. Ct. App. Div. 1986). Accordingly, "[t]he statute's applicability hinges on the nature of a transaction, requiring a case by case analysis." *Prof. Cleaning*, 2009 WL 1651131, at *4 (citing *Papergraphics Int'l*, 910 A.2d at 628).

When analyzing the nature of the transaction, New Jersey courts take into account "evidence relating to the experience of the commercial entities and evidence of equal bargaining power."[9] (*See id.* (collecting cases).) Here, however, Selective has presented no evidence regarding T-Mobile USA's expertise in insurance or bargaining power, instead relying on the sweeping assertion that T-Mobile USA is a large company that "has unique expertise in all of its business dealings." (Def. 2d Supp. Br. at 3.) Viewing the evidence in the light most favorable to T-Mobile USA, the court determines that T-Mobile USA's status as a large corporation, in and of itself, does not mean it is not a "consumer" capable of bring a claim under the CFA.

2. The CFA and "Sales" of "Merchandise"

Selective's second argument is that no transaction or "sale" occurred between T-Mobile USA and Selective with regard to the insurance policy. (*Id.* at 3-4.) But the only case that Selective cites to support this contention offers little insight to the question

---

[9] New Jersey courts also look at whether the transaction involved "merchandise" that is "of a type sold to the general public." *See Prof. Cleaning*, 2009 WL 1651131, at *4 (collecting cases). Because Selective treats the question of whether insurance benefits, as a matter of law, can be "merchandise" as a separate argument from whether T-Mobile USA can be viewed as a "consumer" the court analyzes this question below. (*See* Def. 2d Supp. Br. at 3-6.)

at hand. (*Id*. at 3 (citing *Med. Soc'y of N.J. v. AmeriHealth HMO, Inc.*, 868 A.2d 1162 (N.J. Super. Ct. App. Div. 2005).) In *Medical Society of New Jersey*, the intermediate appellate court upheld the trial court's dismissal of a CFA claim brought by a medical association comprised of 8,000 physicians against a health insurer. *Id*. at 1164. The court dismissed the CFA claim for two reasons. First, the association improperly sought exclusively injunctive relief under the CFA, which is a remedy reserved for the Attorney General. *Id.* at 1168. Second, the association and its members were not "consumers." *Id.* (citing *City Check Cashing, Inc. v. Nat'l State Bank*, 582 A.2d 809, 811 (N.J. Super. Ct. App. Div. 1990); *In re Managed Care Litig.*, 298 F. Supp. 2d 1259, 1304 (S.D. Fla. 2003)). While the court did not explain its rationale regarding the medical association's lack of "consumer" status in detail, both cases it cites turned on whether the plaintiff was a middleman rather than an end-point beneficiary of the services provided by the defendants. *See City Checking Cashing Inc.*, 582 A.2d at 811 (finding that plaintiff was a middleman purchasing cash at a wholesale value to sell customers to retail); *In re Managed Care Litig.*, 298 F. Supp. 2d at 1309 ("economic middle-men, such as franchisors or distributors or others who merely contract for a stream of payments, are not covered"). This reading comports with the court's decision that an association of doctors could not sue a health insurer under the CFA, because the doctors were not covered by the insurance policies in question—they merely received payments from the insurer. *See Med. Soc'y of N.J*, 868 A.2d at 1166.

      Selective makes no attempt to explain how *Med. Soc'y of N.J.* supports its contention that T-Mobile USA cannot bring a claim under the CFA because the claim

does not relate to a "sale" of "merchandise." (*See* Def. 2d Supp. Br. at 3-4.) To the extent Selective may be citing the case to demonstrate that T-Mobile is not a "consumer" under the statute, this argument is unavailing. Unlike the doctors and medical association in *Mededical Society of New Jersey*, T-Mobile USA was an additional insured under the policy and thus was a direct beneficiary of the service provided by Selective, not a middleman. *See T-Mobile USA Inc. v. Selective Ins. Co. of Am.*, 787 F. App'x 395 (9th Cir. 2019); 4/1/21 Order.) Regardless, the plain language of the statute provides that it covers actions beyond the actual "sale" or transaction regarding covered services. N.J.S.A. 56:8-2 (covering unlawful practices "in the subsequent performance" of covered services, as well as unlawful practices in connection with sale or advertisement). The text of the statute, coupled with the New Jersey Supreme Court's mandate to apply the provisions of the CFA broadly, convinces this court that Selective's threadbare argument regarding the lack of a "sale" of "merchandise" is unavailing. *See Lemelledo v. Beneficial Mgmt. Corp. of Am.*, 696 A.2d 546, 551 (N.J. 1997)

### 3. The CFA and Denials of Insurance Benefits

Selective's final argument is that, despite recent cases allowing CFA claims to proceed against insurance companies, "the CFA is inapplicable as a matter of law to the payment of insurance benefits." (Def. 2d Supp. Br. at 4.) T-Mobile USA responds that New Jersey state courts, the Third Circuit Court of Appeals, and the judges of the federal district court of New Jersey have been "inconsistent" and "mudd[ied] the waters" around the issue of the CFA's applicability to denials of insurance benefits. (Pl. 2d Supp. Br. at 2-3); *see also Lemelledo*, 150 N.J. at 265 n.3 (finding CFA applied to sale of insurance

policies but explicitly refusing to rule on CFA's applicability to payment of insurance benefits); *Weiss v. First Unum Life Ins. Co.*, 482 F.3d 254, 266 (3d Cir. 2007) (allowing CFA claim to proceed when denial was part of alleged fraudulent scheme to reduce expensive payouts); *Granelli v. Chicago Title Ins. Co.*, 569 F. App'x 125, 133 (3d Cir. 2014) ("New Jersey courts . . . have consistently held that the payment of insurance benefits is not subject to the Consumer Fraud Act."); *Myska v. New Jersey Mfrs. Ins. Co.*, 114 A.3d 761, 777 (N.J. Super. Ct. App. Div. 2015) (finding CFA "was not intended as a vehicle to recover damages for an insurance company's refusal to pay benefits"); *Robert J. v. Liberty Mut. Ins.*, Civ. No. 14-06308 (WHW)(CLW), 2015 WL 4138990, at *2-3 (D.N.J. July 8, 2015) (describing caselaw on this question after *Weiss* and allowing CFA claim to proceed).

Two recent decisions on motions to dismiss CFA claims based on insurance benefits denials shed light on the allegedly inconsistent rulings by New Jersey courts. First, in *Alpizar-Fallas v. Favero*, the Third Circuit overruled a district court's dismissal of a CFA claim in an insurance case. 908 F.3d 910 (3d Cir. 2018). In doing so, the court explicitly distinguished the case from *Myska*, where the New Jersey intermediate appellate court dismissed a claim because "the essence of plaintiffs' causes of action involved whether they filed and supported a claim for a specified amount of benefits under their respective policies." *Id*. at 917 (citing 114 A.3d at 777). In *Alpizar-Fallas*, in contrast, the plaintiff "allege[d] neither that she filed an insurance claim nor that she was denied any benefits." *Id*. Instead, she alleged that she had relied on the false representations of the insurance claims adjuster and that the defendant had

misrepresented the nature of documents that she signed. *Id*. at 918. This, according to the Third Circuit, made her claim one where "an insurance company is alleged to fraudulently performed a contract with a consumer," which is covered by the CFA, rather than an improper denial of benefits, which is not covered by the Act. *Id*.

This distinction was echoed in *Smith v. State Farm Fire & Casualty Co.*, No. CV1910319RMBAMD, 2020 WL 6938432 (D.N.J. Nov. 25, 2020). In *Smith*, the plaintiff brought a CFA claim after her insurance company denied benefits to cover water damage under her homeowner's insurance policy. *Id*. at *1-2. The court distinguished "between claims that allege fraudulent performance by the insurer, which the CFA covers, and those that allege a refusal to pay benefits, which the CFA does not cover." *Id.* at *8. Accordingly, it dismissed plaintiff's claim because it involved the denial of benefits rather than false representation during a claim approval process, as in *Alpizar-Fallas*. *Id*. (citing 908 F.3d at 918). It also distinguished the case from *Weiss*, where the Third Circuit allowed a CFA claim to proceed because it was based on an alleged unlawful policy or scheme to reduce expensive payouts. *Id*. (citing 482 F.3d at 256, 266).

This court agrees with the distinction drawn by the *Alpizar-Fallas* and *Smith* courts. The cases addressing CFA claims based on insurance benefits denials establish two categories of claims. If the claim is predicated on fraudulent performance of the insurance contract or the denial is part of a fraudulent scheme, then the CFA applies. *See Alpizar-Fallas*, 908 F.3d at 918; *Weiss*, 482 F.3d at 256, 266; *Robert J. v. Liberty Mut. Ins.*, 2015 WL 4138990, at *3. If, however, the CFA claim is predicated on a

disagreement with the merits of the benefits denial, it may not proceed. *See Myska*, 114 A.3d at 777; *Smith* 2020 WL 6938432, at *8.

Viewing this evidence in the light most favorable to T-Mobile USA, its CFA claim goes beyond a mere disagreement with the merits of a benefits denial. T-Mobile USA submits that, before denying its insurance claim, Selective failed to address the claim for over 19 months after accepting a claim on behalf of a similarly situated party. (*See* Pl. 2d Supp. Br. at 5-6; Pl. MSJ at 8-15.) Specifically, T-Mobile USA presents evidence that Selective determined that Selective owed coverage to its insureds under the Policy in July 2013. (Parlin Dep. at 170-71.) Despite this, Selective did not inform T-Mobile USA of this this determination or respond to their multiple tenders for the remainder of 2013 or the entirety of 2014, in violation of Selective's claims handling policies. (*Id.*; *id.* at 176-77.)

The CFA provides a cause of action based on knowing concealment on the part of defendants. N.J.S.A. 56:8-2 (prohibiting "the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment . . ."). T-Mobile USA's claim is based on alleged deliberate concealment of material facts regarding the Policy's coverage. Accordingly, the court determines that its CFA claim is more similar to the alleged fraudulent contract performance in *Alpizar-Fallas* and *Weiss* than the disagreement with a benefits denial in *Smith*. T-Mobile USA's claim falls within the ambit of the CFA and does not fail as a matter of law. Thus, the remaining portion of Selective's motion for summary judgment is DENIED.

//

## IV. CONCLUSION

For the foregoing reasons, the remaining portion of Selective's motion for summary judgment (Dkt. # 71) is DENIED.

Dated this 11th day of May, 2021.

JAMES L. ROBART
United States District Judge